UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re Complaint and Petition of TRITON ASSET LEASING, GmbH, et al. | § § § § § § § § § | Civil Action No. 4:10-cv-01721<br><br>Relates to the following USDC-EDLA Civil Actions:<br>No. 2:10-cv-01273<br>No. 2:10-cv-01295<br>No. 2:10-cv-01324 |

### MEMORANDUM OF LAW IN SUPPORT OF OPPOSED MOTION TO DISMISS AND/OR, ALTERNATIVELY, TRANSFER

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Putative claimants in this limitation action, Ray Vath, the Louisiana Environmental Action Network, Inc., Charles Robin, III, Lisa Robin, and George Barisich, individually and on behalf of the United Commercial Fisherman's Association, Inc. (collectively "Claimants"), submit this memorandum of law in support of their Motion to Dismiss and/or, Alternatively, Transfer. All have standing to file their motion because their claims, which were filed in the United States District Court for the Eastern District of Louisiana, are or will likely be made subject to these limitation proceedings.[1]

First and foremost, the Court should lift the previously entered Monition against and dismiss any and all claims, asserted or prospective, against Petitioners Triton Asset Leasing GmbH, Transocean Holdings, LLC, Transocean Offshore Deepwater Drilling, Inc., and

---

[1] The case filed by Ray Vath and the Louisiana Environmental Action Network, Inc. is C.A. No. 2:10-cv-01273 and was filed on April 30, 2010. Charles Robin III and Lisa Robin's case is C.A. No. 2:10-cv-01295 and was also filed on April 30, 2010. Finally, George Barisich's case, filed on his behalf and on behalf of the United Commercial Fisherman's Association, Inc., is C.A. No. 2:10-cv-01324 and was filed on May 3, 2010. Again, all three cases were filed in the Eastern District of Louisiana. A Notice of Filing of Limitation Action has already been filed by the limitation plaintiffs in Mr. Barisich's case purporting to stay and/or enjoin that action pending the limitation proceeding.

Transocean Deepwater Inc. (collectively "Transocean") under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. §§ 2701-52. OPA preempts the Limitation of Liability Act, 46 U.S.C. §§ 30501-12 (the "Limitation Act"), under which Transocean has initiated this action, and precludes the invocation of a concursus proceeding under Rule F of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule F") for any potential liability for removal costs or damages under OPA. Second, whether or not this Court dismisses those claims, it should transfer this entire proceeding to the Eastern District of Louisiana. Claimants respectfully submit that such a transfer is necessary to avoid what can only be construed as an effort by Transocean to circumvent applicable law and impose and exacerbate an egregious adverse impact on those already victims of the unprecedented environmental disaster caused by Transocean's wrongful actions. The Eastern District is a more convenient and appropriate forum for this limitation proceeding, and thus it should transferred to that Court.

## BACKGROUND

This case arises from the explosion of the MODU Deepwater Horizon and the resulting oil discharge that has spread throughout the Gulf of Mexico. The Deepwater Horizon was a floating oil rig operated by BP approximately fifty miles southeast of Venice, Louisiana in the Gulf of Mexico. At approximately 10:00 p.m. on April 20, 2010, while the Deepwater Horizon was performing drilling operations for crude oil off the coast of Louisiana at its Macondo Prospect, an apparent blow-out of the well occurred, resulting in the fiery explosion of the rig, which subsequently capsized and sank to the ocean floor.

With the failure of the well's casing and the concurrent failure of the blow-out preventer mechanism (the "BOP"), the well began to discharge oil directly into the Gulf of Mexico. The well continues to discharge at what has been estimated at between 210,000 to 2,900,000 gallons

of oil a day into the waters of the Gulf of Mexico. The plume has expanded to thousands of square miles and has already contaminated barrier islands, wetland marshes, and beaches from Louisiana to Florida. The oil that is being released is an extremely hazardous and toxic substance that poses a significant risk to the wetlands and marine life in the Louisiana Coastal Zone. The expanding massive plume of oil continues to migrate toward the Louisiana coastline every day, threatening the nation's largest remaining wetland areas and vulnerable habitat of fish, oysters, crabs, shrimp, birds, and other precious wildlife.

