```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF TEXAS
 2                        HOUSTON DIVISION

 3

 4  TRITON ASSET LEASING GmbH,     *    Civil No. H-10-01721
    et al                         *
 5                                *
    VERSUS                        *    Houston, Texas
 6                                *    May 25, 2010
    ALL CLAIMANTS                 *    10:30 a.m.
 7

 8
                          STATUS CONFERENCE
 9            BEFORE THE HONORABLE KEITH P. ELLISON
                  UNITED STATES DISTRICT JUDGE
10

11  For the Petitioner:

12            Mr. Ronald L. White
              WHITE MACKILLOP & BAHAM P.C.
13            2200 West Loop South
              Suite 1000
14            Houston, Texas 77027

15
              Mr. Frank A. Piccolo
16            Mr. Kevin Dossett
              PREIS & ROY PLC
17            Weslayan Tower
              24 Greenway Plaza
18            Suite 2050
              Houston, Texas 76046
19

20            Mr. George M. Gilly
              PHELPS DUNBAR LLP
21            Canal Place
              365 Canal Street
22            Suite 2000
              New Orleans, Louisiana 70130
23

24  Proceedings recorded by mechanical stenography, produced by
    computer-aided transcription.
25
```

```
 1   Appearances - Con't:

 2

 3   For Claimant Natalie Roshto and Michael Williams:

 4           Mr. Scott R. Bickford
             MARTZELL & BICKFORD
 5           338 Lafayette Street
             New Orleans, Louisiana 70130
 6

 7

 8   For Claimant Billy Wilkerson and others:

 9           Mr. Steven L. Nicholas
             CUNNINGHAM BOUNDS, LLC
10           1601 Dauphin Street
             Mobile, Alabama 36604
11

12

13   For Certain Claimants:

14           Mr. Kurt Arnold
             ARNOLD & ITKIN LLP
15           1401 McKinney Street
             Suite 2550
16           Houston, Texas 77010

17

18   For Certain Claimants:

19           Mr. Anthony Buzbee
             The Buzbee Law Firm
20           JP Morgan Chase Tower
             600 Travis
21           Suite 7300
             Houston, Texas 77002
22

23

24

25
```

```
 1  Appearances - Con't:

 2

 3  For The Survivors of Jason Anderson:

 4          Mr. Ernest Cannon
            Ernest Cannon & Associates
 5          P.O. Box 1193
            Stephenville, Texas 76401
 6

 7

 8  For Certain Claimants:

 9          Mr. Matthew D. Shaffer
            SCHECHTER MCELWEE SHAFFER & HARRIS LLP
10          3200 Travis
            3rd Floor
11          Houston, Texas 77006

12

13  For the United Commercial Fisherman's Association of
    Louisiana:
14
            Mr. Thomas E. Bilek    (Appearing by telephone)
15          The Bilek Law Firm LLP
            808 Travis
16          Suite 802
            Houston, Texas 77002
17

18

19  For Claimant Sevel:

20          Mr. Thomas M. Sims    (Appearing by telephone)
            BARRON & BUDD PC
21          701 Brazos Street
            Suite 650
22          Austin, Texas 78701

23

24

25
```

```
 1   Appearances - Con't:

 2

 3   For Certain Claimants:

 4              Mr. James P. Roy
               DOMENGEAUX WRIGHT ROY & EDWARDS
 5              556 Jefferson Street
               P.O. Box 3668
 6              Lafayette, Louisiana 70502

 7

 8   For Anadarko and Mitsui:

 9              Mr. Robin C. Gibbs       (Appearing by telephone)
               Gibbs & Bruns
10              1100 Louisiana
               Suite 5300
11              Houston, TX 77002

12

13   For the State of Louisiana

14              Mr. Steven Jones         (Appearing by telephone)
               Ms. Amy Byron
15

16

17   Court Reporter:

18              Fred Warner
               Official Court Reporter
19              515 Rusk Avenue
               Houston, Texas 77002
20

21

22

23

24

25
```

1          THE COURT:   Good morning and welcome.

2               We had a number of inquiries about pro hac vice

3     admissions, and I promise to take those up at the hearing.

4               Does anybody want to orally move for admission?

5     I am happy to hear it.  We will follow it up with the

6     paperwork.

7               I normally take appearances of counsel to

8     begin.  I don't think we will be able to do that today.

9               Let me first ask, though, is someone on the

10    phone; is that correct?

11         MR. GIBBS:   Yes, Your Honor.

12         THE COURT:   An you identify yourself, please.

13         MR. GIBBS:   Yes.  This is Robin Gibbs for Anadarko

14    and Mitsui, Your Honor.

15         THE COURT:   So let's take up --

16         MR. JONES:   Your Honor, this is Steve Jones

17    representing the State of Louisiana, on the phone as well.

18    And with me on the phone is Amy Bryson, also representing the

19    State of Louisiana.

20         THE COURT:   Very well.  Anyone else on the phone?

21               All right.  Why don't we take appearances of

22    counsel from petitioner then.

23         MR. PICCOLO:   Your Honor.  Frank Piccolo and Ron

24    White and Kevin Dossett and George Gilly on behalf of the

25    petitioners limitations.

1          THE COURT:  We can take appearances if anyone

2   definitely plans to speak, that's fine, if you'd like to make

3   one now.  We will take appearances as counsel addresses the

4   Court.

5          I do feel lucky.  Any Judge would feel lucky to

6   have so many able and experienced lawyers in front of me.  I

7   know many of you personally and others by representation.  I

8   look forward to getting to know everyone in whatever time I

9   have this case.

10          On that subject, I thought we might turn first

11   to the issue of whether the motions to transfer, the motions

12   to stay and motions to modify the first day order should be

13   stayed pending action of the JPML.

14          MS. BRYSON:  Hi, this is Amy Bryson representing on

15   behalf of the State of Louisiana and Steve Jones.

16          THE COURT:  Welcome.

17          Did you wish to address that issue?

18          MS. BRYSON:  I didn't catch it.  I just came in.

19          THE COURT:  That's all right.

20          What I am asking is everyone first turn to the

21   issue of whether this Court should delay proceedings until

22   after the going to the panel and multi-district litigation

23   has a chance to address pending matters, which they, I

24   understand, plan to do on July 29th.

