**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **IN RE THE COMPLAINT AND** | ) **Civil No. 10-CV-1721 KPE** |
| **PETITION OF TRITON ASSET LEASING** | ) |
| **GmbH, TRANSOCEAN HOLDINGS LLC,** | ) **IN ADMIRALTY** |
| **TRANSOCEAN OFFSHORE** | ) |
| **DEEPWATER DRILLING INC., AND** | ) |
| **TRANSOCEAN DEEPWATER INC., AS** | ) |
| **OWNER, MANAGING OWNERS,** | ) |
| **OWNERS PRO-HAC VICE, AND/OR** | ) |
| **OPERATORS OF THE MODU** | ) |
| **DEEPWATER HORIZON, IN A CAUSE** | ) |
| **FOR EXONERATION FROM OR** | ) |
| **LIMITATION OF LIABILITY** | ) |
| _____ | ) |

**MEMORANDUM OF LAW OF THE UNITED STATES, APPEARING
SPECIALLY AND NOT GENERALLY, IN SUPPORT OF OPPOSED
MOTION TO LIFT OR MODIFY THE COURT'S AMENDED MONITION
<u>AS TO CERTAIN CLAIMS AND CAUSES OF ACTION</u>**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 1

STATEMENT OF THE CASE ......................................................................... 4

DISCUSSION ................................................................................................... 5

I.      CLAIMS UNDER OPA ARE NOT COGNIZABLE UNDER
        THE LIMITATION ACT .......................................................................... 5

II.     OPA CLAIMS ARE NOT SUBJECT TO CONCURSUS UNDER
        EITHER THE LIMITATION ACT OR RULE F ..................................... 8

        A.      OPA Preempts Limitation Act Concursus Because Its Statutory
                Provisions Are Inherently Inconsistent in Their Purpose And
                Application with the Limitation Act and Rule F ............................ 9

        B.      Application Of Concursus to OPA Claims Would Debilitate the
                United States' Subrogation Rights ................................. 10

        C.      Rules of Statutory Construction Prescribe That OPA Amends
                Rule F ........................................................................... 12

        D.      Claims of State Governments Are Not Subject to the
                Limitation Act ................................................................ 14

III.    THE LIMITATION ACT AND RULE F DO NOT APPLY TO OTHER
        CLAIMS OF THE UNITED STATES FOR RESPONSE COSTS AND
        ENVIRONMENTAL CLAIMS RESULTING FROM THE SPILL ........ 15

        A.      The Limitation Act Does Not Apply to Civil Penalty Claims Under
                The Clean Water Act and Other Statutes ....................... 17

        B.      The Limitation Act Does Not Apply to Claims Cognizable
                Under the RHA .............................................................. 19

        C.      The Limitation Act Does Not Apply to Claims Cognizable
                Under the PSRPA .......................................................... 20

D.    The Limitation Act Does Not Apply to Claims Cognizable
      Under the NMSA ................................................................. 21

E.    The Limitation Act Does Not Apply to Claims Cognizable
      Under CERCLA ................................................................... 22

CONCLUSION ................................................................................. 22

CERTIFICATE OF SERVICE ........................................................ 24

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Bouchard Transportation, Inc. v. Environmental Protection Agency, State of Florida, United States, et al. ("Bouchard")*,
  147 F.3d 1344 (11th Cir. 1998), *cert. denied*,
  525 U.S. 1140, and *cert. denied*, 525 U.S. 1171 (1999)  ........... 2, 7, 9, 10, 12, 13, 14, 15

*In re Southern Scrap Material Company, LLC, in a Cause of Exoneration from, or Limitation of Liability*,
  541 F.3d 584 (5th Cir. 2008)  ............................................................ 3, 7, 13, 16, 19, 21

*In re Alex C Corp. (Seaboats, Inc. v. Alex C Corp., et al.)*,
  2003 A.M.C. 256 (D. Mass. 2003)  .................................................................... 7

*In re Jahre Spray II K/S*,
  1997 A.M.C. 845 (D. N.J. 1996)  .................................................................... 7

*In re Glacier Bay*,
  944 F.2d 577 (9th Cir. 1991)  .......................................................................... 16

*Hines, Inc. v. United States*,
  551 F.2d 717 (6th Cir. 1977)  ................................................................ 3, 12, 14, 18, 19

*In re Hokkaido Fisheries Co.*,
  506 F. Supp. 631 (D. Alaska 1981)  ................................................................ 6

*Lake Tankers Corp. v. Henn*,
  354 U.S. 147, 77 S. Ct. 1269, 1 L. Ed. 2d 1246 (1957)  .................................. 9

*In re Lloyd's Leasing, Ltd.*,
  764 F. Supp. 1114 (S.D. Tex. 1990)  .............................................................. 6

*In re Metlife Capital Corp. (M/V Emily S) ("Metlife")*,
  132 F.3d 818 (1st Cir.1997), *cert. denied*,
  524 U.S. 952 (1998)  ............................................................................ 2, 7, 10, 12, 13

*Complaint of Metlife Capital Corp.*,
  132 F.3d 818 (1st Cir.1997)  .......................................................................... 16

*In re Oswego Barge Corp.*,
   664 F.2d 327 (2d Cir. 1981) ........................................................................... 7

*The Snug Harbor*,
   53 F.2d at 411 ........................................................................................... 19

*Transporter Marine*,
   217 F.3d 335 (5th Cir. 2000) ................................................................... 3, 16

*Tug Allie-B, Inc. v. United States*,
   273 F.3d 936 (11th Cir. 2001) ............................................... 2, 12, 16, 20, 21

*United States v. Amoco Oil Co.*,
   580 F. Supp. 1042 (W.D. Mo. 1984) .......................................................... 18

*United States v. CF Industries, Inc.*,
   542 F. Supp. 952 (D. Minn. 1982) ..................................................... 3, 16, 17

*United States v. COSCO BUSAN, et al.*,
   557 F. Supp. 2d 1058 ................................................................................. 10

*United States v. Fisher*,
   977 F. Supp. 1193 (S.D. Fla. 1997) ........................................................... 21

*United States v. Great Lakes Dredge and Dock Co.*,
   259 F.3d 1300 (11th Cir. 2001), *cert. denied*, 535 U.S. 955 (2002) .............. 21

*United States v. M/V Jacqueline L.*,
   100 F.3d 1520 (11th Cir. 1996) ................................................................. 21

*United States v. M/V Miss Beholden*,
   856 F. Supp. 668 (S.D. Fla. 1994) ............................................................. 21

*United States v. Ohio Valley Co.*,
   510 F.3d 1184 (7th Cir. 1975) ................................................................... 18

*University of Tex. Medical Branch at Galveston v. United States*,
   557 F.2d 438 (5th Cir. 1977) ............................................................... 16, 19

## FEDERAL STATUTES

Act to Prevent Pollution from Ships ("APPS"),
  33 U.S.C. §1908 ............................................................................................ 19

Clean Air Act ("CAA"),
  42 U.S.C. §7413(b) ....................................................................................... 19

Clean Water Act,
  33 U.S.C. § 1251, *et seq.* ............................................................ 5, 17, 18, 19

Comprehensive Environmental Response, Compensation,
and Liability Act ("CERCLA"),
  42 U.S.C. § 9601, *et seq.* ......................................................................... 3, 22

Debt Collection Improvement Act of 1996,
  Pub. L. 101-410, 28 U.S.C. § 2461 ............................................................. 19

Endangered Species Act ("ESA"),
  16 U.S.C. § 1540 (a) ..................................................................................... 19

