# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | |
| PETITION OF TRITON ASSET LEASING | § | |
| GmbH, TRANSOCEAN HOLDINGS LLC, | § | C.A. NO. 4:10-cv-1721 |
| TRANSOCEAN OFFSHORE DEEPWATER | § | |
| DRILLING INC., AND TRANSOCEAN | § | |
| DEEPWATER INC., AS OWNER, | § | |
| MANAGING OWNERS, OWNERS PRO- | § | Fed. R. Civ. P. 9(h) |
| HAC VICE, AND/OR OPERATORS OF | § | |
| THE MODU DEEPWATER HORIZON, IN | § | |
| A CAUSE FOR EXONERATION FROM | § | |
| OR LIMITATION OF LIABILITY | § | IN ADMIRALTY |
| | § | |

## LIMITATION PETITIONERS' RESPONSE TO OPPOSED MOTION OF THE UNITED STATES, APPEARING SPECIALLY AND NOT GENERALLY, TO LIFT OR MODIFY THE COURT'S AMENDED MONITION AS TO CERTAIN CLAIMS AND CAUSES OF ACTION

Frank A. Piccolo
Attorney-in-Charge
TBN: 24031227
SDBN: 30197
Fpiccolo@preisroy.com
PREIS & ROY, APLC
Wesleyan Tower
24 Greenway Plaza
Suite 2050
Houston, Texas 77046
Telephone: (713) 355-6062
Facsimile: (713) 572-9129

John M. Elsley
TBN: 06591950
SDTX: 2828
john.elsley@roystonlaw.com
ROYSTON, RAYZOR, VICKERY & WILLIAMS, LLP
Pennzoil Place
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945

**ATTORNEYS FOR LIMITATION PETITIONERS TRITON ASSET LEASING GMBH, TRANSOCEAN HOLDINGS LLC, TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC. AND TRANSOCEAN DEEPWATER INC.**

OF COUNSEL:

EDWARD F. KOHNKE, IV
Pro Hac Vice Admission Requested
LBN: 07824
nkohnke@preisroy.com
EDWIN G. PREIS, JR.
TBN: 24029069
SDBN: 16834
epreis@preisroy.com
RICHARD J. HYMEL
Pro-Hac Vice Admission Requested
TBN: 24038190
CARL J. HEBERT
LBN: 06724
SDBN: 15985
PREIS & ROY, APLC
102 Versailles Blvd., Suite 400
Lafayette, Louisiana 70509
(377) 237-6062 – Telephone
(377) 237-9129 – Facsimile

INNES MACKILLOP
TBN: 12761800
SDTX: 444
imackillop@wmglegal.com
WHITE MACKILLOP & GALLANT P.C.
2200 West Loop South, Suite 1000
Houston, Texas
(713) 599-0211 – Telephone
(713) 599-1355 – Facsimile

GEORGE M. GILLY
LBN: 6234
SDTX: 16885
gillyg@phelps.com
EVANS MARTIN MCLEOD
LBN: 24846
SDTX Pro Hac Vice Admission Requested
mcleodm@phelps.com
PHELPS DUNBAR, LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
(504) 566-1311 – Telephone
(504) 568-9130 – Facsimile

And

MARC G. MATTHEWS
TBN: 4055921
SDTX: 705809
Marc.matthews@phelps.com
700 Louisiana, Suite 2600
Houston, Texas 77002
(713) 626-1386
(713) 626-1388

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. iv

TABLE OF AUTHORITIES ....................................................................................... v

    I.      INTRODUCTION ......................................................................... 1

    II.    THE LIMITATION PETITIONERS' FILING UNDER THE U.S. LIMITATION OF LIABILITY ACT WAS IN ALL RESPECTS PROPER UNDER U.S. LAW ....................................................................... 4

    III.   THE AMENDED MONITION MAY BE MODIFIED FOR THE UNITED STATES' CLAIMS UNDER OPA 90 AND OTHER ENVIRONMENTAL STATUTES ................................................... 9

    IV.   THE AMENDED MONITION MAY BE MODIFIED FOR CERTAIN STATE CLAIMS ........................................................................ 11

    V.    CONCLUSION ............................................................................ 12

CERTIFICATE OF SERVICE ................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Ackerson v. Bean Dredging LLC,*
    589 F.3d 196 (5th Cir. 2009) ................................................................... 6

*Atlantic Sounding Co., Inc. v. Townsend,*
    129 S. Ct. 2561 (2009) ........................................................................ 5

*Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transport,*
    596 F.3d 357 (6th Cir. 2010) ................................................................. 5

