UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: THE COMPLAINT AND PETITION | § | |
| OF TRITON ASSET LEASING GmbH, | § | |
| TRANSOCEAN HOLDINGS LLC, | § | |
| TRANSOCEAN OFFSHORE DEEPWATER | § | |
| DRILLING INC., and TRANSOCEAN | § | |
| DEEPWATER INC.,  as Owner, Managing | § | CIVIL ACTION NO. 4:10-cv-1721 |
| Owners, Owners Pro Hac Vice, and/or | § | |
| Operators of MODU DEEPWATER | § | In Admiralty |
| HORIZON, in a cause for exoneration from or | § | |
| limitation of liability | § | |

MEMORANDUM AND ORDER

Pending before the Court are several motions filed by the petitioners, claimants, putative claimants, and third parties in the above-named limitation action ("Limitation Action" or "Action"). Petitioners are various entities associated with the ownership and operation of the MODU *Deepwater Horizon*, and will be collectively referred to as "Transocean."

I.      BACKGROUND

A.      Explanation of the Limitation Act

The Limitation Liability Act of 1851, 46 U.S.C. §§ 30501, *et. seq.*, (the "Limitation Act") allows a vessel owner to limit its liability for damage or injury occasioned without the owner's privity or knowledge to the value of the vessel or the owner's interest in the vessel. Congress passed the Limitation Act in 1851 "to encourage ship-building and to induce capitalists to invest money in this branch of industry." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 446 (2001) (citing *Norwich & N.Y. Transp. Co. v. Wright,* 13 Wall. 104, 121 (1871)). In addition, Congress wanted to ensure that American shipping would remain competitive with that of other maritime nations that had

1

enacted their own statutes limiting the liability of vessel owners. *Id.*; *see also Norwich*, 13 Wall. at 116-19 (discussing history of limitation acts in England, France, and other European nations that led to the passage of the Limitation Act). Years later, the federal judiciary created the procedures by which the Limitation Act would be implemented. *See Lewis,* 531 U.S. at 447-48. Notably, the judiciary chose, through promulgation of these procedures, to allow vessel owners to contest the fact of liability within a limitation proceeding, whereas the corresponding English rule required vessel owners to confess liability in order to seek the benefit of the limitation. *Id.*

Claimants seeking to recover damages from a vessel owner who has brought an action under the Limitation Act bear the initial burden of demonstrating that the vessel owner is liable for their losses. Claimants must prove that the damages they sustained were caused by the negligence of the vessel owner or the unseaworthiness of the vessel. *In re Int'l Marine, LLC*, 614 F. Supp. 2d 733, 740 (E.D. La. 2009). If the claimants cannot make such a showing, the vessel owner is entitled to exoneration. If the claimants do make this showing, the burden then shifts to the vessel owner to demonstrate that the negligence or defect occurred without the vessel owner's "privity or knowledge," such that his liability should be limited. *Id.*; *Farrell Lines Inc. v. Jones*, 530 F.2d 7, 10 (5th Cir. 1976). Privity or knowledge exists where "the owner has actual knowledge or could have and should have obtained the necessary information by reasonable inquiry or inspection." *Int'l Marine*, 614 F. Supp. 2d at 740. In cases involving corporate shipowners, privity as to certain persons within the corporation is imputed to the corporation as a whole. *Corywell v. Phipps*, 317 U.S. 406, 410 (1943). A court, sitting without a jury, determines both whether the vessel owner is liable and whether the owner

may limit liability. *See Lewis*, 531 U.S. at 448.  If the vessel owner is not exonerated but his liability is limited, the court must then evaluate the merits of each claim and distribute the limited funds among all the claimants. *Id.*

The Limitation Act was infamously invoked after the sinking of the RMS *Titanic* in 1912. While the ship owners were not exonerated from liability in that case, the presiding court did limit their liability to $95,000, to be divided among all the survivors and the estates of the deceased who had filed claims. (*See* Doc. No. 89 at 5.)

The procedures governing Limitation Act proceedings can now be found in Rule F of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule F"). Although the Federal Rules of Civil Procedure also apply to Limitation Act cases, the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") take precedence when the two are inconsistent. FED. R. CIV. P. SUPP. R. A(2) (stating that "[t]he Federal Rules of Civil Procedure also apply to the foregoing proceedings except to the extent that they are inconsistent with these Supplemental Rules").