Louisiana's commercial fishermen have been directly impacted by the closure of fishing areas by state and federal agencies in response to the oil discharge. The Louisiana Department of Wildlife and Fisheries has closed a large area of Louisiana's waters to commercial fishing and oyster harvesting. Likewise, the National Marine Fisheries Service has closed all federal waters off Louisiana to commercial and recreational fishing from the Atchafalaya Bay eastward to the Mississippi state line and has further "strongly advise[d] fishermen not to fish in areas where oil or oil sheens (very thin layers of floating oil) are present, even if those areas are not currently closed to fishing." Other Louisiana businesses that rely upon the Gulf of Mexico and coastal waters of Louisiana have, likewise, been damaged by the oil pollution caused by the explosion and sinking of the Deepwater Horizon.

Instead of pursuing this matter in the Eastern District of Louisiana, the district encompassing the fishermen, businesses, and families so gravely affected, Transocean, as the Owner, Managing Owners, Owners *Pro Hac Vice*, and/or Operators of the Deepwater Horizon, filed this limitation proceeding here in Texas. As explained below, this action should be dismissed and/or, alternatively, transferred to the United States District Court for the Eastern District of Louisiana.

## LAW AND ARGUMENT

**I.   The Court Should Dismiss Any and All OPA Claims from this Limitation Action.**

In the Complaint and Petition for Exoneration from or Limitation of Liability (the "Petition"), Transocean invokes the Limitation Act and Rule F to seek exoneration from or limitation of its liability for "any loss, injuries, and damages sustained by those affected" by the incident involving the Deepwater Horizon.[2] The Petition asserts a right to exoneration from or limitation of liability for, *inter alia*, "any claims asserted under the Oil Pollution Act, 33 U.S.C. § 2701, *et seq.* for hydrocarbons emanating from the sea floor."[3] OPA does not provide for or permit, however, a party to limit its liability for removal costs for damages under the Limitation Act or to provoke a concursus under Rule F. Simply put, no OPA claims, whether asserted or prospective, can be subjected to this limitation proceeding. Accordingly, this Court should lift its Monition and dismiss from this action any and all asserted or prospective claims under OPA, which cannot, as a matter of law, be subjected to limitation under the Limitation Act or Rule F.

---

[2] Pet. ¶ 20.
[3] *Id.* Transocean's recent corporate filings acknowledge that the United States Coast Guard has designated it as a "responsible party" under OPA:

> **Environmental Matters**—On April 28, 2010, in connection with the *Deepwater Horizon* incident, one of our subsidiaries was notified by the U.S. Coast Guard that, under the provisions of the Oil Pollution Act of 1990 ("OPA"), *Deepwater Horizon* had been designated as a source of oil discharges and our subsidiary has been designated as a responsible party under OPA. In the notice, the U.S. Coast Guard noted that its information indicates that oil discharges resulting from the incident include discharges from *Deepwater Horizon* on or above the surface of the water and ongoing discharges from the well head. Because the ongoing discharges from the well head are occurring nearly a mile below the surface of the water, for which we believe we have no responsibility under OPA, we have responded to the U.S. Coast Guard's notice and denied our subsidiary's designation as a responsible party to the extent of any underwater discharges from the well head. There can be no assurance as to the ultimate outcome of this matter.

Transocean Ltd., Form 10-Q, filed May 5, 2010, Part II, Item 1. *See* Exhibit 1 attached to the Declaration of Thomas E. Bilek in Support of Motion to Dismiss and/or, Alternatively, Transfer (the "Bilek Decl."). It should be noted that Transocean does not seek exoneration from or limitation of liability with respect to any claims for damages caused by pollution emanating from the rig itself, thereby implicitly recognizing that any and all claims governed by OPA fall outside this limitation action.

4

OPA, enacted in 1990, "imposes strict liability for pollution removal costs and damages on the 'responsible party' for a vessel or a facility from which oil is discharged." *Metlife Capital Corp. v. M/V EMILY S*, 132 F.3d 818 (1st Cir. 1997). OPA specifically provides that claims under the act are not subject to preexisting legislation, such as the Limitation Act:

> **Notwithstanding any other provision or rule of law**, and subject to the provisions of this chapter, each responsible party for a vessel or a facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, . . . is liable for the removal costs and damages specified in subsection (b) that result from such incident.

*Metlife Capital Corp.*, 132 F.3d at 821 (quoting 33 U.S.C. § 2702(a)) (emphasis added).