25          MR. WHITE:  Your Honor, Ron White for the Transocean

1   petitioners.

2            We believe that is correct; but more

3   importantly, Your Honor, two points of order that I want to

4   make up front on behalf of petitioners.  Number one, all of

5   the motions that are presently on file before Your Honor,

6   regardless of type, whether it's motions to modify, motions

7   to clarify, motions to transfer venue or any other type

8   motions are all chronologically premature.

9            THE COURT:  I understand the petitioner's argument

10  on that.  I do understand that.

11           MR. WHITE:  Secondly and more importantly, no one

12  who has presently filed a motion that is pending before this

13  Court has prior to that time filed a proper or any claim or

14  answer in this limitation proceeding.  As a result of that,

15  the petitioners firmly take the position that all of the

16  movants who are now presently non claimants have no standing.

17           THE COURT:  I do understand your point.  I have read

18  your brief.  I do understand that.

19           MR. WHITE:  All right.  And that's all I wanted to

20  address right now.

21           Now, in response to the Court's question, I

22  think that the appropriate thing to do -- and we have filed

23  motions to strike the various motions -- would be to clean

24  the docket that way and require everyone to follow the proper

25  procedural rules under the supplemental admiralty rules, file

1   claims and answers and then refile whatever type of motions

2   they want to file seeking any type of relief, procedural or

3   otherwise.

4           THE COURT:  Well, I do understand that point.

5               Does anybody want to speak to that?

6           MR. BICKFORD:  Yeah.  I would like to speak to that,

7   Your Honor.  My name is Scott Bickford.  I represent the

8   Roshtos and Michael Williams.

9               They have filed a motion to strike.  The motion

10  to strike bootstraps the limitation proceeding as assuming

11  the Federal Rules of Civil Procedure.  There is Fifth Circuit

12  case on point which basically says a 1404(a) motion to

13  transfer is timely when filed before an answer in this case.

14              I think that Court wants that issue briefed to

15  decide whether or not we have to file a motion -- an answer

16  in this limitation proceeding prior to having standing to

17  bring that issue, I will be happy to do that; but I think the

18  Fifth Circuit law is pretty clear on that.

19              And they wish to bootstrap Rule 5F to say that

20  a challenge to the limitation proceeding is the same thing as

21  my asking this Court to transfer the case to a different

22  venue.

23              I don't think that's a proper reading of it.  I

24  don't think the magistrate's decision of this Court that they

25  cite trumps the Fifth Circuit's decision In Re: Horseshoe

1  Entertainment, which 337 F3d 429 in this case, which clearly

2  goes to that issue.

3           So, I agree it is a preliminary issue that this

4  Court needs to take up prior to the motion to transfer; but I

5  can brief that in a couple days.  I assume that the Court

6  intended to set the motion for transfer at some future date

7  down the road.

8           THE COURT:  That's something we are going to talk

9  about.  And I don't anticipate any substantive or procedural

10  rulings today.

11           MR. BICKFORD:  Okay.  Thank you, Judge.

12           MR. NICHOLAS:  Your Honor, Steve Nicholas for Billy

13  Wilkerson and others.

14           THE COURT:  I have your briefs, too.  I read those.

15  Thank you, sir.

16           MR. NICHOLAS:  And I know where he stands on the

17  motion to modify as opposed to transfer, which I think the

18  motions to transfer are perhaps less time sensitive than the

19  motion to modify, because to the extent Transocean obtained

20  from Your Honor an injunction that is overbroad and beyond

21  the scope of rule, Supplemental Rule F, that needs to be

22  cleaned up now so that the mechanisms necessary, for

23  instance, when the claims under the OPA can start.  And so,

24  we really believe that needs to be determined before any kind

25  of determination by the JPML panel, which won't come until

1   August.

2           THE COURT:  Well, I am aware of your argument.  I'm

3   aware of the two cases from the First Circuit and the

4   Eleventh Circuit that do endorse your position.  I mean, I

5   think that is an important question.  I don't know what the

6   sequence ought to be, whether I ought to decide that before

7   the JPML or vice versa.

8           MR. NICHOLAS:  I mean, I think it makes sense for

9   Your Honor to determine where the case goes.  It makes sense

10  to see what the JPML says about where the case goes.  I mean,

11  those are sort of interrelated as far as transfer.

12          THE COURT:  I'm sorry.  I didn't follow your point.

13  That I should --

14          MR. NICHOLAS:  Well, in terms of transfer, whether

15  Your Honor transfers the case or keeps the case or whether

16  you send it to New Orleans or send it to somewhere else.  I

17  think that that sort of makes sense to wait and see what the

18  MDL panel says as far as where the case goes.  I mean, I

19  think that makes sense.

20              But to the extent Your Honor has issued an

21  injunction that's improper, regardless of where the case

22  goes, either the injunction's proper or it's not; and so,

23  that issue really doesn't -- isn't sensitive as to where the

24  case goes.

25          THE COURT:  Well, except to the extent that some

1  judge ultimate may reach different conclusions than I have

2  reached.

3          MR. NICHOLAS:  Well, Your Honor, if the law were

4  closed, I might agree; but every case that's looked at the

5  issue has decided that the OPA, which has its own specific

6  limitation proceedings, is not subject to a limitation

7  proceeding.  I mean, so it's not even enclose.

8          THE COURT:  That's not a claim for a relief that

9  you've pled yourself, though, on behalf of your class, is it,

10 the OPA?

11         MR. NICHOLAS:  We can't because we have to make a

12 presentment and wait 90 days for Transocean or any other

13 responsible party to act on the claim.  So jurisdictionally

14 we can't yet file a lawsuit.

15         THE COURT:  Is it your intention to do that?

16         MR. NICHOLAS:  Yes, sir.  I mean, I have no argument

17 that the case that I have filed as pled is stayed by Your

18 Honor's limitation injunction.  I have no position otherwise.

19 We are clearly subject to the limitation as we have pled.

20             But the OPA claims, and when in fact they are

21 ready to be filed, can be filed.  And the way we read Your

22 Honor's order, we can't even make a presentment of those OPA

23 claims, which are jurisdictional before you file them because

24 we would be violating Your Honor's injunction, which is

25 clearly beyond what Rule F contemplates.