Limitation of Liability Act of 1851 (the "Limitation Act"),
  46 U.S.C. §§ 30501, *et seq.* ............................................................. 1, *passim*

Marine Mammal Protection Act ("MMPA"),
  16 U.S.C. § 1375(a)(1) .................................................................................. 19

National Marine Sanctuaries Act ("NMSA"),
  16 U.S.C. § 1431 *et seq.* ...................................................................... 3, 19, 21

Oil Pollution Act of 1990 ("OPA"),
  33 U.S.C. §§ 2701, *et seq.* ............................................................... 2, *passim*

Outer Continental Shelf Lands Act ("OCSLA"),
  43 U.S.C. § 1430(b) ...................................................................................... 19

Ports and Waterways Safety Act ("PWSA"),
  33 U.S.C. § 1236 ........................................................................................... 19

Resource Conservation and Recovery Act ("RCRA"),
  42 U.S.C. §§ 6928, 6978 (civil penalties) ................................................... 19

Rivers and Harbors Act ("RHA"),
33 U.S.C. §§ 401, *et seq.* ..................................................................... 3, 12, 13

Solid Waste Disposal Act,
42 U.S.C. 6901 *et seq.* ...................................................................................... 15

The National Marine Sanctuaries Act,
16 U.S.C. § 1431, *et seq.* ................................................................................. 21

The Park System Resource Protection Act ("PSRPA"),
16 U.S.C. §§ 19jj, *et seq.* ................................................................................ 20

Trans-Alaska Pipeline Authorization Act,
43 U.S.C. §§ 1651, *et seq.* ............................................................................... 16

## MISCELLANEOUS

Thomas J. Schoenbaum, *Admiralty and Maritime Law* 2 (2d ed. 1994) ......................... 8

Federal Civil Penalties Inflation Adjustment Act of 1990,
Pub. L. 101-410 .................................................................................................. 19

H.R. Conf. Rep. No. 101-653, at 103 (1990), *reprinted in*
1990 U.S.C.C.A.N. 779, 781 .............................................................................. 8

S.Rep. No. 101-94, at 14, *reprinted in* 1990 U.S.C.C.A.N. 722, 736 ........................... 8

S. Rep. No. 101-94, at 6 (1990), *reprinted in* 1990 U.S.C.C.A.N. at 728 .................... 10

S. Rep. No. 101-94, *reprinted in* 1990 U.S.C.C.A.N. at 736 ........................................ 14

Senate Comm. on Energy & Nat. Res.,
S. Rep. No. 328, 101st Cong., 2d Sess. 1 ...................................................... 20

Senate Rep. No. 101-94, 1990 U.S. Code Cong. & Admin.
News at 726, 732-33 ........................................................................................... 6

1990 U.S. Code Cong. & Admin. News 603 (1990) ...................................................... 20

vi

**MEMORANDUM OF LAW OF THE UNITED STATES, APPEARING
SPECIALLY AND NOT GENERALLY, IN SUPPORT OF OPPOSED
MOTION TO LIFT OR MODIFY THE COURT'S AMENDED MONITION
AS TO CERTAIN CLAIMS AND CAUSES OF ACTION**

## INTRODUCTION

Petitioners are various entities, one foreign, three domestic, associated with the ownership and operation of the MODU *Deepwater Horizon*. For ease of reference, we shall collectively refer to the Petitioners with the single moniker, "Transocean." On May 13th, Transocean filed this action under the Limitation of Liability Act of 1851 (the "Limitation Act"), 46 U.S.C. §§ 30501, *et seq.*, and Rule F of the Supplemental Rules for Certain Admiralty and Maritime Cases ("Rule F"). Stated simply, Transocean seeks to absolve ("exonerate") itself from liability concerning the *Deepwater Horizon* explosion, fire, and oil spill, or, alternatively, limit its liability to approximately $27 million. This it cannot do.[1]

The same day as its filing, and without notice to the United States, Transocean asked the Court to issue a monition under Rule F. On May 13th the Court issued its injunction ("Monition"), which enjoined the prosecution of existing actions or the filing of new ones outside this Limitation Act proceeding. Transocean requested that the Court issue an *ex parte* Monition that applies to the *Deepwater Horizon* tragedy, and, specifically, that appeared to encompass claims dealing with pollution response costs, damages, and environmental injuries caused by the oil spill. (Petition, ¶ 20.) However, Transocean did not advise the Court (by, for example, providing a citation to any number of governing statutes or cases) that the Limitation Act and Rule F may *not* enjoin environmental claims of the United States and the States, or even private parties suing under environmental statutes passed by Congress or under state laws that impose "any additional liability or requirements with respect to ... the discharge of oil or other pollution by oil within such State ... or ... any removal activities in

---

[1]    Solely for the purposes of this motion, the United States shall assume *arguendo*, and without prejudice, that each of the Petitioners falls within the class of entities that could in the first instance seek exoneration or  limitation for claims that properly would be within the scope of the Limitation Act.

connection with such a discharge ..."  OPA, 33 U.S.C. § 2718(a).

While Transocean's Petition (Paragraph 20) did cite to one of the relevant statutes, the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. §§ 2701, *et seq.*, Transocean cited OPA for the inaccurate proposition that the monition should *extend* to claims within the statute's reach.  Transocean's position was contrary to well-established law.

On May 19th, a group of private litigants moved to have their OPA claims dismissed from the action.  On May 24th, the United States sent a letter to Transocean counsel, setting forth concerns of the United States regarding the Limitation action and OPA claims, among others.  [The letter is attached as Exhibit "A" to counsel's Declaration, filed herewith.]

On May 25th, Transocean sent a letter to the Court, stating that it had not intended to encompass "direct" OPA claims within the Limitation Act proceeding.  Transocean accompanied the letter with a proposed Amended Monition which would exclude "direct [OPA] claims" from the action.  We understand that the proposed Amended Monition has been entered. If it was Transocean's intent to parse a dichotomy between "indirect" claims and "direct" claims, the non-existent distinction confused – rather than clarified – matters of great significance to the United States, the States, Indian Tribes, and other persons and entities having rights under OPA.[2]

OPA, its legislative history, and the case law applying OPA make clear that the entire statute most assuredly is not subject in any way to the Limitation Act and Rule F.  *See, e.g.*, *In re Metlife Capital Corp. (M/V Emily S) ("Metlife")*, 132 F.3d 818 (1st Cir.1997), *cert. denied*, 524 U.S. 952 (1998), and *Bouchard Transportation, Inc. v. Environmental Protection Agency, State of Florida, United States, et al.* ("*Bouchard*"), 147 F.3d 1344 (11th Cir. 1998), *cert. denied*, 525 U.S. 1140, and *cert. denied*, 525 U.S. 1171 (1999).

---

[2]   We understand that the distinction regarding "indirect" claims may be intended to refer solely to potential contribution claims against Transocean by other OPA "responsible parties."