*Black Diamond S.S. Corp. v. Robert Stewart & Sons,*
    336 U.S. 386 (1949) ........................................................................... 7

*Bouchard Trans. v. Updegraff, et. al.*
    147 F.3d 1344 (11th Cir. 1998), *cert denied,* 525 U.S. 1140 (1999) ........................ 9

*Dick v. United States,*
    671 F.2d 724 (2nd Cir. 1982) ................................................................. 7

*Empresa Lineas Maritimas Argentinas S.A. v. United States,*
    730 F.2d 153 (4th Cir. 1984) ................................................................. 8

*Exxon Shipping Co. v. Baker,*
    128 S. Ct. 2605 (2008) ...................................................................... 5, 7

*In re MetLife Capital Corp.,*
    132 F.3d 818 (1st Cir. 1997), *cert denied,* 524 U.S. 952 (1998) ........................... 9

*Inland Dredging v. Sanchez,*
    468 F.3d 864 (5th Cir. 2006) ................................................................. 6

*Karim v. Finch Shipping Co. Ltd.,*
    265 F.3d 258 (5th Cir. 2001) ................................................................. 6

*Lewis v. Lewis & Clark Marine, Inc.,*
    531 U.S. 438 (2001) ........................................................................ 6, 7

*Omega Protein, Inc. v. Samson Contour Energy E&P LLC (In re Omega Protein),*
    548 F.3d 361 (5th Cir. 2008) ................................................................. 6

*P.G. Charter Boats v. Soles,*
    437 F.3d 1140 (11th Cir. 2006) .............................................................. 6

*Petition of the United States as Owner of Vessel CG-95321,*
    418 F.2d 264 (1st Cir. 1969) ........................................................................ 7

*Petition of the United States,*
    255 F. Supp. 737 (D. Mass. 1966) ............................................................... 8

*Signal Int'l LLC v. Miss. DOT (In re* Signal Int'l LLC),
    579 F.3d 478 (5th Cir. 2009) ...................................................................... 6

*Southern Scrap Material Co. LLC v. ABC Ins. Co. (In re* Southern Scrap Material Co. LLC),
    541 F.3d 584 (5th Cir. 2008), *cert. denied,* 129 S.Ct. 1669 (2009) ............ 6

*Tetra Applied Techs., L.P. v. La. Workers Comp. Corp. (In re* Tetra Applied Techs.),
    362 F.3d 338 (5th Cir. 2004) ...................................................................... 6

*The British Transp. Comm'n v. United States,*
    354 U.S. 129 (1957) ................................................................................... 7

*Transporter Marine, Inc. v. Newfield Exploration Co.,*
    217 F.3d 335 (5th Cir. 2000) ...................................................................... 6

*United States v. Eastern Transp. Co.,*
    59 F.2d 984 (2nd Cir. 1932) ....................................................................... 7

*United States v. Standard Oil Co. of Cal.,*
    495 F.2d 911 (9th Cir. 1974) ...................................................................... 8

**Statutes**

16 U.S.C. § 1361 ........................................................................................... 10

16 U.S.C. § 1431 ........................................................................................... 10

16 U.S.C. § 1531 ........................................................................................... 10

16 U.S.C. § 19jj ............................................................................................ 10

28 U.S.C. § 2402 ............................................................................................ 8

28 U.S.C. § 2671 ............................................................................................ 8

33 U.S.C. § 1221 ........................................................................................... 10

33 U.S.C. § 1251 ........................................................................................... 10

33 U.S.C. § 1901 ........................................................................................... 10

33 U.S.C. § 2701 ............................................................................................ 9

33 U.S.C. § 2702(a) ...................................................................................... 9

33 U.S.C. § 2718 ................................................................................... 10, 11

33 U.S.C. § 2718(c)(2) .................................................................................. 10

33 U.S.C. § 401 ............................................................................................. 10

42 U.S.C. § 6901 ........................................................................................... 11

42 U.S.C. § 7401 ........................................................................................... 11

42 U.S.C. § 9601 ........................................................................................... 10

43 U.S.C. § 1331 ........................................................................................... 11

46 U.S.C. § 183 ............................................................................................. 10

46 U.S.C. § 30501 ........................................................................................... 5

46 U.S.C. § 30901 ........................................................................................... 8

46 U.S.C. § 31101 ........................................................................................... 8

46 U.S.C. § 40101 ......................................................................................... 10

Law of June 5, 1936, ch. 521, § 1, 49 Stat. 1479 ........................................... 5