### B.      Proceedings Before This Court

On April 20, 2010, the MODU *Deepwater Horizon* sea vessel ("Vessel") exploded into flames. To this Court's knowledge, eleven crewmembers on board the Vessel lost their lives in the explosion and resulting fire, and many others were injured. On May 13, 2010, Transocean filed this Limitation Action pursuant to Rule F. Transocean, to the extent that it is held liable for the explosion, seeks to limit its liability to $26,764,083.00, or the purported value of the Vessel and its then pending freight.

On May 25, 2010, this Court held a status conference with Transocean as well as a number of claimants, putative claimants, and third parties. In order better to determine how this Action should proceed and in what manner the flurry of filed motions should be considered, the Court asked the parties to submit briefing on four issues:

1.  Whether the current Movants have standing to raise the issues now before the Court;
2.  What issues, if any, should be taken up prior to any determinations by the Judicial Panel for Multidistrict Litigation;
3.  Whether and in what way the Court's current injunction order should be modified; and
4.  Whether the Limitation Action should be dismissed entirely.

The Court has carefully reviewed the briefs submitted by Transocean as well as dozens of claimants, putative claimants, and third parties. The Court will now set forth its decision as to each of these preliminary issues.

## II.   ISSUE 1: WHETHER THE CURRENT MOVANTS HAVE STANDING

The pending motions that have been filed by claimants or putative claimants include: five Motions to Transfer (Doc. Nos. 12, 20, 42, 45, 102); two Motions to Expedite Hearing on the Motions to Transfer (Doc. Nos. 13, 21); one Motion to Defer Ruling on Motions to Transfer (Doc. No. 44); two Motions to Dismiss (Doc. Nos. 31, 104), two Motions to Lift, Clarify, or Modify this Court's Injunction Order (Doc. Nos. 15, 88); a Motion for Discovery Schedule and a Joinder as to Motion for Discovery Schedule (Doc. Nos. 80, 86). The Motions to Transfer, Motions to Expedite, and Motion to Defer ("Transfer Motions" collectively) have been filed by putative claimants, that is, parties who are subject to this Court's injunction order but who have not yet filed claims or answers to Transocean's Complaint. The Motions to Dismiss were also filed by putative claimants. One of the Motions to Modify, filed by putative claimant Billy

4

Wilkerson, was rendered moot by this Court's First Amended Order Directing Claimants to File and Make Proof of Claims, Directing the Issuance of Monition, and Restraining Prosecution of Claims (Doc. No. 61) ("First Amended Order"). The second was filed pursuant to a special appearance by the United States, and Transocean does not appear to contest standing as to this Motion. Moreover, this Motion appears to have been mooted by the Second Amended Order Directing Claimants to File and Make Proof of Claims, Directing the Issuance of Monition, and Restraining Prosecution of Claims (Doc. No. 131) ("Second Amended Order"). Finally, the Motion for Discovery Schedule and the Motion for Joinder were filed by proper claimants before this Court, and Transocean, accordingly, does not raise standing objections as to these requests. Therefore, the only Motions in regard to which this Court must now evaluate standing are the Transfer Motions and the Motions to Dismiss. The parties bringing these motions will collectively be referred to as "Movants."

Transocean argues, through its Motions to Strike (Doc. Nos. 40, 52), that the Movants' requests are improper because they prematurely seek relief from this Court. More specifically, Transocean argues that, because none of the Movants has filed a claim or answer in this matter prior to filing their motions, they are non-parties to this litigation and therefore have no standing to seek a dismissal or a convenience transfer under Rule F(9).

Transocean maintains that it is a well-established practice that a claimant must first file a claim and/or answer in a limitation proceeding before he or she has standing to contest matters related to it. In response to this argument, several Movants argue that there is nothing in the Supplemental Rules that requires them to file a claim or an answer

before contesting venue. In the absence of any such provision in the Supplemental Rules, argue Movants, the Federal Rules of Civil Procedure and applicable case law govern, and they allow venue to be contested before an answer is filed.

### A.   Do the Supplemental Rules Require, as a Condition of Standing, that a Prior Answer be Filed?

The first issue that this Court must examine is whether Rule F(5) requires that the Movants file claims before their requests for transfer may be properly considered. Importantly, the question of whether admiralty law's special procedures require such a prior filing is a slightly different inquiry from whether Movants have federal standing to seek relief in absence of a filed claim, although many courts conflate these inquiries. Transocean as well as several of the Movants maintain that Rule F(5) supports their respective positions as to the propriety of pending motions. Rule F(5) provides:

> Claims shall be filed and served on or before the date specified in the notice provided for in subdivision (4) of this rule. Each claim shall specify the facts upon which the claimant relies in support of the claim, the items thereof, and the dates on which the same accrued. If a claimant desires to contest either the right to exoneration from or the right to limitation of liability the claimant shall file and serve an answer to the complaint unless the claim has included an answer.