Federal courts have expressly held that "a plain reading of the subsection suggests that the OPA repealed the Limitation Act with respect to removal cost and damages claims against responsible parties." *Id.* (citing *In re JAHRE SPRAY II K/S*, 1996 WL 451315, *4 (D.N.J. 1996); *accord Tug Capt. Fred Bouchard Corp. v. M/V BALSA 37*, No. 93-1321, slip op. at 2 (M.D. Fla. Oct. 22, 1996)). Responsible parties and sole cause third parties under OPA cannot, therefore, invoke the Limitation Act's protections with regard to such claims. The court in *Metlife* rejected the argument that OPA's language leaves the procedural elements of the Limitation Act (i.e., concursus and/or limitation proceedings) available to responsible parties, stating that "the procedural rules incorporated into the Limitation Act are inapplicable as well to such claims." *Id.*

*Metlife* involved an oil spill in the waters of Puerto Rico. *Id.* at 819. Following the spill, the owners and operators of the vessels involved filed a complaint under the Limitation Act seeking exoneration from or limitation of liability. *Id.* While the district court initially issued a monition enjoining any claims outside the limitation proceeding, the court later abandoned that order after several prospective claimants moved for relief, asserting that their OPA claims should not be subject to concursus. The court, upon examination, found that a "plain reading" of

§ 2702(a) of OPA, cited above, revealed that OPA claims for damages and pollution removal were not subject to a limitation action under the Limitation Act. *Id.* at 821.

The court also looked to the legislative history of OPA and concluded that Congress had intended OPA to govern limitations on compensation for oil pollution claims. The Senate Report on the OPA bill, for example, recognized that OPA "completely supersedes the 1851 statute [i.e., the Limitations Act] with respect to oil pollution." *Id.* at 822 (citing S. Rep. No. 101-94, at 14, *reprinted in* 1990 U.S.C.C.A.N. 722, 736). The court held, therefore, "we find that the OPA has repealed the Limitation Act as to oil spill pollution claims arising under the OPA in the instant case." *Id.* Accordingly, the court affirmed the district court's order suspending the monition and allowing claimants to file OPA claims in whatever forum they chose. *Id.* at 824. The Fifth Circuit has recently cited, with approval, *Metlife*'s "holding that the Limitation Act does not apply to claims brought under the Oil Pollution Act." *In re Southern Scrap Material Co., LLC*, 541 F.3d 584, 594 n.16 (5th Cir. 2008).

The court in *In re JAHRE SPRAY II K/S*, 1997 A.M.C. 8445 (D.N.J. 1996), similarly held that parties designated as "responsible parties" under OPA are not entitled to limit their liability for OPA claims by bringing a limitation action under the Limitation Act. *In re JAHRE SPRAY* also arose out of an oil spill where the vessel's owners and operators filed a petition for limitation of liability pursuant to the Limitation Act. *Id.* at 847. As in *Metlife*, the court initially granted the petition and ordered all parties with claims against the vessel owners and operators to file such claims as part of the limitation proceeding. *Id.* The court, like the court in *Metlife*, thereafter reversed its position, concluding "that the claims with respect to the oil spill raised here under the [OPA] and related laws are not subject to limitation under the Limited Liability Act." *Id.* at 846. The court therefore held that "[t]he court's order [enjoining potential claimants

from filing claims outside of the limitation proceeding] will be lifted, the limitation proceeding will be dismissed, and all parties may proceed in whatever forum may be appropriate." *Id.*

In reaching this conclusion, the *In re JAHRE SPRAY* Court stated that **"the specific language of the OPA indicate[s] that it supersedes the Limited Liability Act."** *Id.* at 851 (emphasis added) (referring to the language of 33 U.S.C. § 2702(a) ("Notwithstanding any other provision or rule of law . . .")). In addition to this express language, the court concluded that the existence of provisions in OPA creating specific defenses to OPA claims and establishing its own liability limitations demonstrated that OPA, and not the Limitation Act, governed oil spill claims. *Id.* Finally, the court considered the legislative history of the OPA and acknowledged that Congress had intended OPA to supersede the Limitation Act in this regard. The court cited the Senate Report accompanying OPA, which stated that **"this bill completely supersedes the 1851 [Limitation of Liability] statute with respect to oil pollution."** *Id.* at 852 (citing S. Rep. No. 94, 101st Cong., 2d Sess. 4 (1990), *reprinted in* 1990 U.S.C.C.A.N. (101 Stat.) 722, 727 (emphasis added)). *See* Exhibit 3 attached to the Bilek Decl.