1          THE COURT:  On the OPA, though, I mean, it goes to

2   appellate courts.  I mean, is there Fifth Circuit authority

3   on that?

4          MR. NICHOLAS:  There is Fifth Circuit authority in

5   the sense that they have dropped a footnote saying that the

6   Met Life case is an example of the types of cases that the

7   Limitation Act doesn't apply to.  That's in the Southern

8   Scrap case where the Court said that the Wreck Act was not

9   subject to limitation proceedings in Rule F, because the same

10   kind of language that the Court recognized in the Met Life

11   case as to why the OPA claims are not subject to the

12   Limitation Act.

13               If y'all looked at the OPA statute, it has its

14   own specific limitations period.

15          THE COURT:  I am aware of that.  I am aware of that.

16          MR. NICHOLAS:  And there is another problem that we

17   have with Your Honor's injunction in the sense the phrase

18   that says we can't sue anyone who in effect could bring a

19   claim back over.  We are worried that we are violating Your

20   Honor's injunction for suing BP.  I don't think Your Honor

21   thinks that.  I hope Your Honor doesn't think that.  But we

22   think it just should be cleaned up, and I don't think why it

23   shouldn't be cleaned up.

24          THE COURT:  I understand your point.

25               Mr. White.

1          MR. WHITE:  Your Honor, again we are back to the

2    fundamental issue of how we address the various methods of

3    relief that assorted counsel are asking for.

4               The remedy, it seems to me, for any of these

5    putative claimants is to do exactly what we have already

6    suggested, that is, to file a proper claim and answer before

7    this Court so that they now have standing to address whatever

8    issues they want to address and then to file motions to

9    modify, motions to clarify, whatever the case may be; but let

10   the Court aggregate all of those motions on a specific issue

11   so that the Court has the full picture of all of the relief

12   that any specific claimant or group of claimants may want

13   such that we don't end up having to modify or clarify one

14   order a dozen times or two dozen times.

15              There is a proper procedure to follow.  That

16   procedure thus far has not been followed.  And if it is

17   followed, then this Court has jurisdiction over all the

18   parties to then meet out whatever means of justice it wants

19   to.

20          THE COURT:  That issue in itself is contested.  You

21   know, I have received writings that the position that Rule F

22   does not require that the claim be filed before the

23   preliminary motions be taken on.  So, I hear what you're

24   saying.  I do understand it.

25          MR. WHITE:  As a matter of judicial administration,

1  though, Your Honor, that would make, it seems to me that that
2  would make the most sense.

3           They then have, the claimants who have filed
4  claims or cases in other jurisdictions, could then sever out
5  the Transocean petitioners who are named in this petition
6  from those existing petitions elsewhere and then proceed
7  unencumbered by this Court's injunction against non-limiting
8  parties.

9           THE COURT:   Thank you.

10           Yes, sir.

11           MR. BILEK:   Your Honor, just very briefly.   This is
12  Tom Bilek.   I represent the United Commercial Fisherman's
13  Association in Louisiana.

14           One of the things that I think in exhibit, you
15  should draw your attention to is Exhibit 6 to my declaration
16  on our motion to dismiss.   It's a press release by
17  Transocean.

18           THE COURT:   I have read that press release.

19           MR. BILEK:   Which says OPA --

20           THE COURT:   I saw that.

21           MR. BILEK:   Thank you, Your Honor.

22           THE COURT:   I was confused by that, but we will turn
23  to that in a moment.

24           MR. BICKFORD:   Your Honor, just a quick note.   In
25  terms of procedures, I think that the Court senses the

1   question of whether or not the MDL comes before the

2   limitation, the limitation comes before the MDL.  I think

3   that the MDL may be apart and separate from the

4   multi-district litigation and will stand that way.  We

5   certainly want to brief that issue in terms of how the

6   personal injury cases and the environmental cases will

7   dovetail into each other if at all with regard to claims

8   filed within the limitation by individuals against

9   Transocean.

10              At some point the OPA statute is going to allow

11  claims to be filed against Transocean if they can't be filed

12  already.  But certainly after the 90-day waiting period for

13  filing with BP claims can be filed against Transocean.

14  Whether or not the limitation can take, for instance, class

15  actions into it, I think the law is pretty solid that it

16  probably can't, but there is a whole laundry list of legal

17  issues --

18              THE COURT:  I agree.

19              MR. BICKFORD:  -- that this Court is going to have

20  to deal with on top of motions to transfer and on top of

21  everything else.  And as a potential claimant before this

22  Court, I'd certainly want to brief the Court with regard to

23  what our thoughts are in terms of before the Court makes a

24  blanket decision to wait until the MDL gets taken care of.  I

25  mean this is a very -- you know, this is not a static

1  situation.

2            This isn't something that just happened and

3  ended.  This continues to grow everyday.  And to have stay

4  orders in place or to stop things in their tracks doesn't

5  really make sense given the situation.  It's not just that

6  the rig blew up, sank and people died and were injured.

7  There is an ongoing environment disaster which Transocean may

8  be answerable to in this case, which grows every day.  And to

9  stop everything and wait 'til September for an MDL proceeding

10  to announce where it's going to go may not be in this

11  particular situation, in this particular case, particularly

12  for the citizens of Louisiana, a very pragmatic thing to do.

13            THE COURT:  That's the question I was trying to open

14  this with, whether I should await their ruling or not.  And I

15  don't know if perhaps we should set a briefing schedule on

16  that issue.

17            I gather we also have a preliminary issue, per

18  Mr. White, as to whether putative claimants who have not yet

19  filed claims can raise these issues.

20            MR. BICKFORD:  And on that issue, I would be happy

21  within two days to file my brief to the Court on that issue

22  and let the Court decide on the papers if, in fact,

23  Transocean is agreeable to that, rather than holding a

24  hearing.