As discussed in detail below, the Limitation Act is also wholly inapplicable to other causes of action that the United States may assert as a result of the oil spill and environmental damage.  *See, e.g., Tug Allie-B, Inc. v. United States,* 273 F.3d 936 (11ᵗʰ Cir. 2001) (the Limitation Act of 1851 does not apply to the Park System Resource Protection Act ("PSRPA"), 16 U.S.C. §§ 19jj, *et seq.*; the National Marine Sanctuaries Act ("NMSA"), 16 U.S.C. § 1443(a)(4) (Limitation Act is inapplicable); *Hines, Inc. v. United States*, 551 F.2d 717 (6th Cir. 1977) (Limitation Act is inapplicable to the Rivers and Harbors Act ("RHA"), 33 U.S.C. §§ 401, *et seq.*, and *In re Southern Scrap Material Company, LLC, in a Cause of Exoneration from, or Limitation of Liability*, 541 F.3d 584 (5th Cir. 2008); *United States v. CF Industries, Inc*., 542 F. Supp. 952 (D. Minn. 1982), and *Transporter Marine,* 217 F.3d 335, 338 (5ᵗʰ Cir. 2000) (Limitation Act is inapplicable to civil penalties); and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607(h) (Limitation Act is inapplicable to CERCLA).  Neither the Court's original nor its Amended Monition speak directly to these causes of action, nor did Transocean bring them to the Court's attention in its May 25ᵗʰ letter.

Furthermore, OPA specifically states that the Limitation Act does not affect "the authority of the United States or any State or political subdivision thereof .. (1) to impose *additional liability or additional requirements ...* or (2) to impose, or to determine the amount of, any fine or penalty (whether criminal or civil in nature) *for any violation of law ...* relating to the discharge, or substantial threat of discharge of oil."  33 U.S.C. § 2718(c) (emphasis added).  *See also*, 33 U.S.C. § 2718(a), quoted above and below, regarding OPA's  express reservation of rights to states under state law, as well as to persons proceeding under state law.

In accordance with the Local Rules of Court, counsel for Transocean and the United States have met and conferred in an attempt to resolve the issues addressed above.  Given the timing of  the Court's briefing schedule, counsel have conferred in good faith.  Although the United States believes that the parties were able to reach tentative agreement on many of the

3

issues, the parties were unable to reach agreement on all issues and on the specific terms and language of a proposed order that would be mutually satisfactory. The United States remains willing to continue to work with Transocean to resolve these issues prior to a court ruling.

Accordingly, due to the timing of the briefing schedule, the United States appears specially and files this protective motion to lift or modify the Court's Amended Monition so as to make clear that the United States is entitled to proceed separately and outside this Limitation Action with respect to any and all claims and actions the Government may pursue for pollution response costs, environmental damages, and other injuries stemming from the oil spill, including claims for injunctive relief; claims and actions asserting civil and administrative penalties under the CWA and other statutes; statutory claims, including, but not limited to, claims under the PSRPA, the NMSA, the CWA, the RHA; and claims under OPA – regardless of whether such OPA claims are cast as "direct" or "indirect" claims. This protective motion also seeks to lift or modify the Court's Amended Monition so as to make clear that the States, political subdivisions of the States, Indian Tribes, and private parties may also proceed outside this Limitation action pursuant to their rights under OPA and other applicable law.[3]

## STATEMENT OF THE CASE

We shall dispense with any lengthy description of the facts of the case as the Court, and indeed the country, is fully aware of the April 20th explosion, fire, and oil spill involving the *Deepwater Horizon*. Suffice it to say, eleven crewmembers lost their lives in the immediate disaster stemming from the explosion and fire aboard the vessel. As for the oil spill, we shall forego a cascade of words like "catastrophic" and "cataclysmic" as they simply do not do justice to the magnitude of economic, health, and environmental devastation wrought upon the nation's waters, across a swath of States, and upon entire communities,

---

[3] The United States' motion is wholly without prejudice to other potential rights, claims, and causes of action the United States may have, all such potential rights, claims, and causes of action against Petitioners or any person or entity expressly being reserved.

economies, and ecosystems as a result of the disaster.

Transocean initially invoked the Limitation Act as a way of zeroing out its liability to the *Deepwater Horizon's* deceased and surviving crewmen, as well as to others harmed by the spill.  By way of introduction to the 19th century Limitation Act, it can best be understood in the dim light of its most infamous use.  Following the sinking of RMS *Titanic* in 1912, the ship's owners invoked the Limitation Act in an attempt to avoid paying as little as a farthing to the survivors of the sinking, as well as to the estates of the more than 1,500 passengers who lost their lives.  Though the *Titanic's* owners failed in their goal of exoneration, they wildly succeeded in their second undertaking.  After lengthy, drawn-out litigation, the ship's owners paid the paltry sum of approximately $95,000 – to be shared by all of the survivors and each of the estates of the deceased.

Now, nearly one hundred years after the sinking of the *Titanic*, Transocean has followed in its predecessors' footsteps and sought refuge under the Limitation Act, but with an added Dickensian twist.  Within days of filing its Petition in this Court, Transocean publicly announced (from Switzerland) that it would be issuing approximately $1 billion in dividends to its shareholders.  That announcement was in rough tandem with another announcement dealing with the fact Transocean has so far made a *profit*, of sorts, as a result of the tragedy.  Thus, due to the good fortune of having insured the hull value of the MODU for a handy sum, Transocean announced that it actually booked a $270 million "accounting gain" on the difference between the real value of the *Deepwater Horizon* and the amount received in hull insurance following the vessel's sinking.

## DISCUSSION

## I.   CLAIMS UNDER OPA ARE NOT COGNIZABLE UNDER THE LIMITATION ACT

Transocean may not invoke the Limitation Act to limit liability for OPA claims, or its liability for other claims and causes of action discussed below.  OPA's explicit statutory language, governing case law, legislative history, and even secondary sources make that fact

exceedingly clear.

Focusing first on OPA, it is a successor statute to the cost recovery provisions of the Clean Water Act. Enacted following the 1989 *Exxon Valdez* spill, OPA establishes strict liability against "responsible parties," a term which includes the owners and operators of MODUs. OPA, 33 U.S.C. §§ 2701, 2702, 2704.[4]

In the case of *Deepwater Horizon*, the responsible parties for the MODU are subject to strict liability for all pollution removal costs, *plus* an initial liability limit of $75,000,000 for "damages". OPA, 33 U.S.C. § 2704(a) and (b).[5] The initial liability limit for damages can be breached, however, pursuant to the provisions set out at 33 U.S.C. § 2704(c).

At the outset, the standard of strict liability and the amount of liability under OPA are fundamentally irreconcilable with the fault-based standard of liability under the Limitation Act, as well as Transocean's $27 million limitation fund.

OPA's liability section states:

> *Notwithstanding any other provision or rule of law, and subject to the provisions of this chapter*, each responsible party for a vessel or facility from which oil is discharged, or which poses the substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shorelines or the exclusive economic zone is liable for the removal costs and damages specified in subsection (b) that result from such incident.

OPA, 33 U.S.C. § 2702(a) (emphasis added). Prior to OPA's enactment, the CWA governed liability limitations for federal removal costs and environmental damages associated with oil

---

[4]   British Petroleum ("BP"), as the holder of the relevant permit and lease for oil exploration and production, is also a responsible party under OPA. Liability of responsible parties under OPA is joint and several. *See, e.g.,* Senate Rep. No. 101-94, 1990 U.S. Code Cong. & Admin. News at 726, 732-33.