Pub.L. No. 98-498, Title II, § 213(a) 98 Stat. 2306 (Oct. 19, 1984) ............... 5

**Other Authorities**

Convention on Limitations of Liability for Marine Claims, 1976, art. 21 ..................................... 7

The Laws of Oleron, *reprinted in* 30 F. Cas. 1171 *et seq.* (1897) ................................... 4

Thomas J. Schoenbaum, *Admiralty and Maritime Law,* vol. 2 at 139 (4th ed. 2004) .................... 8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND PETITION OF TRITON ASSET LEASING GmbH, TRANSOCEAN HOLDINGS LLC, TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC., AND TRANSOCEAN DEEPWATER INC., AS OWNER, MANAGING OWNERS, OWNERS PRO-HAC VICE, AND/OR OPERATORS OF THE MODU DEEPWATER HORIZON, IN A CAUSE FOR EXONERATION FROM OR LIMITATION OF LIABILITY | § § § § § § § § § § § § | C.A. NO. 4:10-cv-1721<br><br>Fed. R. Civ. P. 9(h)<br><br>IN ADMIRALTY |

## LIMITATION PETITIONERS' RESPONSE TO OPPOSED MOTION OF THE UNITED STATES, APPEARING SPECIALLY AND NOT GENERALLY, TO LIFT OR MODIFY THE COURT'S AMENDED MONITION AS TO CERTAIN CLAIMS AND CAUSES OF ACTION

TO:   THE HON. KEITH P. ELLISON, UNITED STATES DISTRICT JUDGE

COME NOW, PETITIONERS, Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling Inc., and Transocean Deepwater Inc., and further to the Court's directive of May 25, 2010, would respectfully show the Court as follows:

## I.
## INTRODUCTION

This Response is filed on behalf of the Limitation Petitioners[1] to two documents filed by the United States on June 1, 2010 entitled *"Opposed Motion of The United States, Appearing Specially and Not Generally, To Lift Or Modify The Court's Amended Monition As To Certain Claims and Causes of Action"* [Rec. Doc. No. 88], and *Memorandum in Support of Opposed Motion* [Rec. Doc. No. 89].  In the interest of saving the Court's time, the Limitation Petitioners

---

[1]   The Limitation Petitioners are Triton Asset Leasing GmbH, Transocean Holdings LLC, Transocean Offshore Deepwater Drilling, Inc. and Transocean Deepwater Inc.  In this filing, they will be referred to as "Limitation Petitioners."

respond at the outset that there is no dispute between the Government and the Limitation Petitioners concerning whether the Court's current injunction order (herewith "Amended Monition"), **[Rec. Doc. No. 61]**, may be modified for certain yet-to-be-filed claims of the Government.  In turn, to the extent that the Government has standing to address the yet-to-be-filed claims of the various States under State pollution statutes, there is also no apparent dispute. In the event States have enacted laws imposing additional liability or requirements with respect to (1) the discharge of oil or other pollution by oil within such State, or (2) relating to any removal activities in connection with such a discharge, the Amended Monition may be modified. Given these clear and unequivocal statements by the Limitation Petitioners, the Court may naturally wonder why the Government's lengthy, argumentative Memorandum was even necessary.  Some explanation, therefore, of the background leading up to the filing of the Government's Memorandum may clarify matters for the Court.

On Friday, May 28, 2010, Petitioners were first contacted by the Government's Attorney-in-Charge, R. Michael Underhill, concerning possible modifications to the Court's Amended Monition for certain claims by the Government.  On that date, Mr. Underhill contacted the Limitation Petitioners' lead counsel, Mr. Piccolo, in an effort to reach an agreement as to whether certain putative claims of the Government should be subject to the Court's Amended Monition. These preliminary conversations, which occurred late Friday just before the Memorial Day weekend, were followed up by the Government with their proposed Stipulation.  The Government's proposed Stipulation was first received by Mr. Piccolo on Tuesday, June 1, 2010, following the conclusion of the Memorial Day weekend.  However, June 1, 2010, was the same date memoranda/responses were due to be filed under the Court's Minute Entry which followed the status conference held before the Court on May 25, 2010.  And as set forth by the Court's