FED. R. CIV. P. SUPP. R. F(5). Several courts have invoked Rule F(5) in considering the question of whether claimants must file claims and/or answers before they can request relief from the court. *See, e.g.*, *In re Fun Time Boat Rental & Storage, LLC*, 431 F. Supp. 2d 993, 999 (D. Ariz. 2006) (holding that if movants were not proper claimants under Rule F(5), they had no right to seek a continuance in order to conduct discovery to contest summary judgment); *White v. Sabatino*, 415 F. Supp. 2d 1163, 1180-81 (D. Haw. 2006) (holding that a plaintiff had standing to oppose a Limitation complaint for exoneration and/or limited liability because the requirements of Rule F(5) were satisfied);

*In re: Matter of Lenzi*, 1989 WL 146659, at * 1 (E.D. Pa. 1989) (holding that a movant had no standing to file an answer in a limitation proceeding because he had not yet filed a claim pursuant to Rule F(5), and dismissing his answer without prejudice); *In re Twenty Grand Offshore, Inc*., 313 F. Supp. 851, 853-54 (S.D. Fla. 1970) (noting that a claim is a prerequisite to filing an answer in a limitation proceeding). It should be noted that, in all of these cases, the claimants were attempting to directly contest the petitioner's right to exoneration or limited liability. As such, the requirements of Rule F(5) were undoubtedly triggered, and courts accordingly examined whether a proper claim and answer had been filed prior to the request. To the extent that these courts held that a claimant lacked standing, therefore, their holdings are only applicable in cases where the claimant or putative claimant seeks specifically to contest either the right to exoneration from, or the right to limitation of, liability pursuant to Rule F(5).

Here, the Movants who seek to dismiss from this Action certain claims brought against Transocean are similarly challenging Transocean's right to limit its liability with respect to these claims. One Movant seeks dismissal of any and all claims arising from the Oil and Pollution Act ("OPA"), while the other seeks dismissal of any state law claims seeking damages for removal costs arising from the oil spill.[1] Because these Movants contest Transocean's right to exoneration and limitation of liability, they must, under Rule F(5), first file a proof of claim and an answer to Transocean's Complaint. Neither has done so, and their requests are therefore premature. Accordingly, these

---

[1] The Court notes that, in light of its First and Second Amended Orders, it appears that, to the extent that the first of these Motions seeks dismissal of all claims arising from the OPA, it is now moot. However, because the Court has not received explicit notice of mootness, it will consider the issue of standing as it relates to this Motion.

Movants' requests for dismissal (Doc. Nos. 31, 104) must be dismissed without prejudice.

By contrast, however, the Transfer Motions do not directly contest Transocean's entitlement to exoneration or limited liability. Instead, these Movants seek relief only as to the venue in which this Action should be heard and in which their claims must be filed. As several claimants correctly point out, nothing in Rule F(5) states that a claim or answer must be filed before *any* form or relief may be sought from the Court. Instead, this requirement is triggered only when a putative claimant seeks to contest the merits of the limitation action, or the petitioner's right to exoneration or limited liability. It seems, therefore, that the Transfer Motions are not subject to Rule F(5)'s requirements.

Transocean provides a non-exhaustive list of cases which have considered Rule F(9) convenience transfers. Transocean points out that, in each of these cases, the transfer requests were made by actual claimants, or those who had previously filed claims, before being considered by the court. (*See* Doc. No. 81 at 5.) Significantly, however, none of these cases explicitly states or holds that the filing of a claim was necessary in order for the transfer request to be properly considered. Accordingly, the Court does not hold that the Supplemental Rules require that a claim or answer be filed prior to seeking a change of venue in this Limitation Action. The Transfer Motions, therefore, need not be stricken on this basis.

### B.   Do the Movants Who Seek a Transfer Have Federal Standing?

Although the Court has concluded that Rule F(5) does not preclude Movants from challenging venue prior to filing their claims, the Movants must nonetheless have Article III standing in order to request the relief sought from the Court in the Transfer Motions.