The court also cited a legal commentator's conclusion that the "OPA broadly supersedes the Limitation of Liability Act with respect to damages and removal costs under both federal and state law, including common law" and "[t]hus the Act should no longer apply to limit any action for damages or removal costs in connection with any pollution incident." *Id.* (citing 2 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW at 376 (2d ed. 1994)). In light of this abundance of authority, the court held: "Based on the plain meaning of the [OPA] and its legislative history, the Court concludes that the Limited Liability Act does not apply to claims relating to an oil spill. The Court therefore will lift its order restraining the filing of claims

brought pursuant to the OPA." *Id.* This Court should likewise lift its order enjoining oil pollution claims outside this concursus proceeding.

The United States Court of Appeals for the Eleventh Circuit has also held that claims brought under OPA are not subject to limitation proceedings under the Limitation Act. In *Bouchard Transportation Co., Inc. v. Updegraff,* 147 F.3d 1344 (11th Cir. 1998), the court held that "[OPA] explicitly supersedes the Limitation Act's liability limits with respect to claims for cleanup costs and damages resulting from a discharge of oil, and establishes its own schedule of liability limits for damages resulting from the oil discharge." *Id.* at 1347 (citing 33 U.S.C. § 2704).

*Bouchard* specifically addressed Rule F, the procedural device that implements the Limitation Act and allows for concursus proceedings under the act. The court held that OPA is not subject to Rule F for two reasons. First, Rule F does not govern OPA claims because its purpose is to provide a procedure for a pro rata distribution of funds when there is a limited fund, and "[OPA] claimants do not face a limited fund because [OPA] uses the Oil Spill Liability Trust Fund to ensure that every claim made pursuant to [OPA] will be paid in full." *Id.* at 1350 (citing 26 U.S.C. § 9509; 33 U.S.C. §§ 2712, 2713). Second, Rule F does not apply because "whereas the Limitation Act was enacted without procedural mechanisms, Congress expressly set forth procedures for implementing [OPA]. . . . Unlike the Limitations Act, [OPA] can accomplish its statutory goals without the assistance of Rule F." *Id.*

The court also analyzed OPA according to principles of statutory construction and found that because (1) OPA and the Limitation Act conflict; (2) OPA was enacted after the Limitation Act; and (3) OPA is more specific than the Limitation Act, OPA claims "must be resolved pursuant to the procedures contained in that statute, rather than replacing those procedures with

8

Rule F." *Id.* at 1351. Finally, the court acknowledged the owners' concerns that dismissing the limitation proceeding could force them to defend against multiple suits in various fora. In response to this concern, the court stated that "[t]he Owners' understandable interest in consolidating this potentially unwieldy litigation does not overcome the Congressionally mandated procedures for adjudicating [OPA] claims." *Id.* The court held therefore that the claims brought under OPA were not subject to the limitation proceeding brought by the owners under the Limitation Act.

The law is abundantly clear: **claims for damages and pollution cleanup brought pursuant to OPA cannot be subjected to a limitation of liability action under the Limitation Act.** Thus, no OPA claims, whether asserted or prospective, can be subjected to the limitation proceeding currently before this Court. To hold otherwise would directly contradict the clear weight of jurisprudential authority, the sound principles of statutory construction, and the documented legislative intent behind OPA. To hold otherwise would also allow Transocean to make an end-run around that law and would grievously impair the rights of those already victims of this unprecedented environmental disaster. The standards of liability and the limitations of liability set forth in the Limitation Act and OPA are not the same, and both Congress and the courts have recognized that the Limitation Act does not govern OPA claims. Moreover, enforcing the Monition against Claimants and others will subject them to a bar date that should not apply to their OPA claims, thereby potentially depriving them of the right to bring suit against Transocean.

Transocean's Petition specifically includes OPA claims concerning oil pollution emanating from the well within the limitation concursus it has asked this Court to establish. Although Transocean may dispute the Coast Guard's designation of it as a responsible party for

pollution from the well, the inclusion of these claims in the Petition directly contradicts Transocean's public representations outside this Court about the scope and purpose of this limitation action. In a May 13, 2010 press release issued by Transocean on the day it filed this action, Transocean represented that: "The company also emphasized that this filing does not impact lawsuits filed under OPA . . . ."[4] Indeed, even Transocean recognizes that this concursus proceeding cannot include claims brought or to be brought under OPA despite its pleading to the contrary. Accordingly, this Court's Monition should be lifted, and this action should be dismissed, with regard to any asserted and prospective OPA claims.