25            THE COURT:  That's the kind of issue I did want to

1   decide today, what we are going to do on briefing.  I am

2   mindful that the order is broad, and I am mindful that it

3   impinges on some very important potential cases.  I am fully

4   aware of that.

5             Yes, sir.

6             MR. CANNON:  Your Honor, I am Ernest Cannon.

7             THE COURT:  Yes, sir.

8             MR. CANNON:  And I represent the survivors of Jason

9   Anderson.  He was the tool pusher at ground zero when the

10  explosion occurred.  The last time that he was seen was he

11  was trying to extinguish the fire while everybody else

12  abandoned the rig.

13            His widow hired me last Friday because of this

14  limitation proceeding.  It was not her interest to

15  immediately engage in litigation.  She's at a memorial

16  service in Mississippi today.

17            THE COURT:  I read about that.

18            MR. CANNON:  She had the service there in Bay City

19  in the Baptist church Saturday.

20            And we haven't filed anything, Your Honor,

21  because there's some sanctity -- it's somewhat unseemly to me

22  to be discussing this right now during the service before

23  he's even -- that his memory has been laid to rest.

24            And I understand these fellows have to protect

25  their legal rights and come to you early and all that.  What

1  I would ask you to do, Your Honor, is protect this lady's

2  interest.  To the extent that her husband was employed by

3  this defendant, her rights are clearly defined under the law.

4  Limitations clearly define how that applies to him.  We can

5  go take some depositions; we can prove privity; we can go

6  back to state court.

7            See, we got sued.  We didn't sue anybody.  She

8  got sued before she had a lawyer.  And now they're asking for

9  multi-district limitation, BP is; and she is being swept into

10 a middle, a state court MDL; they're trying to sweep her into

11 a federal Court MDL in some state she is not aware of, and

12 she's not even through with the funeral, Your Honor.

13           We would plead with the Court to give some

14 consideration to those that are similarly situated before we

15 get -- and the OPA claims I am sure have a great significance

16 on these people, and their fishermen and their oysters and

17 their boats and all; but we would like to have our case

18 determined in somewhat close to a traditional manner.

19           Your Honor, my client's deceased, is a hero;

20 and I hate to see him get swept up, his family.

21      THE COURT:  Well, whatever else is said today, I am

22 sure everyone within the sound of my voice does understand

23 that it involves -- this was a horrific personal tragedy for

24 a number of families.  I take absolutely no, no dissent on

25 that point.  I think I would ask you to communicate our

1  thoughts and our feelings to your client.  It's a profound

2  loss.  We understand that.

3        MR. CANNON:  That's kind and that's special, Your

4  Honor; and I'll do that.

5        MR. BICKFORD:  If I can respond --

6        THE COURT:  Yes, sir.

7        MR. BICKFORD:  -- to Mr. Whites' comment about why

8  Your Honor should wait.

9            I am prepared to argue the motion to strike if

10 Your Honor wants argument on that today as far as why a party

11 who is enjoined has standing to complain about being enjoined

12 whether they file a claim or not.

13            But Your Honor should keep in mind that Your

14 Honor OPA, it is certainly likely that there will be lots of

15 people who want to file OPA claims, who intend to file OPA

16 claims, who will file OPA claims that will never file

17 anything else and would never have to come to this court to

18 file an answer and a claim and or anything else if Your Honor

19 clarifies your injunction in such a way to follow existing

20 precedent because then they're able to pursue the

21 administrative remedies and the remedies which Congress laid

22 out under OPA, and they never have to do anything else.

23            So the notion that it's judicial economy, to

24 get everybody in the world who may want to file an OPA claim

25 to come here first before Your Honor says they can pursue

1   their OPA rights has it just backwards.  I think you are

2   going to force a lot of people to do things they might not

3   otherwise have to do.

4              We are ready to proceed on that because I think

5   the law is clear that as an enjoined party we're aggrieved

6   and we have the right to stand up and say Your Honor's

7   injunction is overbroad.

8              MR. ARNOLD:  Judge, Kurt Arnold on behalf of --

9              THE COURT:  I am sorry.  I didn't get your name.

10             MR. ARNOLD:  Kurt Arnold.

11             THE COURT:  Yes, sir.

12             MR. ARNOLD:  And let me maybe cure some of the

13   complaints they said concerning Mr. Bickford, how he hasn't

14   actually filed a complaint yet.

15             I have on behalf of about 15 families; and I

16   will tell you, Your Honor, my understanding from the filings

17   of Transocean is that they said in I think Document 14 that,

18   hey, OPA don't apply to this.  And so, if you look at

19   Document 14 filed before this Court, it's my understanding

20   that they're not contending that OPA claims should be --

21             THE COURT:  That's my next question.  I was going to

22   ask Mr. White that.

23             MR. ARNOLD:  And then, Your Honor, if I could just

24   follow on that.  Waiting for an MDL, an MDL is appropriate

25   for OPA claims and such.  This Court has to decide is the

1   limitation appropriate or not, okay.

2              THE COURT:   Yes.

3              MR. ARNOLD:   And the Jones Act seamen are wards of

4   this Court and any Court that they're otherwise before.

5                          And, Your Honor, what I ask this Court is

6   rather than delay and potential get us sucked into an MDL

7   with whoever knows wherever they decide, we've got a limited

8   number of injury and death claims that frankly deserve some

9   justice.

10                         And what I ask, Your Honor, is the question

11  that you need to answer, the privity or knowledge question

12  is:   I think that whether it's a handful of lawyers here, if

13  you give us five or six deposition, this limitation will be

14  over.   I mean, I am not sure if Your Honor has been watching

15  the news report.   Proving privity and knowledge isn't real

16  hard.   And then the MDL can go wherever the MDL can go, and

17  all the lawyers in this courtroom that have claimants can go

18  back to state court or the Federal District Court in

19  Louisiana.

20                         So what I would ask Your Honor to consider is:

21  Let's get some documents produced in 30 days.   We are going

22  to have to do it in this Court or whatever court we

23  ultimately end up in.   And let's get some depositions.   The

24  top five or six BP guys, let's take their depositions in the

25  30 days after; and then let us come back to your Court and

1  show, frankly, why we don't even need a limitation because I

2  don't think this is going to be a close question,

3  respectfully.