[5]   "Damages" are broadly defined in OPA and include, *inter alia*, ".. damages for injury to, destruction of, loss of, or loss of use of, natural resources, including the reasonable costs of assessing the damage, which shall be recoverable by a United States trustee, a State trustee, an Indian tribe trustee, or a foreign trustee." OPA, 33 U.S.C. § 2702(b)(2)(A). The term "natural resources" includes "land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States (including the resources of the exclusive economic zone), any State or local government or Indian tribe, or any foreign government." OPA, 33 U.S.C. § 2701(20).

spills.  *See*, 33 U.S.C. § 1321(f), (g), and (h).  Well-settled CWA case law provided that the Limitation Act could not limit a shipowners's liability for certain costs and damages from oil spills in navigable waters of the United States.  *See, e.g.*, *In re Lloyd's Leasing, Ltd.*, 764 F. Supp. 1114, 1137 (S.D. Tex. 1990) (claims to recover oil pollution costs by United States under the CWA are not subject to Limitation Act); *In re Hokkaido Fisheries Co.*, 506 F. Supp 631, 634 (D. Alaska 1981) ("notwithstanding" clause in CWA means that no other laws limit a polluter's liability for the discharge of oil); *In re Oswego Barge Corp.*, 664 F.2d 327, 340 (2d Cir. 1981) (the phrase "notwithstanding any other provision of law . . . . means that the remedies established by the [CWA] are not to be modified by any preexisting law.").

If anything, OPA made even clearer than the CWA that the Limitation Act was repealed as to oil spills.  *See, Metlife, supra*, 132 F.3d 818, 821 (1st Cir. 1997) ("a plain reading of the subsection suggests that OPA repealed the Limitation Act with respect to removal cost and damages claims against responsible parties. . . .  Accordingly, the procedural rules incorporated into the Limitation Act are inapplicable as well to such claims.") (citations omitted).  As the First Circuit summarized in *Metlife, id.* at 821-22 (citations omitted):

> In addition to the 'notwithstanding' clause, at least four other provisions in the statute explicitly repeal the Limitation Act with respect to certain types of claims.  *See* 33 U.S.C. §§ 2702(d)(1)(A) (repealing the Limitation Act as to third parties solely responsible for a spill; 2718(a) (repealing the Limitation Act as to state and local statutory remedies); 2718(c)(1) repealing the Limitation Act as to additional liability imposed by the United States, any state, or political subdivision); 2718(c)(2) (repealing the Limitation Act as to fines or penalties). . . .

> When we consider these five OPA provisions which explicitly repeal the Limitation Act as well as others that are irreconcilably in conflict . . . we find that the OPA has repealed the Limitation Act as to oil spill pollution claims arising under the OPA in the instant case.  '[W]here provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one. . . .'

*See also*, *Bouchard, supra,* 147 F.3d 1344; *In re Jahre Spray II K/S,* 1997 A.M.C. 845 (D. N.J. 1996) (Limitation Act inapplicable); *In re Alex C Corp. (Seaboats, Inc. v. Alex C Corp., et al.)*, 2003 A.M.C. 256 (D. Mass. 2003) ("At the hearing ... [petitioners] reversed their

7

initial position and acknowledged that the 1851 Limitation Act does not apply to ... claims

for recovery .. under the OPA ..").[6]

Congress also left no doubt as to its intentions regarding the Limitation Act, as set

forth in OPA's legislative history.  As quoted in *MetLife, id.* at 822:

> In considering the OPA's liability provision, Congress stated:
>
> 'Liability under this Act is established notwithstanding any other provision or rule of the law. This means that the liability provisions of this Act would govern limitations compensation for removal costs and damages notwithstanding any limitations under existing statutes such as the act of March 3, 1851..'
>
> H.R. Conf. Rep. No. 101-653, at 103 (1990), *reprinted in* 1990 U.S.C.C.A.N. 779, 781 (Joint Explanatory Statement of the Conference Committee explaining § 2702(a)). Furthermore, the Senate Report on the OPA bill asserts that the OPA 'completely supersedes the 1851 statute with respect to oil pollution.' S.Rep. No. 101-94, at 14, *reprinted in* 1990 U.S.C.C.A.N. 722, 736.

The leading modern treatise on admiralty and maritime law is in accord with OPA's

statutory language, its legislative history, and case law:

> OPA broadly supersedes the Limitation of Liability Act with respect to damages and removal costs under both federal and state law, including common law. Thus the Act should no longer apply to limit any action for damages or removal costs in connection with any pollution incident.

Thomas J. Schoenbaum, *Admiralty and Maritime Law* 2 (2d ed. 1994) at 376.  In sum, the

statute's literal language, its legislative history, the case law, and even the primary maritime

law treatise all make it abundantly clear that OPA rendered the Limitation Act inapplicable

to oil spills and their consequences.  Transocean's attempt to draw a distinction between

"direct" and "indirect" claims fails since OPA effected a repeal of the Limitation Act as it

applied to *all* OPA claims – with no arbitrary distinction for claims being "direct" or

"indirect."

---

[6]    The Fifth Circuit has cited and relied upon *Metlife's* holding that the Limitation Act does not apply to claims brought under OPA.  *In re Southern Scrap, supra,* 541 F.3d at 594 fn. 16.

## II.  OPA CLAIMS ARE NOT SUBJECT TO CONCURSUS UNDER EITHER THE LIMITATION ACT OR RULE F

The Amended Monition directs claimants to file their claims in this action.  However, the Amended Monition, prepared for the Court's signature by Transocean, cannot serve to create a concursus for the United States' oil spill claims – or even those of the various States and/or private parties who would sue under OPA or state-based remedies expressly allowed by OPA.  (See discussion *infra* regarding state claims expressly allowed by OPA, 33 U.S.C. § 2718.)  Neither the Amended Monition, the Limitation Act, nor Rule F can bar the United States' rights of recovery for OPA claims paid, and yet payable, by the Oil Spill Liability Trust Fund ("Fund") for which Transocean is liable under OPA.  As evidenced by the literal language and legislative history of OPA, the Limitation Act and Rule F simply do not apply, as is also true of pre-OPA law under the CWA regarding oil spills.[7]

Indeed, OPA's "notwithstanding" clause is even more specific in scope than the CWA's.  Whereas the CWA clause reads "notwithstanding any other provisions of law," 33 U.S.C. § 1321(f), the OPA clause reads "notwithstanding any other provision *or rule* of law." OPA, 33 U.S.C. § 2702(a) (emphasis added).  Thus, where another statute or rule, such as the Limitation Act and Rule F, are inconsistent with OPA, OPA's liability and compensation scheme governs.

In both *Metlife* and *Bouchard*, the vessel owners argued that Rule F could be invoked even if the Limitation Act itself had been repealed by OPA.  Both courts unequivocally rejected the shipowners' attempts. Before analyzing the issue in great detail, the Eleventh Circuit in *Bouchard* provided the short and simple answer:

> [OPA] is not subject to Rule F for two reasons:  (1) [OPA] claimants do not face a limited fund necessitating a pro rata distribution; and (2) Congress has specifically set forth procedures to implement the strictures of [OPA].

---

[7]  While we believe that Transocean may agree to modify the Amended Monition to address some of these concerns, we are filing this protective motion to make clear our position with respect to all of these issues in the absence of a final stipulation.

      *          *          *          *          *          *

> ... [N]either Rule F not the Limitation Act grants the Owners a right to a concursus. Rule F merely provides a procedure for distributing a limited fund among competing claimants where the real possibility exists that some claims will not be paid in full.

*Bouchard, supra,* 147 F.3d at 1350, and 1351-52, the latter section citing *Lake Tankers Corp.*

*v. Henn,* 354 U.S. 147, 152-53, 77 S.Ct. 1269, 1272, 1 L.Ed.2d 1246 (1957).