Minute Entry, one of the issues to be addressed by the memoranda or responses to be filed on June 1, 2010, was "whether and in what way the Court's current injunction order should be modified."[2]  Unfortunately, the language of the Government's proposed Stipulation contained a number of inappropriate prefatory remarks relating to the Limitation Petitioners and their lawful invocation of the Limitation Act as a result of the DEEPWATER HORIZON incident.  Some of these prefatory remarks had nothing to do with the scope of the Court's Amended Monition. Instead, those remarks improperly expressed the Government's opinion about the Limitation action and inaccurately implied that there are pre-filing notice requirements under the Limitation Act that were not complied with by Petitioners, when this is not the case.  In the opinion of the Limitation Petitioners, those types of statements serve no legitimate purpose in a Stipulation of Law. Nevertheless, last-minute attempts were made by the Government's counsel, Mr. Underhill, and the Limitation Petitioners' co-counsel, Mr. John Elsley, on June 1, 2010, to resolve the issues in dispute, if any, concerning modification to the Court's Amended Monition.  In fact, Mr. Elsley and Mr. Underhill "were able to reach a tentative agreement on many of the issues" (Government's Memorandum, at 3-4, **[Rec. Doc. No. 89]**) raised by the Government's Memorandum. Unfortunately, due to time limitations, "the parties were unable to reach

---

[2] For convenience of the Court, the full text of the Court's Minute Entry of 05/25/2010 is set forth in footnote as follows:

> Minute Entry for proceedings held before Judge Keith P. Ellison. STATUS CONFERENCE held on 5/25/2010. The parties will file briefing addressing the following four issues: 1) whether the current movants have standing to raise the issues now before the Court; 2) what issues, if any, should be taken up prior to any determinations by the JPML; 3) whether and in what way the Court's current injunction order should be modified; 4) whether the limitation action should be dismissed entirely. Briefing should be submitted no later than June 1. The parties may then file responses by June 8. The issue of whether discovery should proceed as to those Claimants that have filed answers to Petitioners' Complaint will be taken up at a later time. Appearances: (Law Clerk: S. Agarwal). Thomas E. Bilek, Anthony G. Buzbee, Lawrence J. Centola, Neil F. Nazareth, Spencer R. Doody, Scott R. Bickford, Marcus Grant Matthews, Frank Anthony Piccolo, Ronald L. White, Innes A. Mackillop, Evans Martin McLeod, Robert T. Cunningham, George W. Finkbohner, Stephen C. Olen , David Ashley Bagwell, Steven L. Nicholas, Paul M. Sterbcow. (Court Reporter: Warner), filed (sloewe) (Entered: 05/25/2010).

agreement...on the specific terms and language of a proposed Order that would be mutually satisfactory" (Government's Memorandum, at 3-4, **[Rec. Doc. No. 89]**), thus resulting in the filing of the Government's Motion and supporting Memorandum.   The Limitation Petitioners join in the Government's representation that they too are willing to work with counsel to resolve these issues prior to the Court ruling.   To this end, prior to the filing of this Response, the Limitation Petitioners have circulated to the Government a proposed Second Amended Monition Order for the Government's consideration.

With this background, the Limitation Petitioners next respond to the Government's Memorandum, first to the Government's disparaging commentary regarding the U.S. Limitation of Liability Act, *see* pages 4-9, and second, to the real question raised by the Government's Motion and Memorandum:

> Should the Amended Monition of the Court be modified for certain putative claims of the Government and the various States?

## II.
## THE LIMITATION PETITIONERS' FILING UNDER THE U.S. LIMITATION OF LIABILITY ACT WAS IN ALL RESPECTS PROPER UNDER U.S. LAW

The Government seems to object to Petitioners' use of the Limitation Act because it is from "the 19th Century" and because "nearly a hundred years ago" it was applied in the matter of the Titanic sinking.[3]   It is a characteristic feature of maritime law that historical precedents are respected.   For example, an employer's obligation to provide for a seaman who becomes sick or injured while in the service of the ship is an ancient one dating back at least to the Laws of Oleron in the 12th century.[4]   Nonetheless, references to those Laws, and adherence to their

---

[3]   Government's Memorandum at 5.

[4]   The Laws of Oleron, *reprinted in* 30 F. Cas. 1171 *et seq.* (1897).

principles, are frequent in current jurisprudence,[5] and the "ancient" obligation to pay maintenance and cure continues to the present day.[6]  Therefore, just because a law is "old" does not mean that it is wrong or that it was improperly invoked by the Limitation Petitioners.