The Movants in this case seek to have this Action transferred pursuant to Supplemental Rule F(9). Rule F(9) provides, in pertinent part:

> The complaint shall be filed in any district in which the vessel has been attached or arrested to answer for any claim with respect to which the plaintiff seeks to limit liability; or, if the vessel has not been attached or arrested, then in any district in which the owner has been sued with respect to any such claim. When the vessel has not been attached or arrested to answer the matters aforesaid, and suit has not been commenced against the owner, the proceedings may be had in the district in which the vessel may be, but if the vessel is not within any district and no suit has been commenced in any district, then the complaint may be filed in any district. For the convenience of parties and witnesses, in the interest of justice, the court may transfer the action to any district; if venue is wrongly laid the court shall dismiss or, if it be in the interest of justice, transfer the action to any district in which it could have been brought.

FED. R. CIV. P. SUPP. R. F(9).

### 1.      The Movants who seek transfer are non-parties to this case

As Transocean points out, absent a claim or answer filed in response to Transocean's Complaint, the Movants are, as a practical matter, not properly before the Court and therefore non-parties to this case. Several Movants improperly analogize their transfer requests in this Action to non-admiralty cases in which a defendant chooses to contest venue in lieu of filing an answer to a plaintiff's complaint. In such cases, however, the defendant has been served with process and made a party to the litigation. As such, he clearly has standing to contest the venue in which the issues being asserted against him are heard. Here, by contrast, Transocean has brought this action under the Limitation Act's special provisions. Pursuant to Rule F, Transocean has filed a Complaint, but has not affirmatively named any other party who is thereby made part of the litigation. Instead, claimants must, under Rule F, become parties to this Action

through filing their claims. Therefore, because none of the Movants has filed a claim in this matter, they are, as Transocean points out, non-parties to this case.

### 2.    The Movants seek a convenience transfer under Rule F(9)

Moreover, as Transocean correctly points out, the Movants here do not argue that venue is improper in this Court under Rule F(9)'s mandatory venue provisions. Instead, the Movants seek a convenience transfer pursuant to this Rule.[2] As such, their request is not, as some argue, analogous to a motion asserted under Federal Rule 12(b)(3), which can and indeed must be raised prior to filing an answer. Rather, Rule F(9) requests are more comparable to a transfer sought under 28 U.S.C. § 1404(a). Convenience transfers sought under Section 1404(a) need not be made before an answer is filed, but instead must only be sought with "reasonable promptness." *Peteet v. Dow Chemical Co.*, 868, F.2d 1428, 1436 (5th Cir. 1989). Therefore, it is not the case, as some Movants suggest, that by filing a claim and/or answer prior to challenging venue, they may actually waive their right to raise this challenge altogether.

Relatedly, it has been held that a non-party lacks standing to seek a change of venue under Section 1404(a). *Kivita v. Pheonix Gen. & Health Servs., Inc.*, 51 F. App'x 348, 350 (2d Cir. 2002). Thus, to the extent that a convenience transfer pursuant to Rule F(9) can be analogized to one under Section 1404(a), this appears to bolster Transocean's

---

[2] One Movant does appear to contest the propriety of venue under the Rule F(9)'s mandatory venue provisions. (*See* Doc. No. 20-1 at 5-6.) According to this Movant, although Rule F(9) allows a vessel owner to bring a limitation action "in any district in which the owner has been sued," the "first to file" rule renders venue proper only in the Eastern District of Louisiana. The Court rejects this argument outright. Even if the Movant were correct that the "first to file" rule would counsel in favor of transferring this case to Eastern District of Louisiana, the application of this rule to this Limitation Action would, in essence, render meaningless the clear language of Rule F(9) which allows a limitation action to be brought in *any* district where the vessel owner has been sued. Nothing in this provision places any priority on one particular venue on the basis of the order in which related suits have been filed. Therefore, because it rejects the Movant's argument as to the impropriety of venue in this District, the Court will treat this Motion as a request for a convenience transfer under Rule F(9).