## II. The Court Should Transfer this Entire Proceeding to the Eastern District of Louisiana, Which Is a More Convenient Forum.

If this Court does not dismiss all of this action, it should transfer any remaining limitation proceedings to the Eastern District of Louisiana, which is a more convenient forum for their litigation and resolution. Rule F(9) addresses the venue for limitation proceedings. The rule requires that a limitation complaint be filed "in any district in which the owner has been sued with respect to any such claim" provided that the vessel seeking limitation has not been attached or arrested. Rule F(9) also provides, however, for the transfer of a limitation proceeding "for the convenience of the parties and witnesses, in the interest of justice." According to Rule F(9), "if venue is wrongly laid the court shall dismiss or, if it be in the interests of justice, transfer the action to any district in which it could have been brought."

In determining whether transfer is appropriate under Rule F(9), district courts consider the same *forum-non-conveniens* factors that control whether transfer is proper pursuant to 28 U.S.C. § 1404. *In re TLC Marine Servs., Inc.*, 900 F. Supp. 54, 56 (E.D. Tex. 1995). "The goal of § 1404 'is to prevent waste of time, energy, and money to protect litigants, witnesses, and the

---

[4] News Release, "Transocean Ltd. Affiliates File Limitation of Liability Petition," May 13, 2010. *See* Exhibit 4 attached to the Bilek Decl.

public against unnecessary inconvenience and expense." *Shoemake v. Union Pac. R.R. Co.*, 233 F. Supp. 2d 828, 829 (E.D. Tex. 2002) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

The Fifth Circuit recently identified the following private and public interest factors for district courts to consider in determining the propriety of a transfer request:

> The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (internal citations omitted).

No one factor is to receive decisive weight. *Id.* Instead, transfer is proper where, after considering all the factors, transfer to a different forum better serves the convenience and the interests of justice. *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989). The trial court has vast discretion in ruling on a transfer motion. *Weber v. Coney*, 642 F.2d 91, 93 (5th Cir. 1981). This action should be transferred to the Eastern District of Louisiana – the district in which the proof is located; where compulsory service of process is available for the largest number of potential witnesses; where the cost of attendance is lowest for willing witnesses as well as the victims of this travesty themselves; and where there exists the strongest local interest in resolution of this matter.

On May 14, 2010, counsel for Natalie Roshto filed a Motion to Transfer this action on the basis of Rule F(9) and 28 U.S.C. § 1404.[5] Section III of Ms. Roshto's Memorandum in Support of Motion to Transfer addresses, at length, the private and public factors enumerated by the Fifth

---

[5] *See* Document No. 12 and 12-1 filed in this action.

11

Circuit. In an effort to spare this Court repetitious filings, Claimants hereby adopt the discussion set forth in Section III of Ms. Roshto's memorandum pursuant to Federal Rule of Civil Procedure 10(c). Nonetheless, given that Ms. Roshto seeks recovery for personal injury claims and Claimants seek recovery for economic losses, Claimants raise the following additional bases for the transfer of this action to the Eastern District of Louisiana.

First, this motion is in no way intended as a sleight against this Honorable Court. To the contrary, the undersigned has the highest regard for, and faith in, this Court's ability. Nevertheless, the fact is that on April 20, 2010, the Deepwater Horizon exploded and sank in the Gulf waters not off the coast of Texas, but off the coast of Louisiana within the Eastern District. The devastation that has already ensued is unparalleled, and it is the citizens residing and who once made a living fishing in the Eastern District of Louisiana who are and will continue to be the hardest hit. That is the district in which this action should be resolved – the most convenient forum and the one with the most intimate connection to the individuals and businesses on which the impact of this travesty has been and will be most heavily felt.

Second, the Complaint itself implicitly recognizes that the Eastern District of Louisiana is a more appropriate and convenient forum than this Honorable Court. Exhibit A to the Complaint lists 102 lawsuits that have been filed against Transocean to date. Of those suits, 40 have been filed in the State of Louisiana, of which 37 have been filed in the Eastern District of Louisiana. Only 13 suits have been filed against Transocean in Texas, and only 2 of the Texas suits were filed in this Court. Injured parties have filed more suits in Louisiana and, in particular, in the Eastern District than in any other state or court. These statistics confirm that, regardless of the type of claim, the center of this horrific accident is in Louisiana, and, consequently, the Louisiana is the most appropriate and convenient forum in which to resolve those claims.