4          THE COURT:  Thank you.  Hold on just one moment.

5              Mr. White.

6          MR. WHITE:  Your Honor, with respect to Mr. Arnold's

7  comment, the proposal makes sense but only to the extent that

8  we get all the claimants who are properly going to come into

9  this Court before this Court before we start seeking sensible

10 relief.

11              The Court set a monition date.  That monition

12 date is in November.  Until that time neither this Court nor

13 any of the attorneys that are involved in this case will have

14 anything more than snapshots of what this case looks like.

15 Until we get the full complement of claimants in here,

16 regardless of whether they're individuals, survivors

17 commercial fishermen, restauranteurs, other business

18 enterprises -- who knows the full complement -- we can't

19 figure out whether the case should be transferred, whether

20 the case should stay here or some other disposition.

21              That's why limitation procedure follows a

22 specific timeline with a monition date to give everyone ample

23 opportunity to make their appearance and then for the Court

24 to look at the entire complement of claimants and make

25 intelligent decisions administratively, procedurally and

1   others as to how to wrap its arms around a situation such as

2   this, this particular situation probably being an

3   unprecedented magnitude before it's all over.

4          THE COURT:  I thought Mr. Arnold's point was,

5   though, that he didn't think at the end of the day there

6   would be a limitation at all.

7          MR. WHITE:  Again, factual determinations, something

8   that will require merits discovery participated in by all

9   claimants who have an interest.

10          THE COURT:  I understand the reason we want everyone

11   in the case before we start doing discovery, but is that a

12   luxury we have in this case?  I mean, that's an awfully long

13   delay, isn't it?

14               Before you sit down, Mr. White, I just read the

15   press release from your client; and I thought it very clearly

16   said that it was not seeking limitation on OPA claims.

17          MR. WHITE:  I think that's correct, Your Honor.

18   And there is nothing in Your Honor's injunctive order that

19   even mentions the OPA.

20          THE COURT:  Well, I don't know about that.

21          MR. WHITE:  In the one that I have that was filed,

22   unless I am sadly mistaken.

23          MR. BICKFORD:  If I could rise to point out to Your

24   Honor, at the bottom of page 1, carrying over to page 2 of

25   your order says "including without limitation any claims

1   asserted under the Oil Pollution Act" --

2            THE COURT:   That's what I remember.

3            MR. BICKFORD:   -- "USC 2701."  It's exactly the

4   contrary.

5            THE COURT:   That's what I remember.

6            MR. BICKFORD:   Should have said excluding, not

7   including.

8            MR. WHITE:   That's as to Transocean entities.

9            THE COURT:   Is your client okay with my modifying

10  this order at least to that extent?

11           MR. PICCOLO:   Your Honor, that's something that

12  obviously we would have to address separately and apart from

13  this; but I think that's something we would certainly

14  consider entering into an agreement as to the OPA claims.

15           THE COURT:   I would like you to respond maybe within

16  48 hours.

17           MR. PICCOLO:   Absolutely.

18           THE COURT:   Okay.

19           MR. WHITE:   Judge, one of the things that I need to

20  point out, though, is since we haven't seen these claims yet

21  in full complement of claims, we're going to have situations

22  where some people have pure OPA claims and nothing else.

23           THE COURT:   I understand that.

24           MR. WHITE:   And then hybrid claims, which will be

25  claims for OPA type damages but not brought under OPA but

1  rather under general maritime law standards, which would

2  still be subject to the limitation.

3          THE COURT:  Yes.  I understand.

4          Yes, sir.  You have been trying to say

5  something.  I apologize.

6          MR. BUZBEE:  Your Honor, Tony Buzbee.  I represent

7  15 of the claimants.

8          THE COURT:  Yes, sir.

9          MR. BUZBEE:  You can see there is a tension between

10 those who were actually on the rig, injured and killed, and

11 those who are bringing claims under OPA and negligence.

12          And Mr. Cannon said, he said it so eloquently,

13 but it is completely unfair for these families to be swept up

14 in this.  And this Court can fix that by simply having two

15 different monitions periods because there is a clear dividing

16 line between those people who are seeking damages for

17 pollution, et cetera.

18          THE COURT:  For economic damages.

19          MR. BUZBEE:  And those people who are seeking

20 damages like a traditional Jones Act seaman.

21          Just to give you an example.  This morning

22 Cameron, the blowout preventer manufacturer, either yesterday

23 afternoon or this morning, removed all my clients' cases from

24 state court and put them, now here we are in federal court.

25 And I am sure the argument's going to be, before you decide

1    to remand these cases -- and these cases are not brought

2    against Transocean, they're against BP.  There is no mention

3    of the OPA.  And they're against Cameron, which is a Texas

4    company that cannot traditionally remove.  But they removed

5    them.  And now again we're swept up in this federal court

6    practice, and we have people arguing that make these workers

7    and these widows wait for six months to find out where the

8    case is going to be.

9              And I would respectfully suggest one thing this

10   Court can do is say, look, I am going to have a monitions

11   period for those people who are bringing environmental  type

12   claims.  And frankly, if they don't shut this well down until

13   August, how could we have a monitions period in November?

14   There will be people crying and screaming that how can you a

15   monitions period if I have to file a claim and they haven't

16   capped the well by August.  So that's another reason perhaps

17   the Court would consider having a monitions period will

18   beyond November and a monitions period for those people who

19   were actually on the rig maybe a little sooner.

20             So we, the lawyers here, you have capable

21   lawyers represent already at least 30 to 40 claimants who

22   were on the rig who were either killed or injured; and let us

23   proceed, because you're the finder of fact for the privity

24   and knowledge.  That's you, Your Honor, as you know.

25             And so, we can either brief that.  We'd

1  probably win it on summary judgment, frankly, do some

2  depositions, set a discovery period, a docket control order

3  for these types of claimants and let those type of claimants

4  hang out there and do their briefing about whether they have

5  to have a claim and all that stuff that these widows and

6  workers are caught up in, and they shouldn't be caught up in.