### A.    OPA Preempts Limitation Act Concursus Because Its Statutory Provisions Are Inherently Inconsistent in Their Purpose And Application with the Limitation Act and Rule F

The premature joining and resolution of OPA claims undermines OPA's remedial provisions, thereby shifting the cost of an oil discharge in navigable waters to innocent parties. By its nature, concursus cuts off claims not filed by the court imposed deadline. As set out in great detail in *Metlife* and *Bouchard, a*pplying the Limitation Act concursus would effectively nullify or modify a significant number of OPA provisions, including, but not limited to: 33 U.S.C. § 2702 (elements of liability); 33 U.S.C. § 2712 (rights of subrogation); 33 U.S.C. § 2713(c) (claims procedure, election); 33 U.S.C. § 2715 (subrogation); 33 U.S.C. § 2717(b) (jurisdiction/venue); and 33 U.S.C. § 27117(f) (period of limitations).

OPA provides an elaborate scheme for resolving claims. OPA, 33 U.S.C. § 2713. Concursus would completely disrupt that elaborate claims procedure. *Metlife, supra*, 132 F.3d at 824; *Bouchard, supra*, 147 F.3d at 1350-51. Congress specifically intended that the OPA claims mechanism supersede the Limitation Act. *See* S. REP. NO. 101-94, at 6 (1990), *reprinted in* 1990 U.S.C.C.A.N. at 728. In summary, because OPA, the Limitation Act, and Rule F are inherently inconsistent in their purpose, application, and language, OPA's explicit "notwithstanding" clause preempts application of the Limitation Act and its concursus procedure.

### B.    Application Of Concursus To OPA Claims Would Debilitate the United States' Subrogation Rights

The United States also retains subrogation rights for claims paid by the Fund for removal costs and damages. *See,* 33 U.S.C. §§ 2715 and 2712(f). Before presenting a claim

to the Fund, a non-government claimant must first present its claim to the responsible party. *See*, 33 U.S.C. § 2713(a); *cf.*, *United States v. COSCO BUSAN, et al.*, 557 F.Supp.2d 1058, 1063-64, 2008 A.M.C. 1360 (N.D. Cal. 2008) (OPA claims procedure is not applicable to claims of the United States).  If the responsible party denies the claim or does not settle it within 90 days, the claimant may then maintain a cause of action against the responsible party or present the claim to the Fund for payment.  *See* 33 U.S.C. § 2713(c).

If a court were to conclude that claims respecting OPA liability are subject to concursus, the financial burden of the spill could fall squarely upon the Federal Government instead of upon the responsible parties.  For example, assume the Amended Monition stands and the deadline for filing OPA claims remains November 2010.  Thereafter, assume a claimant presents a damage claim to Transocean, as a responsible party, which then denies the claim as time-barred under the deadline for filing claims in the Limitation proceeding. Next assume that the claimant presents the claim to the Fund established by OPA. If the Fund were to pay on a properly presented claim, the United States would acquire the right of subrogation and have a statutory OPA-based right to proceed against the responsible party. *See,* 33 U.S.C. §§ 2712(f), 2713, and 2715(a).

If the Amended Monition bars the claimant from recovering against the responsible party, the United States, as a subrogee, may also be prejudiced in recovering against the responsible party.  Consequently, if the Amended Monition allows the Limitation Petitioner to default the OPA claimants who did not file by the Court's deadline, the Fund could be forced to absorb the cost of all claims presented to the Fund thereafter.

That absorption would continue until the limitation periods for presenting claims against the Fund expire.  OPA provides that a claimant has *six years* from the time removal actions are completed to present a claim to the Fund for removal costs.  OPA, 33 U.S.C. § 2712(h)(1).  A claimant has three years from the date the injury should reasonably have been discovered or, when a natural resource damage assessment is performed, three years from the completion date of the assessment, whichever is later, to present a claim to the Fund for

11

damages. 33 U.S.C. § 2712(h). The only prerequisite to filing a claim against the Fund is that the claimant first present the claim to a responsible party.

Except as provided in 33 U.S.C. § 2717(f)(3) and (4), OPA imposes a three-year statute of limitation for filing actions against a responsible party to recover costs and damages as set forth in OPA. *See,* 33 U.S.C. § 2717(f)(1) and (2). OPA extends the limitations period for contribution actions by three years from the judgment date. 33 U.S.C. § 2717(f)(3). OPA also extends the limitations period for subrogation actions by three years from the date the Fund pays a subrogated claim. *See,* 33 U.S.C. § 2717(f)(4). By implication, therefore, the United States' statutory subrogated rights against a responsible party may exist for nine or more years under OPA – compared to the November 2010 deadline for filing claims in the Limitation proceeding.

When it enacted OPA, Congress did not envision that a Rule F concursus would forever bar all OPA claims against the responsible parties that are not filed under the time constraints of a limitation action and Rule F. Any interpretation of the Amended Monition and Rule F whereby OPA claims are subject to concursus would eviscerate, wholesale, the United States' subrogation rights, and also the rights of third-party claimants to determine if they have been injured. Both the *Metlife* and *Bouchard* courts examined each of the foregoing factors in detail and held Rule F to be inapplicable. As aptly summed up in *Metlife*, *supra*, 132 F.3d at 824:

> Moreover, even if the courts consistently enlarge the monition period for subrogation claims, in many instances, the limited fund established by the concursus procedure will already have been exhausted.
>
> \*          \*          \*          \*          \*          \*
>
> ... In contrast to the OPA's claims procedure, Rule F forces all claimants into litigation against the vessel owner. If a claimant fails to appear in the limitation action within the monition period, he or she is enjoined from raising any claims. *See* Rule F(3). In view of these inconsistencies, we conclude that Rule F concursus even if independent of the Limitation Act is inapplicable to OPA claims.

The same result is compelled here.

12

## C.      **Rules of Statutory Construction Prescribe That OPA Amends Rule F**

Even if Rule F applied to claims subject to limitation under statutes other than the

Limitation Act, rules of statutory construction prescribe that OPA amends Rule F to the

extent the two statutes are inconsistent.  In *Hines, Inc. v. United States*, the court held that

the Limitation Act did not limit a shipowner's strict liability under the Rivers and Harbors

Act, 33 U.S.C. §§ 408 and 411, for damage to river improvements built by the United States.

*See*, *Hines, Inc. v. United States*, 551 F.2d 717, 729-30 (6th Cir. 1977); *Bouchard*, *supra*, 147

F.3d at 1351; *Tug Allie-B, Inc. v. United States*, 273 F.3d at 941-42 (addressing the PSRPA

and the Limitation Act).  Specifically, the Fifth Circuit applied this principle to the Wreck

Act, holding that Wreck Act superseded the Limitation Act:

> First, Congress made a clear policy choice in the 1986 amendments to
> supersede with unlimited personal liability the *in rem* liability limitation that
> vessel owners had enjoyed under the previous versions of §§ 414 and 415 of
> the Wreck Act. Thus, it is very unlikely that Congress intended for vessel
> owners to be able to cancel out this legislative decision by relying on the
> similar *in rem* protection of the 1851 Limitation Act. Permitting Southern
> Scrap to invoke the Limitation Act in this case would nullify the effect of the
> new §§ 414(b) and 415(c), which we have determined impose unlimited
> personal liability upon a vessel owner for governmental removal costs, when
> the owner fails to comply with its obligation to remove its sunken vessel from
> a navigable waterway. [Citations omitted.]
>
> *        *        *        *        *        *
>
> Second, in concluding that the Wreck Act 'implicitly limits the scope of the
> Limitation Act,' 557 F.2d at 452, the *University of Texas* Court applied the
> longstanding principle that when two statutes irreconcilably conflict, the more
> recent statute controls. *Id.* at 455 ('This is not to say that the Limitation Act no
> longer has any vitality. It is rather to say that its force succumbs to that of a
> later statutory enactment which, when still later construed by the Supreme
> Court in a manner that wars with the policies of the Limitation Act, must
> prevail over the earlier Act.') ... .