Nearly two-thirds of a century after the Constitution was enacted, Congress passed the Limitation Act.[7]  Like the United States Constitution itself, the Limitation Act has undergone multiple amendments.  Significantly, in 1935, Congress added a provision mandating a minimum limitation fund for loss of life or bodily injury claims.[8]  Those limits were increased by Congressional amendment to the Limitation Act in 1984.[9]  Most recently, in 2006, the Limitation Act was entirely re-written and re-codified in the United States Code at 46 U.S.C. § 30501 *et seq.*

The Government's Memorandum cynically suggests that the Limitation Act is a cobwebbed piece of legislation that Limitation Petitioners dredged up from the deep, dark past.[10]  Such a portrayal is inaccurate, as the Limitation Act is routinely invoked in current jurisprudence. The United States Supreme Court's 2008 opinion in *Exxon Shipping Co. v. Baker*, 128 S. Ct. 2605 (2008), contains an instructive discussion of the Limitation of Liability Act by Justice Stevens.  In his opinion, Justice Stevens points out that the Limitation of Liability Act is a "statute that has been a ***part of the fabric of our law*** since 1851." 128 S. Ct. at 2635-37 (emphasis added).  And, in 2001, the United States Supreme Court addressed a lingering

---

[5]  See for example, *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transport,* 596 F.3d 357 (6th Cir. 2010); *Crowley Maritime Services v. Maritrans Inc.,* 530 F.3d 1169 (9th Cir. 2008).

[6]  *Atlantic Sounding Co., Inc. v. Townsend,* 129 S. Ct. 2561 (2009).

[7]  46 U.S.C. § 30501 *et seq.*

[8]  Law of June 5, 1936, ch. 521, § 1, 49 Stat. 1479.

[9]  Pub.L. No. 98-498, Title II, § 213(a) 98 Stat. 2306 (Oct. 19, 1984).

[10]  "Now, nearly 100 years after the sinking of the Titanic, Transocean has followed in its predecessor's footsteps and sought refuge under the Limitation Act . . . ." Government's Memorandum at  5.

5

jurisdictional issue involving the Limitation Act, commenting as follows: "Admiralty and maritime law includes a host of special rights, duties, rules and procedures...Among these provisions is the Limitation Act..." *Lewis v. Lewis & Clark Marine, Inc.,* 531 U.S. 438, 446 (2001).

A cursory search of recent case law limited to decisions in the Courts of Appeal for the Fifth and Eleventh Circuits uncovered numerous cases since the year 2000 involving the application of the Limitation Act. A sample listing of those opinions follows:

1. *Ackerson v. Bean Dredging LLC,* 589 F.3d 196, 209 (5th Cir. 2009).

2. *Signal Int'l LLC v. Miss. DOT (In re* Signal Int'l LLC), 579 F.3d 478, 496 (5th Cir. 2009).

3. *Omega Protein, Inc. v. Samson Contour Energy E&P LLC (In re* Omega Protein), 548 F.3d 361, 371-372 (5th Cir. 2008).

4. *Southern Scrap Material Co. LLC v. ABC Ins. Co. (In re* Southern Scrap Material Co. LLC), 541 F.3d 584, 595 (5th Cir. 2008), *cert. denied,* 129 S.Ct. 1669 (2009).

5. *Inland Dredging v. Sanchez,* 468 F.3d 864, 867 (5th Cir. 2006).

6. *P.G. Charter Boats v. Soles,* 437 F.3d 1140, 1142 (11th Cir. 2006).

7. *Tetra Applied Techs., L.P. v. La. Workers Comp. Corp. (In re* Tetra Applied Techs.), 362 F.3d 338, 342 (5th Cir. 2004).

8. *Karim v. Finch Shipping Co. Ltd.,* 265 F.3d 258, 263 (5th Cir. 2001).

9. *Transporter Marine, Inc. v. Newfield Exploration Co.* (In re Transporter Marine, Inc.), 217 F.3d 335, 337 (5th Cir. 2000).

In short, the Limitation Act has frequently been applied in a modern context by the courts.

The Government complains that Limitation Petitioners have "sought refuge under the Limitation Act" as a way of "zeroing out" their liability.[11] However, as the language of the Limitation Act and the many cases that have interpreted it make clear, the liability limits of the

---

[11]   Government's Memorandum at 5.

Act protect a vessel owner only when the damage is done without the owner's personal privity or knowledge. *Lewis v. Lewis & Clark Marine, supra,* 531 U.S. 438, 446 (2001). It does not protect a shipowner whose personal negligence or fault is a proximate cause of the damage.[12]

The statutory concept of limiting a vessel owner's liability is in step with modern international norms regarding limitation of liability for maritime claims. The International Convention on Limitation of Liability for Maritime Claims, 1976, initially came into force in December 1986, and has, to date, been put into effect by more than 50 nations.[13] More recently, the Convention was amended by the Protocol of 1996, which increased the monetary limits on specific types of claims. This protocol went into effect on May 13, 2004, with 37 countries having adopted the protocol to date.[14] The 1976/1996 International Convention actually offers more protection to a vessel owner than the U.S. Limitation Act, because it limits the liability of the vessel owner and others unless a claimant has "proved that the loss resulted from [the limiting party's] personal act or omission, committed with the intent to cause such loss, or recklessly and with knowledge that such loss would probably result."[15] Accordingly, the Limitation Act is considerably more restrictive than the international norm.