position. The Advisory Committee Notes to Supplemental Rule F(9) state that the Rule's provision for transfer is "revised to conform closely to the language of 28 U.S.C. §§ 1404(a) and 1406(a), though it retains the existing rule's provision for transfer to any district for convenience." However, it is important to note that Rule F(9) is an entirely distinct statute from Section 1404(a), and the two overlap only in the *factors* to be weighed by a court in determining whether or not transfer is appropriate. *See In re Petition of Alamo Chem. Transp. Co.*, 323 F. Supp. 789, 790-92 (S.D. Tex. 1970) (noting that the general policy of Section 1404(a) clearly influenced the promulgation of Rule F(9), and that the applicable "standards for decision" under both should accordingly overlap). Therefore, the lack of standing for non-parties seeking a Section 1404 transfer does not necessarily apply to transfers sought under Rule F(9), a point that Transocean appears to concede in pointing out the differences between the provisions. (Doc. No. 125 at 6-8.) The Court is unaware of any precedent, binding or persuasive, that specifically addresses the question of whether convenience transfers sought pursuant to Rule F(9) can be asserted by a non-party putative claimants, or whether such requests require that a claim and/or answer be filed in order to confer standing.[3] The Court will accordingly look to the general principles of standing in addressing this issue.

### 3.      Can the Movants, as non-parties, meet federal standing requirements

---

[3] The Court notes that, in *In re Matter of Horizon Vessels, Inc.*, a limitation proceeding, Magistrate Judge Nancy K. Johnson held that, because the putative claimants seeking a venue transfer had not filed a claim or an answer, they were not parties to the lawsuit and therefore had no standing to contest venue. (Order at 2, *In re Matter of Horizon Vessels, Inc.*, No. 03-3280 (S.D. Tex. Nov. 12, 2003)). This Court respectfully notes that Judge Johnson's opinion provided no analysis as to the issue of whether the putative claimants, even as non-parties to the suit, could nonetheless have standing to challenge venue. As such, the Court respectfully chooses not to subscribe to this holding.

In order for a party to have standing under Article III, that party must show that: he has suffered or will suffer an injury, his injury is traceable to the defendant's conduct, and a favorable federal court decision will likely redress the injury. *Samnorwood Indep. Sch. Dist. v. Texas Educ. Agency*, 533 F.3d 258, 264-65 (5th Cir. 2008) (citing *Bennett v. Spear,* 520 U.S. 154 (1997)); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). While standing issues are traditionally raised pursuant to a defendant's challenge to a plaintiff's ability to bring suit, the standing issue in this case revolves around whether non-parties to this Action may seek relief related to it.

In *Samnorwood*, the Fifth Circuit, upon reviewing the case law, held that a third party has standing to appeal an injunction which adversely affects its interest, even when it was not a party to the litigation. 533 F.3d at 266. The court explained that "[i]n each of these cases, this court held that the challenging party had standing because the equitable relief granted by the district courts placed a burden on the challenging party which gave [it] a personal stake in the litigation." *Id*. The Fifth Circuit has, therefore, specifically recognized instances in which non-parties may seek relief from a court because these parties have a personal stake in the litigation before it. Other circuits have found similarly. *See United States v. Kirschenbaum*, 156 F.3d 784, 794 (7th Cir. 1998) (holding that non-parties who are bound by a court's equitable decree have a right to seek dissolution of the order); *In re Estate of Ferdinand Marcos Human Rights Litig.*, 94 F.3d 539, 544 (9th Cir. 1996) (holding that the choice between conforming with the dictates of an injunction or risking contempt proceedings constitutes sufficient injury to confer standing upon a non-party to appeal an injunction); *In re Piper Funds, Inc., Institutional Gov't Income Portfolio Litig.*, 71 F.3d 298, 301 (8th Cir. 1995) (noting that a non-party

normally has standing to appeal when it is adversely affect by an injunction). It is not the case, therefore, that relief sought by non-parties can never present the "case or controversy" necessary for a federal court to adjudicate an issue.

As with the cases cited above, this Court has issued an injunction order in this Action by which parties throughout the country are bound. *See* Second Amended Order; FED. R. CIV. P. SUPP. R. F(3) (instructing that, once a limitation petitioner complies with the requirements of Rule F, the court "shall enjoin the further prosecution of any action or proceeding" against the petitioner with respect to any claim subject to the limitation proceeding). Here, Movants who have asserted the Transfer Motions are not appealing the issuance of the injunction, but rather contesting the venue in which those who are subject to the Second Amended Order must file their claims.[4] Upon issuance of this Court's original injunction order (Doc. No. 9) and, subsequently, the First and Second Amended Orders, lawsuits brought—as well as those that could be brought—by claimants around the country have been enjoined, and these plaintiffs have now been instructed to seek relief from Transocean through this Limitation Action. Although Transocean is lawfully entitled to this equitable relief under the provisions of the Limitation Act and Rule F[5], the affected claimants undoubtedly suffer an "injury-in-fact" from such an order because they are prohibited from moving forward with their claims in their chosen venue and concurrently with other related claims brought against other defendants. This injury undoubtedly gives those subject to this Court's injunctive order a personal stake in this Limitation Action, as this Action is currently the only avenue by

---

[4] Notably, neither claimants nor putative claimants could appeal the injunction order itself, as Transocean is inarguably entitled to such relief under the Limitation Act.