Third, to compel resolution of this action in any forum other than the Eastern District of Louisiana may not subtract from the likelihood that this matter will be resolved expeditiously and fairly, but it will most certainly add to the grievous impact this travesty has already had on its victims. To ask those victims to assemble their proof – physical, documentary, testimonial – and to incur the cost of hauling it hundreds of miles from their homes when most of them have just suffered the indefinite and maybe permanent loss of their livelihood as commercial fishermen adds insult to injury. Such an unjust result cannot be the intent of the law. In these circumstances, Transocean should bear the burden of showing why its chosen forum is proper. *Far East Shipping Co.*, 460 F. Supp. 107, 109 (SDNY 1978) (in action for exoneration from or limitation of liability brought by shipowner, shipowner had burden of showing that Southern District of New York was more convenient forum). Nevertheless, as demonstrated above, Transocean cannot satisfy that burden.

## CONCLUSION

For the foregoing reasons, this action should be dismissed or, alternatively, any remaining claims transferred to the United States District Court for the Eastern District of Louisiana.

Dated: May 19, 2010.

Respectfully submitted,

*[signature: Thomas E. Bilek]*

**THOMAS E. BILEK**
State Bar of Texas No. 02313525
Federal Bar No. 9338
808 Travis, Suite 802
Houston, Texas 77002
(713) 227-7720
FAX (713) 227-9404
tbilek@bileklaw.com

*Attorney-in-Charge for Putative Claimants, Ray Vath, the Louisiana Environmental Action Network, Inc., Charles Robin, III, Lisa Robin, and George Barisich, individually and on behalf of the United Commercial Fisherman's Association, Inc.*

OF COUNSEL:

**KELLY COX BILEK**
State Bar of Texas No. 00786286
The Bilek Law Firm, L.L.P.
808 Travis, Suite 802
Houston, Texas 77002
(713) 227-7720
FAX (713) 227-9404
kbilek@bileklaw.com

**JAMES M. GARNER (TX Bar No. 00792312; Fed. Bar No. 13895)**
**TIMOTHY B. FRANCIS (# 14973)**
**JOSHUA S. FORCE (# 21975)**
**SHARONDA R. WILLIAMS (# 28809)**
**EMMA ELIZABETH ANTIN DASCHBACH (# 27358)**
Sher Garner Cahill Richter Klein & Hilbert, L.L.C.
909 Poydras Street, 28th Floor
New Orleans, Louisiana 70112-1033
Telephone: (504) 299-2100
Facsimile: (504) 299-2300
jgarner@shergarner.com
tfrancis@shergarner.com
jforce@shergarner.com
swilliams@shergarner.com
bdaschbach@shergarner.com

**GLADSTONE N. JONES III (# 22221)**
**EBERHARD D. GARRISON (# 22058)**
**KEVIN E. HUDDELL (# 26930)**
**H. S. BARTLETT III (# 26795)**
**JACQUELINE A. STUMP (# 31981)**
Jones, Swanson, Huddell & Garrison, L.L.C.
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Facsimile: (504) 523-2508
gjones@jonesswanson.com
egarrison@jonesswanson.com
khuddell@jonesswanson.com
tbartlett@jonesswanson.com
jstump@jonesswanson.com

**STUART H. SMITH (# 17805)**
**MICHAEL G. STAG (# 23314)**
Smith Stag, L.L.C.
365 Canal Street, Suite 2850
New Orleans, Louisiana 70130
Telephone: (504) 593-9600
Facsimile: (504) 593-9601
ssmith@smithstag.com
mstag@smithstag.com

**VAL PATRICK EXNICIOS (# 19563)**
**CARLOS ALBERTO RAMIREZ**
Liska, Exnicios & Nungesser
365 Canal Street, Suite 2290
New Orleans, Louisiana 70130
Telephone: (504) 410-9611
Facsimile: (504) 410-9937
vpexnicios@exnicioslaw.com
caramirez@exnicioslaw.com

CERTIFICATE OF SERVICE

    I certify that a true and correct copy of the foregoing was filed via the Live District CM/ECF system on May 19, 2010, which caused an electronic copy of same to be served automatically upon counsel of record.

*[signature]*

Thomas E. Bilek