7              THE COURT:   Thank you.

8              Mr. Arnold.

9              MR. ARNOLD:   Your Honor, if I could just second that

10  point to respond a little bit to what Mr. White said.   There

11  is no reason to wait for all 126, or however many potential

12  claimants from the actual rig, to file claims in this court

13  because, as Your Honor knows, the privity or knowledge test

14  is just going to be the upper guys.

15              And I will give you an example.   I represent a

16  tank cleaner on one hand, and he didn't know anything about

17  privity or knowledge.   And on the other hand I represent an

18  ROV operator who, in fact, writes daily reports to Transocean

19  and BP Houston.

20              And so, we know we needed the ROV operator, and

21  we know we needed the BP company men on site.   And so, the

22  handful of guys we actually need to talk to aren't that much.

23  I suspect between the lawyers in this room we can figure that

24  out, and we can bust this limitation sooner than later.

25              The second point I want to reiterate as to what

1  Mr. Cannon was saying is so far no one has committed, with
2  the exception of I think one employer, to continue wages,
3  okay.  So they're trying to wait until November before you
4  even start discovery, whereas I can tell you that a lot of, I
5  think -- unless I am wrong with Transocean -- they won't
6  commit one way or the other whether they're going to continue
7  wages to those that were hurt or otherwise in the rig.  I am
8  not talking about maintenance and cure.  These guys were
9  making 100, $150,000 a year, whether they're going to
10  continue the wages.
11              So it's unfair to put us at the end of the
12  line, and we can't start with discovery until November or
13  December, which would mean January, while these families are
14  hanging out there.  They did nothing to deserve this, you
15  know.  These are long-time company guys.
16              So I just ask Your Honor to allow us this
17  discovery, and we'll moot this limitation, I promise you.
18          THE COURT:  Well, I am aware of the many, many
19  criticisms of limitation actions.  I do think it's a
20  counterintuitive kind of remedy, and I understand its
21  historical antecedence.
22              I do want to proceed cautiously, and I don't
23  want to be unfair to the interest of either the petitioner or
24  the potential claimants.  I know the stakes are high.  I do
25  know that.

1              Would anybody else like to speak?

2              Okay.  I think what I would like to do is set a

3   briefing schedule that counsel will find user friendly to get

4   the benefit of all your thoughts on this constellation of

5   issues.

6              First, I guess the standing issue, if anybody

7   wishes to address that.

8              Secondly, the issue of whether we should wait

9   for the JPML.

10             Thirdly, thoughts on modifying the injunction,

11  pending, of course, what petitioner says about acquiescing

12  and the deletion of the OPA from the order I previously

13  entered.  And, of course, anybody who wants to commit their

14  views as to dismissal of the case which is also being sought.

15             How much time would anybody like on that?

16         MR. BICKFORD:  Judge, on the standing issue, I think

17  that we can brief it by next Monday.  I mean, it's not a very

18  complicated issue.

19         THE COURT:  I am thinking of inviting briefs on all

20  this, all this.  Different parties will wish to weigh in

21  different issues, I know that.  Some will not have a standing

22  issue and others will.

23             Nobody need to feel compelled to write if

24  they're satisfied with the writings that others that are

25  going to submit.  I do think we ought to move expeditiously.

1          Let's see.  This is the 25th.  First round of
2   briefs by a week from today perhaps.  It's the day after
3   Memorial Day, June 1st.  And then responses to what others
4   filed a week later, June 8th.  Is that doable?
5          MR. ARNOLD:  Yes, Your Honor.
6          MR. CANNON:  Yes, Your Honor.
7          MR. BICKFORD:  Your Honor, for clarification, we
8   filed briefs.  Are we free to --
9          THE COURT:  You can stand on --
10         MR. BICKFORD:  -- submit anything else if we see
11  there is something that's --
12         THE COURT:  You can stand on your briefs or you can
13  file supplemental briefs, either way.
14         MR. BICKFORD:  Thank you.
15         THE COURT:  There are so many people here, I feel
16  bad about misuse of time.  Are there other issues we ought to
17  be considering?  Does anybody wish to speak further about
18  issues that ought to be on our priority list?
19         MR. ARNOLD:  Just one, Your Honor, since it's been
20  raised.
21         THE COURT:  Yes, sir.
22         MR. ARNOLD:  Well, two things.
23         The other defendants are actively going out and
24  filing their own state court MDL motions and all things of
25  that sort.  I just want to make Your Honor aware of it.

1   They're taking the position limitation doesn't apply to them.

2   So we are going to take the same position and proceed against

3   them likewise.  I just wanted to make Your Honor aware of it

4   so I don't hear somebody saying that.

5             THE COURT:  I appreciate that.  I appreciate that.

6             MR. ARNOLD:  And the second thing, Your Honor, is I

7   have had people suggest that they're not going to respond to

8   written discovery in the other cases.  We will go ahead and

9   actually start sending our discovery so they can gather the

10  documents.  I assume the Court has no problem with that.

11            THE COURT:  Well, I am not going to tell any other

12  Judge how to conduct his or her docket.

13            MR. ARNOLD:  I am talking about in this limitation,

14  Your Honor.  As to Transocean we are going to start seeking

15  discovery.  I assume that's okay with Your Honor.

16            THE COURT:  Let me hear from Transocean on that.

17            MR. PICCOLO:  Your Honor, we have a right from the

18  20 days' delay to respond to the claims that were filed last

19  night by Mr. Arnold.  So, in the course, the usual course of

20  procedures on limitations, then we would have to comply with

21  that.  But I think the usual delay should apply.

22            THE COURT:  What are you asking for, 20 days?

23            MR. PICCOLO:  No, no.  What I am saying is that we

24  have 20 days as yet to respond to the claim.

25            THE COURT:  I understand that.

1          MR. PICCOLO:  And what I am saying is that I think

2    the usual delays should apply as opposed to having a

3    heightened or a quickened discovery date.

4          MR. DOSSETT:  Your Honor, if I could speak just a

5    second.  Kevin Dossett.  There is no reason to have discovery

6    before all the claimants are in this lawsuit.