*In re Southern Scrap Material Company, supra,* 541 F.3d at 593-94.[8]  The same point was

re-affirmed in *Bouchard*, *supra*, 147 F.3d at 1351:

Subjecting OPA 90 claims to Rule F effectively would allow ship owners to

---

[8]    The Wreck Act is comprised of certain provisions of the Rivers and Harbors Act, 33 U.S.C.
§§ 401, *et seq.*

13

opt out of the Congressionally mandated procedures for resolving OPA 90 claims. Additionally, the venue provisions of OPA 90 permit claimants to proceed 'in any district in which the discharge or injury or damages occurred, or in which the defendant resides, may be found, has its principal office, or has appointed an agent for service of process.' 33 U.S.C. § 2717(b). The injunction issued by the district court in a Rule F proceeding would require OPA 90 claimants to proceed only in the district court chosen by the vessel owners, and the process envisioned by OPA 90's jurisdiction and venue provisions would be rendered meaningless. Similarly, OPA 90 grants jurisdiction to state courts to hear claims arising thereunder. 33 U.S.C. § 2717(c). This grant of concurrent jurisdiction would be rendered meaningless if OPA 90 claims were subject to Rule F because Rule F complaints must be filed in federal court. *MetLife,* 132 F.3d at 822.

As discussed above, OPA's "notwithstanding" clause preempts "any other provision or rule of law." 33 U.S.C. § 2702(a). As well, the "notwithstanding" clause stipulates that each responsible party is liable for removal costs and damages "subject to the provisions of this chapter." *Id.* Under OPA, the United States is entitled to commence an action against a responsible party, at a time of its own choosing, in a venue prescribed by OPA, and within the limitation periods set forth in the statute. *See,* 33 U.S.C. § 2718. OPA specifically provides that "an action may be commenced under this subchapter for recovery of removal costs *at any time after such costs have been incurred.*" 33 U.S.C. § 2717(f)(2) (emphasis added). Conversely, an injunction under the Limitation Act or Rule F, if applicable, would foreclose a contemporaneous action against a shipowner under OPA.

Consequently, OPA and the Limitation Act conflict, as do OPA and Rule F(3). For claims cognizable under OPA, the "notwithstanding" clause preempts the injunction that otherwise would arise under the Limitation Act and Rule F. OPA, as a subsequent act of Congress, overtakes the Limitation Act because the two are inherently inconsistent. *See, e.g.*, *Hines, Inc. v. United States*, 551 F.3d at 729-730. *See also*, *Bouchard*, *supra*, 147 F.3d at 1350 ("In resolving the conflict between the Rule F procedures and the OPA 90 procedures, a fundamental principle of statutory construction requires that we apply the more specific procedures."). As to OPA, its legislative history is hardly silent on the conflict between the two statutes – indeed, it clearly states that the Limitation Act is "explicitly made inoperative by this bill for claims arising under this legislation." S. REP. NO. 101-94, *reprinted in* 1990

14

U.S.C.C.A.N. at 736.

### D.      Claims of State Governments Are Not Subject to the Limitation Act

As a courtesy to the Court, as well as to the various States and private parties which have sustained damages as a result of the *Deepwater Horizon* spill, we also point out that OPA expressly permits states to impose additional liability and requirements for oil spills above the liability limits established by OPA 90 and the Limitation Act.  OPA states:

> (a) Preservation of State authorities; ...
>
> > Nothing in this Act or the Act of March 3, 1851 [the Limitation Act] shall–
>
> (1)      affect, or be construed or interpreted as preempting, the authority of any State or political subdivision thereof from imposing any additional liability or requirements with respect to--
>
> > (A) the discharge of oil or other pollution by oil within such State; or
> >
> > (B) any removal activities in connection with such a discharge; or
>
> (2)      affect, or be construed or interpreted to affect or modify in any way the obligations or liabilities of any person under the Solid Waste Disposal Act (42 U.S.C. 6901 et seq.) or State law, including common law. ...

OPA, 33 U.S.C. § 2718(a).  In *Bouchard*, the Eleventh Circuit dealt with Florida's oil spill law and applied OPA's savings provision in the specific context of the Limitation Act and Rule F, holding the latter to be inapplicable:

> OPA 90 authorizes states to adopt liability laws for oil spills and exempts those laws from the provisions of the Liability Act. 33 U.S.C. § 2718. Accordingly, the Florida Act is neither subject to the Limitation Act's provisions nor otherwise preempted. We will not impose Rule F on the Florida Act because, like OPA 90 claimants, Florida Act claimants do not face a limited fund. The Florida Act establishes the Florida Coastal Protection Trust Fund (Florida Fund) to ensure that all claims are paid in full despite the limitation of liability enjoyed by responsible parties. Fla. Ch. 376.11. Moreover, as discussed in the previous section of this opinion, the Owners do not have a general entitlement to a concursus; Rule F is not designed to make litigation more convenient for vessel owners.

*Bouchard*, *id.,* 147 F.3d at 1352.  Accordingly, claims of the various States, as well as private parties proceeding under state law, are free from the  Limitation Act and Rule F and must be excluded from this action.

15

III.   **THE LIMITATION ACT AND RULE F DO NOT APPLY TO OTHER CLAIMS OF THE UNITED STATES FOR RESPONSE COSTS AND ENVIRONMENTAL CLAIMS RESULTING FROM THE SPILL**

When Congress enacted OPA, it spoke directly and unambiguously to the right of the United States, the States, and any political subdivisions of the various States to impose additional liabilities, requirements, fines, and penalties free of the constraints of the Limitation Act.  OPA therefore provides:

(c)   *Additional requirements and liabilities; penalties*

Nothing in this Act, the Act of March 3, 1851 (the Limitation Act), or section 9509 of title 26, shall in any way affect, or be construed to affect, the authority of the United States or any State or political subdivision thereof –

(1)   *to impose additional liability or additional requirements*; or

(2)   *to impose, or to determine the amount of, any fine or penalty (whether criminal or civil in nature) for any violation of law*;

relating to the discharge, or substantial threat of a discharge, of oil.

33 U.S.C. § 2718(c) (emphasis added).  Even before OPA expressly preempted application of the Limitation Act, the courts consistently held that remedial and enforcement provisions in other federal environmental statutes are not subject to the Limitation Act's limits of liability.  *See, United States v. CF Industries, Inc.*, 542 F. Supp. 952, 956-57 (D. Minn. 1982) (claim for statutory civil penalty under the CWA for discharge of hazardous material not subject to limitation); *In re Glacier Bay*, 944 F.2d 577, 582-83 (9th Cir. 1991) (holding that even without express language referring to the Limitation Act, the comprehensive liability scheme of the Trans-Alaska Pipeline Authorization Act, 43 U.S.C. §§ 1651, *et seq.*, implicitly repealed the Limitation Act); *University of Tex. Med. Branch at Galveston v. United States*, 557 F.2d 438, 448 (5th Cir. 1977) (civil actions to recover wreck removal costs under the RHA not subject to Limitation Act); *see also*, *Tug Allie-B, Inc. v. United States*, 273 F.3d 936 (strict liability action to recover damage to a unit of the National Park system).  Accordingly, the right of the United States to proceed outside the Limitation Act for penalties, injunctive relief, and other applicable relief and actions under remedial statutes

16

expressly preserved and allowed by OPA is unquestioned.