The Government's apparent distaste for the Limitation Petitioners' invocation of the Limitation Act strikes the Limitation Petitioners as odd, since the Government itself has invoked the Limitation Act in a number of instances when Government vessels are involved.[16] In fact,

---

[12] See for example, *Exxon Shipping Co. v. Baker*, 128 S. Ct. 2605, 2637 (2008).

[13] www.imo.org. (Conventions tab/Status of Conventions tab)

[14] www.imo.org.(Conventions tab/Status of Conventions tab)

[15] Convention on Limitations of Liability for Marine Claims, 1976, art. 21.

[16] *See, e.g., The British Transp. Comm'n v. United States*, 354 U.S. 129 (1957) (U.S. owned channel ferry); *Black Diamond S.S. Corp. v. Robert Stewart & Sons*, 336 U.S. 386 (1949); *Dick v. United States*, 671 F.2d 724 (2nd Cir. 1982); *United States v. Eastern Transp. Co.*, 59 F.2d 984 (2nd Cir. 1932); *Petition of the United States as Owner of Vessel CG-95321*, 418 F.2d 264 (1st Cir. 1969); *Petition of the United States*, 255 F. Supp. 737 (D.

the Schoenbaum Treatise, which the Government's Memorandum at page 8 characterizes as the "leading modern treatise on admiralty and maritime law," itself recognizes that the "Government may limit liability under the [Limitation] Act subject to the same standards as owners of private vessels," and provides as support citation to two Circuit Court Opinions.[17]   Thomas J. Schoenbaum, *Admiralty and Maritime Law,* vol. 2 at 139 (4th ed. 2004) (bracketed expression added).

Finally, the Government seems to suggest that, by not excluding from the earlier Monition Orders all putative claims that might, if asserted, fall outside of this Limitation Act action, the Limitation Petitioners have acted improperly.   In filing a Limitation Petition, it is neither expected, nor possible, for a Limitation Petitioner to predict all the claims that might be filed as a result of a casualty.   For this reason, it is neither possible, nor practical, to include within a proposed Monition Order all the claims that are **not** covered by the Limitation Act.   This is particularly the case for claims that have yet to be asserted at the time the Limitation action is filed.[18]   As the Government is well aware, Monition Orders are frequently amended following a

---

Mass. 1966).   Under the Public Vessels Act, 46 U.S.C. § 31101, *et seq.* , and, in particular, section 31106 entitled "Exoneration and limitation", it is provided that the "United States is entitled to the exemptions from and limitations of liability provided by law to an owner, charterer, operator, or agent of a vessel."   Thus, by this provision, the Government may limit its exposure to the value of its interest in the vessel and its freight then pending under the Limitation Act, just like a private owner, such as the Limitation Petitioners.   The Government's apparent distaste for Petitioners' invocation of the Limitation Act is additionally perplexing for the reason that the Government also enjoys numerous other barriers to its liability under U.S. law, in addition to the Limitation Act.   These include the "ancient" concept of sovereign immunity, damages caps and procedural restrictions to litigation, such as the need to first exhaust administrative remedies, and the requirement that litigation be brought under the Federal Torts Claims Act, 28 U.S.C. § 2671, *et seq.,* or for certain maritime claims, under the Suits in Admiralty Act. 46 U.S.C. § 30901, *et seq.*   Litigation is typically required to proceed in Federal court with no right to a jury. 28 U.S.C. § 2402.

[17]   The Shoenbaum Treatise cites *Empresa Lineas Maritimas Argentinas S.A. v. United States,* 730 F.2d 153 (4th Cir. 1984), and *United States v. Standard Oil Co. of Cal.,* 495 F.2d 911 (9th Cir. 1974).

[18]   The Government's Memorandum lists various statutes under which claims might be asserted for the DEEPWATER HORIZON incident, although even large oil spills have not resulted in claims under each and all of the statutory schemes addressed by the Government's Memorandum, at least in the experience of the Limitation Petitioners' counsel.