[5] *See* WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3255 (2d. ed) (noting that issuance of an injunction on proper application by a limitation petitioner is mandatory).

which their claims against Transocean can now be adjudicated. Moreover, this Court's Second Amended Order enjoins claims brought against Transocean whether or not, and before, these claimants file claims or answers before this Court. Accordingly, non-parties, or those who have not yet filed claims within this Limitation Action, are still subject to the injunction issued pursuant to the Action, and thereby acquire an interest in this suit.

To establish an interest in this litigation, therefore, the Movants who have filed the Transfer Motions need only show that they are among those parties subject to this Court's Second Amended Order, regardless of whether they have actually filed claims to become formal parties to the Action. If the Movants are among the claimants whose claims have been enjoined pursuant to this Court's Second Amended Order, and who have no choice but to litigate their claims within the scope of this Limitation Action, they have acquired the requisite "stake" in this Court's proceedings to confer standing. *See Samnorwood*, 533 F.3d at 266. This standing, in turn, allows the Movants to challenge the venue in which this Limitation Action is heard, as their interest clearly extends to the forum in which they are now required to bring their enjoined claims in order to have them adjudicated. Accordingly, this Court holds that, in order to demonstrate standing to challenge venue pursuant to Rule F(9), Movants need only show that they are subject to this Court's Second Amended Order.

The Court notes that its holding recognizes and maintains a principled distinction between this Action and traditional litigation in which a non-party attempts to challenge venue pursuant to Section 1404(a). In traditional lawsuits, a non-party is one whose actions have not been called into legal question, and who accordingly cannot demonstrate any stake in the proceedings. By contrast, this Court has issued an injunctive order within

this Limitation Action that has an immediate and direct effect on hundreds of claimants and potential claimants around the country, even before they file claims or craft answers to Transocean's Complaint. It cannot be said, therefore, that parties have no stake in this litigation until they make formal appearance in this suit, as the injunction takes effect whether or not they make such an appearance.

Therefore, in accordance with this holding, Movants who have not yet filed a claim or answer must, with their motion, provide proof that they are subject to this Court's Second Amended Order. This proof may take the form of a copy of the complaint filed against Transocean in another forum, or a declaration made under penalty of perjury by someone with the requisite knowledge that such a claim has been filed or was intended to be filed. Provided that this evidence establishes that they are subject to this Court's Second Amended Order, this Court holds that putative claimants have standing to seek a change of venue of this Limitation Action prior to filing a claim or answer.[6,7] Because none of the Motions to Transfer currently attaches such proof, the Court hereby strikes these Motions without prejudice to refiling with the attached evidence necessary to establish standing.

## III.    ISSUE 2: MATTERS TO BE ADDRESSED PRIOR TO THE JPML DECISION

---

[6] The Court reiterates that it must, in every instance, determine whether the relief sought by a non-party is subject to the requirements of Rule F(5), discussed above. Because the Court has now concluded that the Transfer Motions are not subject to Rule F(5), federal standing is all that is needed to render these Motions proper. However, many forms of relief sought by parties who are subject to this Court's injunction will require prior claims or answers under this Rule.

Moreover, even for those putative claimants who chose to seek a change of venue prior to filing a claim, this holding does nothing to alter the current end-date of the monition period, that is, the day by which all claimants must file their proofs of claim in this Court. Therefore, if the Transfer Motions are not addressed until after the close of the monition period, the Movants will have been required to file their claims before these Motions are adjudicated, and the standing issue will thereby become moot.

[7] Because the ability of a movant to seek relief from the Court before he files a claim or answer turns on the type of relief sought, the Court notes that its ruling will apply differently to different kinds of motions. As such, the propriety of filing a motion before a claim or answer must be decided on a case by case basis.