7          THE COURT:  Well, I know there is some dissidence on

8    that.  I understand the need to proceed quickly, and I

9    understand also the need to make it a level playing field for

10   all claimants, but we really can't wait until November, can

11   we?

12         MR. DOSSETT:  We have to, Your Honor.  There is no

13   way to bifurcate this proceeding and proceed only personal

14   injury claimants and other claimants who might file by

15   November 15th.  There is just no way to do that under the

16   rules or under the case law.

17         MR. ARNOLD:  Judge, let me make this respectful

18   suggestion.  I will send them the request for production.

19   If they want to come to Your Honor and object and search and

20   turn over relevant documents, they can.  And then whatever,

21   whether they're going to wait until November or not is going

22   to work itself out in the next two weeks or whenever the

23   Court rules after that.  And so it will probably work itself

24   out.  I at least just wanted to let Your Honor know.

25         THE COURT:  I know.  That's fine.

1           Sir, do you have something to say?

2           UNIDENTIFIED ATTORNEY:  Mr. Arnold said it all, Your

3  Honor.

4           THE COURT:  Before we leave -- nobody need to

5  rise -- I want to confer with my colleagues.  Keep your

6  seats, please.

7

8                     (Court takes a brief recess)

9

10          THE COURT:  Just a couple of additional thoughts.

11          I will ask petitioner to respond in writing

12  within 48 hours so everybody has benefits of whatever your

13  client's position is.

14          I don't think we ought to spend too long in the

15  briefing on standing because there have been enough claimants

16  who have actually filed claims, filed responses that they can

17  raise the issue that other parties who may arguably not have

18  standing would raise anyway.  So I think it's a zero sum

19  gain.  It seems to me it is.  If I am wrong about that, I am

20  sure I will be told.

21          On the motion -- we haven't really talked about

22  the appropriate venue for this.  Would anybody, keeping in

23  mind that I am not going to rule today, would anybody like to

24  speak to whether it ought to be transferred to somewhere

25  else?

1          MR. BICKFORD:  Yes, Your Honor.  I do.  Scott
2  Bickford representing the Roshto and the Williams case.
3                This is fundamentally, as much as there has
4  been some talk about separating the limitations out between
5  environment claims and personal injury claims -- and I agree
6  with Mr. Arnold's sentiment that in fact this limitation
7  shouldn't be -- but as long as it is, it is a limited fund of
8  27 million dollars or whenever they have capped this at.  And
9  it represents not only my personal injury case and my
10  wrongful death case, it represents all of the environmental
11  cases can be filed against Transocean.
12          THE COURT:  Yeah.
13          MR. BICKFORD:  The vehicle of doing that, of course,
14  is the wait and file a claim against BP in OPA, wait 90 days,
15  and after 90 days I can sue anyone, including Transocean.
16  Presumably at that point this Court is going to get a hundred
17  thousand claims from every fisherman, oysterman and person in
18  Louisiana who is going to have to come to this Court and file
19  those claims into the limitation proceeding.
20                That's why, with regard -- as well as the State
21  of Louisiana, who happens to be on the phone, is probably the
22  largest single claimant that this Court will have to address
23  outside of the U.S. Trustee.
24                And in that situation, given that universe that
25  you're looking at, I think it only makes sense that this case

1   be transferred to the Eastern District of Louisiana where the

2   first filed case originated from, because of the sheer

3   magnitude of the claims and the damage.

4             I mean, at this point Texas is untouched.  At

5   this point there are very few claimants that actually lived

6   in Texas.  I represent one, but there are very few claimants

7   that lived in Texas.  And the only thing that's core here is

8   in fact the headquarters of the wrongdoer.  Everything is

9   being done out of Louisiana.

10            The joint effort to clean up the spill is

11  centered the Robert, Louisiana.  All of the Coast Guard

12  investigations and MMS investigations that are taking place

13  are taking place in Louisiana.  In fact, the Congressional

14  investigation will move to Louisiana next week and actually

15  take testimony in Louisiana.

16            So, with regard to the entire public aspect of

17  this case, it certainly begs that this limitation get

18  centered in Louisiana, and it's likely where the MDL will

19  center in this particular case.  And it makes sense to take

20  care of those matters there.  That's expressed in our brief,

21  in both briefs that I filed to the Court; and I will be happy

22  to supplement them; but in terms of the public policy aspect

23  of why this case begs to be in Louisiana at this point,

24  the --

25            THE COURT:  Okay.  All right.  Petitioner wish to

1   speak to that?

2           MR. WHITE:  Your Honor, yes.

3               First of all, venue is properly laid before

4   this Court under the Maritime Supplemental Rules.  So what we

5   are talking about is a forum non conveniens transfer if at

6   all.

7               Again, before we get the full complement of

8   claimants, make appearances and file claims and answers

9   before this Court, all we are going to have is a snapshot and

10  self-interested pockets of individuals talking about why this

11  case should be transferred elsewhere.  We are not going to

12  have the full picture.

13              There are a number of lawyers in this courtroom

14  right now who don't want this case transferred anywhere.

15          THE COURT:  I understand that.

16          MR. WHITE:  They want it left in Texas.

17              There are a number of lawyers over here that

18  want it transferred to the Eastern District of Louisiana,

19  others that want it taken to Alabama, to Mississippi, to

20  Florida, whatever the case may be.  And until we have the

21  opportunity of look at all the arguments from all of those

22  claimants from the various jurisdictions from which they

23  hail, we are not going to be able to intelligently respond

24  and the Court is not going to be able to look at the big

25  picture and see whether this case should, under the Fifth

1   Circuit test, be transferred at all.  Therein lies the

2   process.

3          What we are seeing its just snapshots this

4   morning and in the briefing that's been filed thus far,

5   snapshots from groups that have their own self-interest.  And

6   I am not sighing that critically; just that's what they're

7   doing as advocates.  We have to look at the big picture, not

8   just pieces of the puzzle in a vacuum.

9          MR. BICKFORD:  Your Honor, if you just turn on CNN,

10   you can see the big picture.  And, you know, unfortunately

11   the big picture is a very big picture.  And to say that we

12   have to wait until November or even beyond that when people

13   are still filing claims or still in necessative circumstances

14   because the oil is still coming into the coast of Louisiana

15   and they're still filing claims, that's a ridiculous

16   argument.