In the Fifth Circuit, the non-application of the Limitation Act to federal remedies is well established.  As stated in *In re Southern Scrap, supra,* 541 F.3d at 594 fn. 16:

> In addition to the Wreck Act, courts have found that other later-enacted statutes impliedly repealed the Limitation Act for cases arising under those statutes. *See Tug ALLIE-B,* 273 F.3d at 948-49 (holding that the Limitation Act does not apply to claims brought under the Park System Resource Protection Act); *Complaint of Metlife Capital Corp.,* 132 F.3d 818, 822 (1st Cir.1997) (holding that the Limitation Act does not apply to claims brought under the Oil Pollution Act); *In re The Glacier Bay,* 944 F.2d 577, 583 (9th Cir.1991) (holding that the Limitation Act does not apply to claims brought under the Trans-Alaska Pipeline Authorization Act); *United States v. CF Indus., Inc.,* 542 F.Supp. 952, 955-56 (D.Minn.1982) (holding that the Limitation Act does not apply to claims brought under the Clean Water Act); *cf. Transporter Marine,* 217 F.3d at 339-40 (holding that Coast Guard alcohol and drug regulations are not subject to the Limitation Act).

We now turn to the other potential causes of action, some already referred to in *Southern Scrap*, that are not affected by the Limitation Act and Rule F.

### A.   The Limitation Act Does Not Apply to Civil Penalty Claims Under the Clean Water Act and Other Statutes

Simply stated, fines and penalty claims of the United States (and the States) are not subject to limitation.  *See*, 33 U.S.C. § 2718(c).  Going beyond OPA, we also draw the Court's attention to pre and post-OPA case law.  For example, the limitation plaintiffs in *United States v. CF Industries, Inc., supra,* 542 F. Supp. at 956, complained that the United States improperly filed suit in a separate proceeding from the limitation action, and that the injunction issued by the limitation court applied to all proceedings.  *CF Industries* concerned an unpermitted discharge of anhydrous ammonia from a barge into the Mississippi River.  The putative violators there sued under the Limitation Act, seeking to limit liability to the value of the vessels involved.  *Id.* at 953-54.  Subsequently, the United States sought judicial assessment of a civil penalty in a separate action.  *Id.* at 954.  The court stated that although the Limitation Act's language is broad,

> [i]t does not specifically cover suits for statutory penalties.  On the other hand, the language of section 309 of the CWA is clear and direct with respect to a shipowner's liability for a statutory penalty. . . .  This section imposes strict liability for persons who pollute the nation's waters.

17

*Id.* at 955.  The court also noted that "if the government's claim for a civil penalty must be brought in the limitation action, it will have no deterrent effect."  *Id.* at 956.  The court held that because the civil penalty assessment under the Clean Water Act, 33 U.S.C. § 1319(d), was not subject to limitation under the Limitation Act, the limitation court had no jurisdiction whatsoever over the United States' civil penalty claim.  *Id.* at 956-57.  Without jurisdiction, the injunction was meaningless.  Similarly here, the Amended Monition does not preclude the United States from filing a separate action to recover civil penalty claims under the CWA and other statutes.

In addition, the statutory construction argument discussed above in Section "II.C" applies with equal vigor here.  *See, Hines, Inc. v. United States, supra*, 551 F.2d at 729-30 (dealing with the Rivers and Harbors Act and the Limitation Act).  No legislative history exists which could resolve the conflicts between the 159 year old Limitation Act and the CWA and other statutes.  The passage of more than a century and half between enactment of the Limitation Act and subsequent statutes like the CWA, coupled with the dearth of legislative history concerning the inherent conflicts between these statutes, lead to the conclusion that where these laws are inconsistent, the CWA and other penalty claims perforce trump the Limitation Act.

The Limitation Act and environmental laws cannot be reconciled in establishing the extent of a shipowner's liability for polluting the United States' navigable waters.  For example, the CWA's judicial civil penalty provisions, 33 U.S.C. §§ 1319(d) and 1321(b)(7), create strict liability that mandates penalties for unpermitted discharges of pollutants, oil and hazardous substances into the United States' navigable waters.  The Limitation Act, on the other hand, relies upon the shipowner's privity or knowledge of negligence to establish liability.  Neither fault nor intent is relevant to strict liability under 33 U.S.C. §§ 1319(d) and 1321(b)(7), "except in connection with the amount of penalty imposed."  *United States v. Amoco Oil Co.*, 580 F. Supp. 1042, 1050 (W.D. Mo. 1984).  The court in *United States v.*

*Ohio Valley Co.*, held that:

> [s]ince the triggering mechanism for 183(a) limitation of liability is tied to an awareness of negligence, and because negligence is not significant in actions under sections 14 and 16 [of the RHA], it follows that the limitation of liability provisions are inapplicable to those sections.

*United States v. Ohio Valley Co.*, 510 F.3d 1184, 1188 (7th Cir. 1975).   Similarly here, negligence is irrelevant to the strict liability provisions of the CWA at 33 U.S.C. §§ 1319(d) and 1321(b)(7).   The same strict liability standard applies to other penalty claims of the United States.   As in the *Ohio Valley* case, *supra*, it follows that the Limitation Act is inapplicable to such claims.

The following civil penalty regimes, while not an exclusive list, are subject to OPA's express statutory exclusion of the Limitation Act as applied to fines, penalties, and other relief: the CWA, 33 U.S.C. §§ 1319(d), 1321(b)(7); the NMSA, 16 U.S.C. § 1437(c) (civil penalties up to $100,000 for each violation, with each day of a continuing violation constituting a separate violation); Marine Mammal Protection Act ("MMPA"), 16 U.S.C. § 1375(a)(1) (civil penalty of not more than $10,000 for each such violation); Endangered Species Act ("ESA"), 16 U.S.C. § 1540 (a) (civil penalty of $25,000 for each violation); 46 U.S.C. § 2302(a) (civil penalty for negligent operations and interfering with safe operation of a vessel); Ports and Waterways Safety Act ("PWSA"), 33 U.S.C. § 1236 (civil penalty for violations of regulations); the Act to Prevent Pollution from Ships ("APPS"), 33 U.S.C. § 1908 (civil penalty for violations of MARPOL); the Clean Air Act ("CAA"), 42 U.S.C. § 7413(b) (civil penalties up to $25,000 for each violation); the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6928, 6978 (civil penalties); and the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1430(b) (civil penalty of $20,000 for each day of continuance of a violation).[9]

---

[9]   These amounts are stated here as originally enacted.   Many of the amounts have been increased at various times under the Federal Civil Penalties Inflation Adjustment Act of 1990, Pub.L. 101-410, and the Debt Collection Improvement Act of 1996, Pub.L. 101-410, 28 U.S.C. § 2461.

**B.    The Limitation Act Does Not Apply to Claims Cognizable Under the RHA**

The Limitation Act also does not apply to violations of the Rivers and Harbors Act. Case law has consistently held the Limitation Act inapplicable to the RHA.  *See*, *In re Southern Scrap, supra,* 541 F.3d 584; *Hines, Inc. v. United States*, 551 F.2d at 729-30; *The Snug Harbor*, 53 F.2d at 411; *University of Tex. Med. Branch at Galveston*, 557 F.2d at 447. Also, as discussed above for OPA and claims dealing with fines and penalties, rules of statutory construction compel the conclusion that the RHA, enacted 48 years later than the Limitation Act, supersedes the Limitation Act.