Limitation Act filing to exclude claims from their scope, once real claims surface and are asserted.   In this case in particular, the Limitation Petitioners have shown their willingness to cooperate with opposing counsel and consider amendments to the Court's Monition when the appropriate circumstances have arisen.   To this end, the Limitation Petitioners drafted and submitted Amended Monition Orders once they have been contacted by real claimants asserting real claims.   Limitation Petitioners represent to the Court that they will continue to do so throughout the course of these proceedings.

The Limitation Petitioners filing under the U.S. Limitation Act was thus entirely proper.

**III.**
**THE AMENDED MONITION MAY BE MODIFIED**
**FOR THE UNITED STATES' CLAIMS UNDER OPA 90**
**AND OTHER ENVIRONMENTAL STATUTES**

First, the Limitation Petitioners agree that claims of the United States for removal costs and damages set forth under OPA's Section 2702(b)(1) ("Removal costs") and (b)(2) ("Damages") are not, under the language of the statute,[19] or by case law,[20] subject to the Limitation of Liability Act, Rule F, and the Court's Amended Monition.   Indeed, the claims of the United States for removal costs and damages have previously been exempted from the Amended Monition and injunction, by the following language of the Amended Monition: "This injunction does not apply to any direct claims asserted against Petitioners under the Oil Pollution Act, 33 U.S.C. § 2701, *et seq.*" **[Rec. Doc. No. 61]** at p. 4.

---

[19]   33 U.S.C. § 2702(a) (emphasis added) states: *"Notwithstanding any other provision or rule of law, and subject to the provisions of this Act, each responsible party for a vessel . . . is liable for the removal costs and damages specified in Subsection (b) ...."*

[20]   *In re MetLife Capital Corp.*, 132 F.3d 818 (1st Cir. 1997), *cert. denied,* 524 U.S. 952 (1998); *Bouchard Trans. v. Updegraff, et. al.,* 147 F.3d 1344 (11th Cir. 1998), *cert. denied,* 525 U.S. 1140 (1999).

9

Second, the Limitation Petitioners agree that claims of the United States under the Park Systems Resource Protection Act ("PSRPA"),[21] the National Marine Sanctuaries Act ("NMSA"),[22] the Rivers and Harbors Act ("RHA"),[23] and the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA")[24] are not subject to the Limitation of Liability Act and Rule F. Therefore, the Court's Amended Monition may be modified to exclude these claims.

Third, the Limitation Petitioners agree that claims of the United States for fines and penalties are also not subject to the Limitation of Liability Act and Rule F.[25] It therefore follows that claims by the United States for fines and/or penalties under the Clean Water Act ("CWA"),[26] the National Marine Sanctuaries Act ("NMSA"),[27] the Marine Mammal Protection Act ("MMPA"),[28] the Endangered Species Act ("ESA"),[29] the Shipping Act,[30] the Ports and Waterways Safety Act ("PWSA"),[31] the Act to Prevent Pollution from Ships ("APPS"),[32] the

---

[21]   16 U.S.C. § 19jj, *et seq.*

[22]   16 U.S.C. § 1431, *et seq.*

[23]   33 U.S.C. § 401, *et seq.*

[24]   42 U.S.C. § 9601, *et seq.*

[25]   33 U.S.C. § 2718(c)(2). This section provides that: "Nothing in this Act, the Act of March 3, 1851 (46 U.S.C. § 183 *et seq.*) . . . shall in any way affect, or be construed to affect, the authority of the United States . . . (2) to impose, or to determine the amount of, any fine or penalty (whether criminal or civil in nature) for any violation of law; relating to the discharge, or substantial threat of a discharge, of oil."

[26]   33 U.S.C. § 1251, *et seq.*

[27]   16 U.S.C. § 1431, *et seq.*

[28]   16 U.S.C. § 1361, *et seq.*

[29]   16 U.S.C. § 1531, *et seq.*

[30]   46 U.S.C. § 1701, *et seq. – currently cited as* 46 U.S.C. § 40101, *et seq.*

[31]   33 U.S.C. § 1221, *et seq.*

[32]   33 U.S.C. § 1901, *et seq.*

10

Clean Air Act ("CAA"),[33] the Resource Conservation and Recovery Act ("RCRA"),[34] and the Outer Continental Shelf Lands Act ("OCSLA"),[35] to the extent that they apply to the DEEPWATER HORIZON incident, are not subject to the Limitation of Liability Act or Rule F, and may be excluded from the Amended Monition.