The Court is aware that various parties who have been affected by the oil spill have filed applications with the Judicial Panel on Multi-District Litigation ("JPML"), asking that all spill-related cases be consolidated into one court. With the number of claimants, putative claimants, and third parties interested in the outcome of this case, this Court sought guidance from the parties as to which issues would be most appropriate for this Court to take up prior to the issuance of the JPML decision. In this Court's view, the issues which are subject to consideration prior to a JPML decision are the Motions to Transfer, and the Motion for Discovery Schedule, which seeks immediate discovery for the personal injury and death claims arising from the Vessel explosion. Transocean understandably takes the position that only the issues discussed at this Court's status conference should be considered by the Court prior to a decision by the JPML, and that all others should be deferred. Several claimants argue that this Court should consider the Motions to Transfer prior to any decision by the JPML.

**A.      Motions to Transfer**

After carefully considering the arguments of all parties, this Court has concluded that it would be most efficient to defer ruling on the pending Motions to Transfer until after the JPML has made its decision. The Motions to Transfer filed thus far seek transfer, respectfully, to the Eastern District of Louisiana as well as to the Northern District of Florida. As Transocean points out, actions related to this case are pending not just in the five Gulf States, but also in Alaska, Tennessee, New York, Delaware, and possibly other places. In light of all of the competing interests that may affect venue considerations in this matter, and the magnitude and scope of the current controversies arising from the oil spill, this Court should inarguably exercise prudence in determining

the most appropriate place for this Action to be tried. The JPML is comparatively better positioned to assess and weigh the myriad facts that affect the propriety of venue in this instance, as it naturally has a much more complete and holistic picture of the scope of the current controversy.

Indeed, if this Court were to make a venue determination at this stage, its decision could very well be mooted in a matter of days or weeks by the JPML's potential final word on where this Limitation Action should be heard. If this Court were to determine that venue for this Limitation Action is better laid outside of this District, for example, the JPML could then, subsequent to this Court's transfer, decide that all oil spill-related cases, including this Action, should be tried in this District. The turmoil that would be created by this potential game of "ping-pong" far outweighs any inconvenience that may result from delaying this Court's decision as to the most convenient venue for this Action. Conversely, if this Court were to deny the Motions to Transfer on the merits and keep this case here, its decision could similarly be unraveled by a JPML determination that this case should actually be heard in another court. Accordingly, the Court exercises its discretion and defers briefing and argument as to the Motions to Transfer until after the JPML has issued its decision. Pertinently, even if the JPML's determination does not include this Limitation Action among the other consolidated cases, its opinion as to the most appropriate venue in which the other oil spill cases should be heard will undoubtedly bear on this Court's venue determination.[8]

---

[8] In their briefs, several Movants point to the case of *In Re: Horseshoe Entertainment*, 337 F. 3d 429 (5th Cir. 2003), in which the Fifth Circuit stated that the district court should have given "top priority" to a timely filed motion to transfer. 337 F.3d at 433. While it is true that claims brought under the provision at issue in that case, like those under the Limitation Act, were subject to special venue provisions, the court in that case was faced with a very different set of circumstances than exist here. Most notably, that case was not one that was subject to a determination by the JPML, nor were transfers being sought by multiple parties to several different districts. Moreover, the district court in that case waited thirteen months before

17

**B.     Motion for a Discovery Schedule**

In addition to the Transfer Motions asserted by putative claimants, certain actual claimants have now asked this Court to set an expedited discovery schedule which would allow immediate discovery for only the personal injury and death claims in this proceeding. (Doc. No. 80.) The claimants argue that expedited discovery on the privity and knowledge issue is imperative, as the ability of several injured workers and of the families of deceased workers to pay basic living expenses turns on the outcome of this case.

To this Court's knowledge, there is no precedent for allowing the type of bifurcated, expedited discovery that the claimants seek prior to the end of the monition period in a limitation proceeding. Indeed, the claimants' request somewhat contravenes the purpose of the Limitation Action, which allows a vessel owner to collect all claims against it into one suit prior to being subject to discovery. *See Maryland Cas. Co. v. Cushing*, 347 U.S. 409, 415 (1954) (noting that the heart the Limitation Act system is "a concursus of all claims to ensure the prompt and economical disposition of controversies in which there are often a multitude of claimants" that ensures that the substantive benefits of the Act may be realized).

Nonetheless, in light of the importance of what is at stake in this litigation, the Court would like to examine this issue further before deciding whether an expedited, untraditional discovery procedure is called for in this litigation. As such, the Court asks Transocean to respond to the claimants' request within fifteen days of entry of this Order. Claimants who filed the Motion will then be allowed ten days to reply. The Court will

ruling on the motion to transfer, while this Court has no intention of waiting a comparable amount of time in ruling upon properly filed Motions to Transfer following the JPML determination.

examine the filings and then decide whether to rule on the merits of this request or defer consideration of the matter until after the JPML has issued its decision.