17          This Court is capable, capable of looking at

18   the situation as it exists now and the magnitude of the

19   situation that it exists now and take public notices of this

20   magnitude of this situation as it exists now and what these

21   companies have brought upon the Louisiana coast and on its

22   people and on the individual personal injury and death claims

23   in this case, the people that work for them.

24          We don't need to wait.  I mean, we have already

25   waited too long, with all due respect.

1          Mr. Cannon.

2          MR. CANNON:  Judge, I think --

3          THE COURT:  I am going to ask, if you all aren't

4    near a microphone, I am going to ask you to come so the

5    people on the phone can hear you.  I think we can hear you

6    okay in the courtroom.

7          MR. CANNON:  I think one thing that can solve the

8    dissension that we see among polluter plaintiffs and those of

9    us who represent widows and hurt people, and then here again

10   these people that are from Louisiana and Mississippi, if

11   we'll pursue what Mr. Arnold suggested, and that is, take

12   some depositions; and if the stay does need to be lifted,

13   then we will all go where we belong and be out of your hair,

14   and we won't be in a place that -- I am still troubled by

15   being accused as a venue shopper all my life with this being

16   the biggest venue shopping I have ever seen in my life by

17   defendants.

18          My lady, whose husband was swept off the rig,

19   is now being swept to different states and different courts

20   and different places and hasn't even filed suit.

21          What I would like to urge the Court to do is

22   let us take the deposition.  If there is no limitation, let's

23   get the stay lifted, go and be done with and try the cases

24   where they belong in our communities and not wherever we're

25   swept to.  We have been swept far enough, Your Honor.

1          THE COURT:  Anybody want to speak to a location

2     other than New Orleans or other than the Eastern District of

3     Louisiana?

4          MR. ARNOLD:  Your Honor, my only thought process --

5     Kurt Arnold on behalf --

6          THE COURT:  Yes, sir.  If you would come over.

7          MR. ARNOLD:  Kurt Arnold on behalf of the claimants.

8     My only thought process is the venue determination is going

9     to look a lot different depending upon if we carve out these

10    OPA claims like I think they get carved out.  At that point

11    you are really talking about a universe of 126 claimants.

12    And at that point it could be briefed by the parties.

13          And so, depending upon whether Your Honor

14    carves those out and this is really just a limitation and

15    personal injury matter or whether it includes everything

16    else, I mean, I think once we get to that step, it would be

17    more ripe for, respectfully, determination of venue.

18          THE COURT:  Well, I do understand that.

19          On the other hand, there are critical decisions

20    to be made; and I am concerned about whether I make them and

21    they have to be revisited.  I mean, that's not efficient.

22          MR. ARNOLD:  Okay.

23          THE COURT:  Thank you.

24          On a go-forward basis, all of you are welcome

25    to attend by telephone.  I appreciate your being here today,

1  but it's not necessary on a non-evidentiary hearing.

2            Anybody wish to say anything else at all?

3            MR. SIMS:   Your Honor.

4            THE COURT:   Yes, sir.

5            MR. SIMS:   Thomas Sims, Your Honor, with Barron &

6  Budd.   I represent several individual claimants.

7            Just one potential loose end with respect to

8  modifying the Court's injunction.   Assuming 48 hours from now

9  we get clarification from Transocean that they're going to

10  stand by their public statements, I assume we don't need to

11  wait until the end of the briefing schedule that the Court

12  has proposed for the Court to modify that?

13            THE COURT:   No.   I will do it instantly.

14            MR. SIMS:   Thank you, Your Honor.

15            MR. GILLY:   Your Honor, George Gilly.   We filed on

16  Friday a declaratory judgment action on behalf of

17  Transocean's excess liability insurers, filed it in this

18  Court.   It was assigned to Judge Harmon.   We identified this

19  as a related case.   I just thought I should bring that to

20  your notice.

21            THE COURT:   Are you asking to consolidate it?

22            MR. GILLY:   That's up to your procedures.

23            THE COURT:   Thank you.

24            MR. SHAFFER:   Your Honor, Matt Shaffer for some of

25  the claimants.

1           THE COURT:  Sir, I am going to have you come over.
2  I allegedly realized that people on the phone may not be
3  hearing everything that's being said.
4           MR. SHAFFER:  Your Honor, my claimants are in the
5  same boat as Mr. Buzbee's and Mr. Olias's.  These are related
6  cases.  I don't know which court here in the Southern
7  District that the remanded -- the removed cases have been
8  assigned to.  Will they be sent over to your court for
9  resolution as to remand or do we have any procedure for that?
10          THE COURT:  Well, it's not as formalized as it
11 probably ought to be.  I think it probably is the prerogative
12 of the Judge with the lowest numbered case.  I just don't
13 know if -- I haven't even considered the question of whether
14 I think they are so related they ought to proceed in this
15 case or not.  I mean, you are welcome to brief that.
16          I am going to be somewhat reticent about taking
17 additional cases on.  I think we have got enough in this.
18          MR. SHAFFER:  That makes sense.
19          Thank you, Judge.
20          THE COURT:  Nothing against New Orleans.  I want
21 everybody to understand that.  That's where I was born and
22 grew up.
23          Anything further from anyone?
24          All right.  As I said, I am looking forward to
25 working with each of you.  Thank you.

1                    CERTIFICATION

2

3

4

5          I, Fred Warner, Official Court Reporter for the

6   United States District Court for the Southern District of

7   Texas, Houston Division, do hereby certify that the foregoing

8   pages 1 through 41 are a true and correct transcript of the

9   proceedings had in the above-styled and numbered cause before

10  the Honorable KEITH P. ELLISON, United States District Judge,

11  on the 25th day of May, 2010.

12          WITNESS MY OFFICIAL HAND at my office in Houston,

13  Harris County, Texas on this the 31st day of May, A.D., 2010.

14

15

16

17

18                          _____
                                 Fred Warner, CSR
19                           Official Court Reporter

20

21

22

23

24

25