**C.    The Limitation Act Does Not Apply to Claims Cognizable
      Under the PSRPA**

The Park System Resource Protection Act ("PSRPA"), 16 U.S.C. §§ 19jj, *et seq.,* was enacted in 1990 by the same Congress that passed OPA, and was put into law to protect and preserve the resources of the National Park system.  As stated by Congress, the purpose of the PSRPA was to authorize the United States:

> ... to initiate legal action against individuals who destroy or injure living or non-living marine or ... aquatic resources within units of the National Park System, and to allow the Secretary to use funds recovered as a result of damage to living or non-living resources . . . for restoration of such resources.

Senate Comm. on Energy & Nat. Res., S. Rep. No. 328, 101st Cong., 2d Sess. 1, as reprinted in 1990 U.S. Code Cong. & Admin. News 603 (1990).[10]  As with OPA, the NMSA, and other statutes, the standard of liability under the PSRPA is strict liability.  *Tug Allie-B, Inc. v. United States, supra,* 273 F.3d 936, 942-43, fn.5 (11th Cir. 2001) (comparing the provisions of the PSRPA with the nearly identical strict liability provisions of the NMSA). Like the NMSA, the PSRPA provides that "any person" or vessel that "destroys, causes the loss of, or injures" any park system resource is liable to the United States for response costs and damages resulting from such destruction, loss or injury."  16 U.S.C. § 19jj-1(a) and (b).

---

[10]    The PSRPA was amended in 1996 to extend its scope to all resources within any unit of the National Park System.

In *Tug Allie-B, Inc.,* the Eleventh Circuit directly addressed and analyzed the non-applicability of the  Limitation Act to the PSRPA, summing up in holding:

> Obviously, the PSRPA is the most recent in time, enacted almost 140 years after the Limitation Act. Thus, on this basis alone, we can conclude that the PSRPA controls. [Footnote omitted.] We also conclude that the PSRPA is the more specific statute. The PSRPA's provisions are narrowly tailored to address incidents involving destruction, loss, or injury only to 'park system resources' (a term defined by the PSRPA), and allows the government to recover only for response costs and damages associated with such incidents. In contrast, the Limitation Act applies to 'embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or ... any loss, damage, or injury by collision, or ... any act, matter, or thing, loss, damage or forfeiture, done, occasioned, or incurred.' 46 U.S.C. app. § 183(a). Although the Limitation Act's reference to 'any loss, damage, or injury by collision' may be read to include loss or damage to park system resources, when a conflicting statute-the PSRPA-specifically defines, and is tailored to address, 'park system resources', we must find that the more specific statute governs.
>
> For all of the foregoing reasons, the decision of the district court holding that the Limitation Act does not apply to claims under the PSRPA is AFFIRMED.

*Tug Allie-B, Inc. v. United States, supra,* 273 F.3d at 949.  Significantly, *Tug Allie-B* was cited and relied upon by the Fifth Circuit in *Southern Scrap, supra,* 541 F.3d at 594 fn. 16.

### D.     The Limitation Act Does Not Apply to Claims Cognizable Under the NMSA

The National Marine Sanctuaries Act, 16 U.S.C. § 1431, *et seq.*, governs the designation and management of federally protected marine areas of specific interest. Congress enacted the NMSA in response to the increasing degradation of marine habitats and in recognition of the need to protect marine ecosystems.  *United States v. Great Lakes Dredge and Dock Co.*, 259 F.3d 1300, 1304 (11th Cir. 2001), *cert. denied*, 535 U.S. 955 (2002).  The purpose of the NMSA is to preserve sensitive areas for their conservation, recreational, ecological, or aesthetic value.  *United States v. Fisher*, 977 F.Supp 1193, 1999 (S.D. Fla. 1997).

Under the NMSA, any "person" or vessel that "destroys, causes the loss of, or injures any marine sanctuary resource" is strictly liable for an amount equal to response costs and damages resulting from this injury.  16 U.S.C. § 1443; *Great Lakes Dredge & Dock Co.,*

*supra*, 259 F.3d at 1304-05; *United States v. M/V Jacqueline L.*, 100 F.3d 1520, 1521 (11th Cir. 1996); *United States v. M/V Miss Beholden*, 856 F.Supp. 668 (S.D. Fla. 1994).

The NMSA directly addresses the Limitation Act and states that is does not apply to cases within the scope of the statute:

> (4) Limits to liability
>
> Nothing in sections 30501 to 30512 of Title 46 [the Limitation Act] or section 30706 of Title 46 shall limit the liability of any person under this chapter.

NMSA, 16 U.S.C. § 1443(a)(4).

### E.   The Limitation Act Does Not Apply to Claims Cognizable Under CERCLA

The Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq*., is a strict liability statute prohibiting the discharge or substantial threat of discharge of "hazardous substances".  *See*, 42 U.S.C. § 9607(a). CERCLA specifically precludes the application of the Limitation Act to cases falling within CERCLA's broad scope.  In passing CERCLA, Congress enacted the following:

> (h) Owner or operator of vessel
>
> The owner or operator of a vessel shall be liable in accordance with this section, under maritime tort law, and as provided under section 9614 of this title notwithstanding any provision of the Act of March 3, 1851 (the Limitation Act) or the absence of any physical damage to the proprietary interest of the claimant.

CERCLA, 42 U.S.C. § 9607(h).[11]

## CONCLUSION

For the foregoing reasons, the United States requests that the Court modify or lift its Amended Monition in order to clarify that the Limitation Act and Rule F shall: (1) neither apply to nor affect any claim under OPA (whether called a "direct" or "indirect" claim), or any claim within the scope of actions and claims reserved by OPA, 33 U.S.C. § 2718(a) and

---

[11]   Many provisions of OPA, including OPA's exclusion of the Limitation Act, were modeled after CERCLA.  *Cf.*, OPA, 33 U.S.C. § 2702, with CERCLA, 42 U.S.C. §§ 9607.

22

(c); (2) not apply to or affect other statutory causes of action that the United States may assert as a result of the fire, explosion, sinking, oil spill, and natural resource and other damages associated with the *Deepwater Horizon* tragedy; and (3) not apply to any action for civil or administrative penalties or for injunctive relief.

Dated: June 1, 2010.                       Respectfully submitted,

                                           TONY WEST
                                           Assistant Attorney General
                                           KEITH WYATT
                                           Assistant United States Attorney
                                           PETER F. FROST
                                           Director, Torts Branch, Civil Division
                                           Admiralty and Aviation
                                           U. S. Department of Justice
                                           P. O. Box 14271
                                           Ben Franklin Station
                                           Washington, DC 20044-4000
                                           Teleelephone: (202) 616-4026
                                           Facsimile: (202) 616-4002
                                           E-mail: peter.frost@usdoj.gov


                                           R. MICHAEL UNDERHILL
                                           Attorney-in Charge, West Coast Office
                                           Torts Branch, Civil Division
                                           U.S. Department of Justice
                                           Box 36028
                                           450 Golden Gate Avenue
                                           San Francisco, California 94102-3463
                                           Telephone: (415) 436-6648
                                           Facsimile : (415) 436-6632
                                           E-mail: mike.underhill@usdoj.gov

                                           Attorney in Charge in this
                                           Proceeding on Behalf of the
                                           UNITED STATES OF AMERICA,
                                           Appearing Specially and Not Generally

//

//

//

23

IGNACIA MORENO
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
STEVEN O'ROURKE, Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone: (202) 514-4080
e-mail: steve.o'rourke@usdoj.gov

Attorneys for the UNITED STATES
OF AMERICA, Appearing Specially and
Not Generally

24

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed via the Live District CM/ECF system on June 1, 2010, which caused an electronic copy of same to be served automatically on counsel of record.

_____
R. MICHAEL UNDERHILL

25