## IV.
## THE AMENDED MONITION MAY
## BE MODIFIED FOR CERTAIN STATE CLAIMS

Although not acting in any authorized capacity as representative of the various States that might allege damages as a result of the DEEPWATER HORIZON spill, the United States also contends that "OPA expressly permits states to impose additional liability and requirements for oil spills above the liability limits established by OPA 90 and the Limitation Act." (Government's Memorandum at 15, **[Rec. Doc. No. 89]**). In response, the Limitation Petitioners agree that OPA 90 exempts from the Limitation of Liability Act's application certain claims under statutes enacted by States, or political subdivisions thereof, that impose "any additional liability or requirements with respect to (A) the discharge of oil or other pollution by oil within such State or (B) any removal activities in connection with such a discharge."[36]  Accordingly,

---

[33]  42 U.S.C. § 7401, *et seq.*

[34]  42 U.S.C. § 6901, *et seq.*

[35]  43 U.S.C. § 1331, *et seq.*

[36]  33 U.S.C. § 2718. Relationship to other law

(a)  Preservation of State authorities;. . .

Nothing in this Act or the Act of March 3, 1851 shall --

   (1)  affect, or be construed or interpreted as preempting, the authority of any State or political subdivision thereof from imposing  any additional liability or requirements with respect to --

      (A)  the discharge of oil or other pollution by oil within such State; or

      (B)  any removal activities in connection with such a  discharge . . . .

claims under state statutes that impose such additional liability or requirements are not affected by the Limitation of Liability Act or by Rule F. Therefore, the Amended Monition may be modified to exclude these putative claims.

**V.**

**CONCLUSION**

In conclusion, the Limitation Petitioners agree that the Court's Amended Monition may be modified a second time to exclude certain putative claims by the United States and certain putative claims under the State oil pollution statutes. Prior to filing this response, the Limitation Petitioners circulated to the Government a proposed Second Amended Monition which is now under review. The Limitation Petitioners are hopeful that an agreement will be reached between the Government and the Limitation Petitioners resulting in the submission to the Court of an agreed Second Amended Monition for the Court's consideration.

Respectfully submitted,

/s/ Frank A. Piccolo
Frank A. Piccolo
Attorney-in-Charge
TBN: 24031227
SDBN: 30197
Fpiccolo@preisroy.com
PREIS & ROY, APLC
Wesleyan Tower
24 Greenway Plaza
Suite 2050
Houston, Texas 77046
(713) 355-6062 – Telephone
(713) 572-9129 – Facsimile

John M. Elsley
TBN: 06591950
SDTX: 2828
john.elsley@roystonlaw.com
ROYSTON, RAYZOR, VICKERY & WILLIAMS, L.L.P.

12

Pennzoil Place
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945

**ATTORNEYS FOR LIMITATION
PETITIONERS TRITON ASSET
LEASING GMBH, TRANSOCEAN
HOLDINGS LLC, TRANSOCEAN
OFFSHORE DEEPWATER
DRILLING INC. AND
TRANSOCEAN DEEPWATER INC.**

OF COUNSEL:

EDWARD F. KOHNKE, IV
Pro Hac Vice Admission Requested
LBN: 07824
nkohnke@preisroy.com
EDWIN G. PREIS, JR.
TBN: 24029069
SDBN: 16834
epreis@preisroy.com
RICHARD J. HYMEL
Pro-Hac Vice Admission Requested
TBN: 24038190
CARL J. HEBERT
LBN: 06724
SDBN: 15985
PREIS & ROY, APLC
102 Versailles Blvd., Suite 400
Lafayette, Louisiana 70509
(377) 237-6062 – Telephone
(377) 237-9129 – Facsimile

INNES MACKILLOP
TBN: 12761800
SDTX: 444
imackillop@wmglegal.com
WHITE MACKILLOP & GALLANT P.C.
2200 West Loop South, Suite 1000
Houston, Texas
(713) 599-0211 – Telephone
(713) 599-1355 – Facsimile

13

GEORGE M. GILLY
LBN: 6234
SDTX: 16885
gillyg@phelps.com
EVANS MARTIN MCLEOD
LBN: 24846
SDTX Pro Hac Vice Admission Requested
mcleodm@phelps.com
PHELPS DUNBAR, LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
(504) 566-1311 – Telephone
(504) 568-9130 – Facsimile

And

MARC G. MATTHEWS
TBN: 4055921
SDTX: 705809
Marc.matthews@phelps.com
700 Louisiana, Suite 2600
Houston, Texas 77002
(713) 626-1386
(713) 626-1388

## CERTIFICATE OF SERVICE

On this the 8th day of June, 2010, I served a copy of this Response in accordance with the Federal Rules of Civil Procedure to all known counsel of record via filing with the ECF/CMF System.

/s/ Frank A. Piccolo
_____