## IV.    ISSUE 3: WHETHER THE COURT SHOULD MODIFY ITS INJUNCTION ORDER

The Court was asked to modify its First Amended Order in two filed Motions.[9] Notably, the United States made a special appearance in this Action and filed a Motion to Lift or Modify the Court's Amended Monition as to certain claims and causes of action. (Doc. No. 88.) The United States conferred with Transocean as to particular amendments to the First Amended Order that would resolve the concerns it raised in this Motion. The Court then received from Transocean a proposed Second Amended Order Directing Claimants to File and Make Proof of Claims, Directing the Issuance of Monition, and Restraining Prosecution of Claims from Transocean, which the United States does not oppose. (*See* Doc. No. 130.) The Court has signed and entered this proposed Order as the Second Amended Order. Accordingly, the Court understands that the United States' Motion is now moot.

The other requested modification comes from a putative claimant who has filed a Motion to Dismiss and/or to Modify the Court's order, requesting that this Court dismiss from this Action any and all state law claims seeking damages related to removal costs, remediation costs, response costs, and other recoverable property damage arising from the explosion of the Vessel. (Doc. No. 104.) First and foremost, as discussed further above, because this Motion challenges whether Transocean is entitled to exoneration and/or limited liability as to certain claims, the moving putative claimant must, under Rule F(5), first file a claim and answer before the Court can properly consider this

---

[9] The only putative claimant requesting that this Court's original injunction (Doc. No. 9) be modified has now indicated that his request is moot (Doc. No. 67).

request. Second, it appears that the issues raised in this request have now been addressed in the Court's Second Amended Order, and the Motion is, therefore, now moot. Therefore, there are currently no requests for changes to this Court's Second Amended Order that need be considered.

V.      **ISSUE 4: WHETHER THIS LIMITATION ACTION SHOULD BE DISMISSED**

There are currently two motions before this Court which seek dismissal of part of this Limitation Action. (Doc. Nos. 31, 104). The Court has already ruled that these requests are improper because the Movants seek to contest Transocean's entitlement to limited liability with respect to certain claims prior to filing a claim and answer. Thus, there are currently no properly filed, merits-based motions on the basis of which this Action could be dismissed.

Several claimants argue in their briefing, however, that dismissal of this Limitation Action is appropriate because media coverage of the oil spill disaster and testimony provided by Transocean representatives before Congress confirm that there was both negligence and privity on the part of Transocean. Without weighing any of this publicly available information regarding Transocean's role in the oil spill, the Court holds that dismissal would be inappropriate at this stage. This case has been before the Court barely one month. Many claimants have yet to file their proofs of claim, and no discovery has yet been conducted. As Transocean points out, this Limitation Action is a "fact intensive, claim driven" endeavor, to which the Court must give the same attention and scrutiny with which it evaluates all other cases. (Doc. No. 123 at 7.) Accordingly, the Court will not dismiss this Action at this early stage.

VI.     **CONCLUSION**

In accordance with the reasoning above, this Court holds the following with respect to motions now pending before the Court:

- Motion for Clarification (Doc. No. 15) and Motion to Strike (Doc. No. 40) are **TERMINATED AS MOOT**;

- Motion to Strike (Doc. No. 52) is **GRANTED IN PART AND DENIED IN PART;**

- Motions to Transfer (Doc. Nos. 12, 20, 42, 45, 102) are **STRICKEN/DENIED WITHOUT PREJUDICE;**

- Motions to Expedite Hearing on the Motions to Transfer (Doc. Nos. 13, 21) are **DENIED**;

- Motion to Defer Ruling on Motions to Transfer (Doc. No. 44) is **GRANTED**;

- Motions to Dismiss (Doc. Nos. 31, 104) are **STRICKEN/ DENIED WITHOUT PREJUDICE**; and

- Motion to Lift or Modify the Court's Amended Monition (Doc. No. 88) is **TERMINATED AS MOOT.**

- Transocean will have fifteen (15) days from the date of entry of this Order to respond to the Motion for Discovery Schedule and Motion for Joinder as to Motion for Discovery Schedule (Doc. Nos. 80, 86). Claimants will then have ten (10) days to reply.

**IT IS SO ORDERED.**

**SIGNED** this 16th day of June, 2010.


_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE