## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| IN RE THE COMPLAINT AND PETITION OF TRITON ASSET LEASING GmbH, TRANSOCEAN HOLDINGS LLC, TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC., AND TRANSOCEAN DEEPWATER INC., AS OWNER, MANAGING OWNERS, OWNERS PRO-HAC VICE, AND/OR OPERATORS OF THE MODU DEEPWATER HORIZON, IN A CAUSE FOR EXONERATION FROM OR LIMITATION OF LIABILITY | )  Civil No. 10-CV-1721 KPE )  )  IN ADMIRALTY )  )  )  )  )  )  )  )  )  )  ) |

## RESPONSE OF THE UNITED STATES, APPEARING SPECIALLY, AND NOT GENERALLY, TO THE MOTION FOR PROTECTIVE ORDER FILED BY THE TRANSOCEAN LIMITATION PETITIONERS

## INTRODUCTION

The Limitation Petitioners (collectively "Transocean") filed a Motion for a Protective Order following the June 16, 2010 issuance of a subpoena by the Joint Board of Investigation convened in New Orleans. The Joint Board, consisting of the representatives of the United States Coast Guard and Minerals Management Service, is proceeding under express federal statutory authority. *See,* 46 U.S.C. § 6301*, et seq.,* and 43 U.S.C. § 1348, discussed and quoted below. Similar subpoenae have been issued to other parties involved in the ownership and operation of the MODU *Deepwater Horizon*, including British Petroleum ("BP"). Transocean is the only entity which is not cooperating with the Joint Board's issuance of the various subpoenae.

Transocean purports to seek the Protective Order in order to avoid "conflicting" legal obligations.[1] Far to the contrary, Transocean's Motion *creates* conflicts and, not

---

[1]    Transocean is the only subpoenaed party that has conjured conflicting "duties" *vis-a-vis* the Board's subpoenae and litigation hold letters. As set out in the United States' letter to the Court (Docket No. 145), the United States' May 3rd litigation hold letter is entirely consistent with the Board's subpoena to Transocean. This memorandum does not repeat the points made in the letter, including the points concerning representations made to the Court by Transocean. We instead incorporate the letter by reference herein.

least, asks this Court to countermand an Order issued by another Article III Court in a case in which: (a) Transocean is a party; (b) is represented by one of the same law firms as in this case (Preis Roy); and (c) in which Transocean is subject to that Court's jurisdiction. *See*, *In Re DEEPWATER HORIZON*, Docket No. 133, Civil No. 10-CV-1156 (E.D. La.).[2]  On June 21, 2010, Judge Barbier reviewed the plan that spelled out that the marine riser being retrieved from the sea floor, i.e., the same riser subject to the motion in this court, be examined through non-destructive testing pursuant to a detailed written Unified Command protocol, and subsequently delivered to the custody of the Joint Board of Investigation.  Judge Barbier's June 21 Order memorializes his approval of that plan.  As stated above, the Joint Board of Investigation was convened within the jurisdiction of the Eastern District of Louisiana, Judge Barbier's Order was issued in that district,  and the marine riser will remain within that Court's jurisdiction.  Despite these facts, Transocean has failed to advise *this* Court (despite three separate filings) that the relief it seeks is diametrically contrary to the Order of another District Judge.[3]

Wholly aside from Judge Barbier's Order, the subpoena issued to Transocean by the Joint Board of Investigation was issued pursuant to express Congressional authority. *See,* 46 U.S.C. § 6301*, et seq.,* and 46 U.S.C. § 6304 (subpoena power).  Congress reaffirmed that authority through the Outer Continental Lands Act ("OSCLA"), 43 U.S.C. § 1348(b), which directs the Coast Guard to proceed with investigations involving oil spills subject to OCSLA.

In providing subpoena authority to the Joint Board of Investigation, Congress

---

[2]    Rules of conduct make it incumbent upon litigants to advise a court of controlling authority directly contrary to a position urged upon the court.  Here, the controlling and contrary authority is a Court Order in a case in which Transocean is a defendant.

[3]    *See*, Judge Barbier's June 21st Order (Docket No. 133) in *In Re DEEPWATER HORIZON*, Civil No. 10-CV-1156 (E.D. La.).  A copy of Judge Barbier's Order and the protocol for retrieval and testing of the marine riser are filed as attachments 1 and 3 to the United States' faxed June 22nd letter to this Court (Docket No. 145).

specified that the Board's authority is co-extensive with that of a district court and, further, that venue for disputes concerning subpoenae issued by the Board shall be in the district court for the district in which the investigation is conducted – *i.e.*, in this case, the Eastern District of Louisiana, which is the very district in which Judge Barbier already has entered his Order dealing with the same issues raised in Transocean's Motion. *See*, 46 U.S.C. § 6304(b).

Congress also provided that any findings and conclusions of the Joint Board of Investigation shall not be admissible as evidence in any civil proceedings. *See*, 46 U.S.C. § 6308(a). One of the core reasons for the Board's investigation is to seek the root causes of the *Deepwater Horizon* blowout, fire, explosion, and oil spill in order to prevent *future* accidents. The inspection and non-destructive testing ordered by Judge Barbier therefore is focused on determining whether the marine riser and related equipment played any causal role in the *Deepwater Horizon* tragedy and, if so, whether safety recommendations should issue (immediately, if necessary) regarding corrective action involving other drilling operations. In short, while Transocean's goal in this Limitation action is to absolve itself of liability or limit the damages owed to the *Deepwater Horizon's* survivors and the estates of the decedents, the starkly contrasting *raison d'etre* of the Joint Board of Investigation is to prevent *future* tragedies.

Regardless of whether Transocean fully comprehends the import of its Motion and requested relief, its attempt to subvert and/or delay the subpoena and the testing ordered by Judge Barbier is nevertheless contrary to what we sincerely hope is a mutually shared goal of the highest order, that goal being the attempt to determine if safety recommendations should be made for the protection of life, public health and safety, the economic health of states and communities, and protection of the environment.

Finally, as a legal matter the statutory authority of the Joint Board of Investigation is outside the scope of the Limitation of Liability Act of 1851 as a matter of general maritime law. *Cf.*, *University of Texas Medical Branch at Galveston v. United States*,

557 F.2d 438 (5th Cir. 1977); *In re Southern Scrap Material Company, LLC, in a Cause of Exoneration from, or Limitation of Liability*, 541 F.3d 584 (5th Cir. 2008); *United States v. CF Industries, Inc.*, 542 F. Supp. 952 (D. Minn. 1982); *Transporter Marine,* 217 F.3d 335, 338 (5th Cir. 2000).  Added to the force of maritime law is the Oil Pollution Act ("OPA") itself, which states, "Nothing in this Act [OPA], *the Act of March 3, 1851* ... [the Limitation of Liability Act] ... shall in any way affect, or be construed to affect, *the authority of the United States* or any State or political subdivision thereof ... (1) *to impose ... additional requirements* ... relating to the discharge ... of oil."  33 U.S.C. § 2718 (c) (emphasis added).  These latter issues were thoroughly briefed in the United States' Motion to Modify or Amend the Court's First Amended Monition, which resulted in the Second Amended Order.

<u>**DISCUSSION**</u>

**I.**  **THE ORDER OF THE DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA IS <u>CONTROLLING AND MOOTS THE MOTION.</u>**

We have little to add to what is set out above in our discussion of Judge Barbier's Order in *In Re DEEPWATER HORIZON.*  While parties certainly can disagree with a court's order, ignoring it clearly is not an option.  Equally obvious is the fact that a party can seek to appeal an order (assuming that the conditions for interlocutory or final appeal have been satisfied), yet simply seeking a countermanding ruling from another non-appellate court, as Transocean has done here, is hardly proper – particularly when the moving party fails to advise the second court of the existence of a pre-existing Order issued by an Article III court properly exercising jurisdiction and venue.  46 U.S.C. § 6304 provides investigative and subpoena authority to the United States Coast Guard and states in relevant part:

> (a) In an investigation under this chapter ... the production of any evidence may be compelled by subpena. *The subpena authority granted by this section is coextensive with that of a district court of the United States, in civil matters, for the district in which the investigation is conducted.*

4

> (b) *When a person fails to obey a subpena issued under this section, the district court of the United States for the district in which the investigation is conducted* or in which the person failing to obey is found, shall on proper application issue an order directing that person to comply with the subpena. The court may punish as contempt any disobedience of its order.
>
> \*          \*          \*          \*          \*          \*
>
> (d) An official designated to conduct an investigation under this part may issue subpenas as provided in this section and administer oaths to witnesses.[4]

(Emphasis added.)  Very simply, the Eastern District of Louisiana is the district in which the Board has been convened and in which the riser is to come ashore.  It also is the district in which Judge Barbier, wholly consistent with 46 U.S.C. § 6304, entered his Order concerning the riser, its custody, and its testing.  It is also the district in which Congress has required that actions to enforce the subpoena be filed in the event Transocean fails to abide by its subpoena obligations.  Equally relevant, it is the district in which the Court would take action as necessary, including issuance of a contempt order, to enforce Transocean's compliance with Judge Barbier's Order.[5]  Given these undisputed matters of fact and law, Transocean's Motion is moot in view of Judge Barbier's Order.

## II.   THE STATUTORY AUTHORITY PROVIDED BY CONGRESS FOR THE BOARD'S INVESTIGATION AND SUBPOENA POWER TRUMPS THE LIMITATION ACT.

46 U.S.C. § 6304, quoted above, is the Congressionally enacted authority by which the Joint Board issued its subpoena to Transocean, as well as the statute that expresses Congress' mandate regarding the method and venue for enforcement of the subpoena.  46

---

[4]     Insofar as Transocean being "found" within the E.D. of Louisiana, we respectfully note that the Preis Roy firm is listed as Transocean's counsel on the Court's docket entries in the *In Re DEEPWATER HORIZON* case.  We also understand that a Transocean representative is or will be present when the riser comes ashore within the E.D. of Louisiana.

[5]  To the extent that this Court denies the relief Transocean requests herein, and Transocean nonetheless refuses to comply with the Board's subpoena, the United States intends to file a motion to compel compliance with that subpoena in the Eastern District of Louisiana forthwith.

U.S.C. § 6304 applies to marine investigations generally.  In this case dealing with a drilling rig operating on the Outer Continental Shelf, Congress specifically addressed the authority of the Board's power to investigate and issue subpoenae.  As part of OCSLA, Congress therefore enacted 43 U.S.C. § 1348, which dovetails with 46 U.S.C. § 6304, and provides in relevant part:

> (d) Investigation and report on major fires, oil spills, death, or serious injury
>
> (1) The Secretary or the Secretary of the Department in which the Coast Guard is operating shall make an investigation and public report on each major fire and each major oil spillage occurring as a result of operations conducted pursuant to this subchapter, and may, in his discretion, make an investigation and report of lesser oil spillages. For purposes of this subsection, a major oil spillage is any spillage in one instance of more than two hundred barrels of oil during a period of thirty days. All holders of leases or permits issued or maintained under this subchapter shall cooperate with the appropriate Secretary in the course of any such investigation.
>
> (2) The Secretary or the Secretary of the Department in which the Coast Guard is operating shall make an investigation and public report on any death or serious injury occurring as a result of operations conducted pursuant to this subchapter, and may, in his discretion, make an investigation and report of any injury. For purposes of this subsection, a serious injury is one resulting in substantial impairment of any bodily unit or function. All holders of leases or permits issued or maintained under this subchapter shall cooperate with the appropriate Secretary in the course of any such investigation.
>
> *              *              *              *              *              *
>
> (f) Summoning of witnesses and production of evidence
>
> In any investigation conducted pursuant to this section, the Secretary or the Secretary of the Department in which the Coast Guard is operating shall have power to summon witnesses *and to require the production of books, papers, documents, and any other evidence.* Attendance of witnesses or the production of books, papers, documents, or any other evidence shall be compelled by a similar process, as in the district courts of the United States. Such Secretary, or his designee, shall administer all necessary oaths to any witnesses summoned before such investigation.

43 U.S.C. § 1348 (emphasis added).  The foregoing statutes are specific in nature and expressly address the investigative authority, the subpoena power, and the enforcement and venue provisions relating to the Board's subpoena power.  The Limitation Act of 1851, by contrast, is a general statute that has nothing even remotely to do with

administrative investigations of marine incidents and which, as its name indicates, is nearly 150 years old.

It is hornbook law that a precisely drawn, detailed statute pre-empts more general ones. *See, e.g., Brown v. General Services Admin.,* 425 U.S. 820, 834 (1976) (citing cases). In the context of the Limitation Act itself, the courts have drawn on this fundamental and common-sense principle to void application of the hoary 1851 Act to later enacted and narrowly focused statutory regimes. For example, in *Bouchard Transportation v. Environmental Protection Agency, State of Florida, United States, et al.* ("*Bouchard*"), 147 F.3d 1344 (11th Cir. 1998), *cert. denied*, 525 U.S. 1140, and *cert. denied*, 525 U.S. 1171 (1999), the Eleventh Circuit held as follows:

> Subjecting OPA 90 claims to Rule F effectively would allow ship owners to opt out of the Congressionally mandated procedures for resolving OPA 90 claims. Additionally, the venue provisions of OPA 90 permit claimants to proceed "in any district in which the discharge or injury or damages occurred, or in which the defendant resides, may be found, has its principal office, or has appointed an agent for service of process." 33 U.S.C. § 2717(b). The injunction issued by the district court in a Rule F proceeding would require OPA 90 claimants to proceed only in the district court chosen by the vessel owners, and the process envisioned by OPA 90's jurisdiction and venue provisions would be rendered meaningless. ...
>
> *         *         *         *         *         *
>
> In resolving the conflict between the Rule F procedures and the OPA 90 procedures, a fundamental principle of statutory construction requires that we apply the more specific procedures. [Footnote omitted.] *San Pedro v. United States,* 79 F.3d 1065, 1069 (11th Cir.) ('We therefore follow the principle, upheld by the Supreme Court on numerous occasions, that a specific statute takes precedence over a more general one.'), *cert. denied,* 519 U.S. 980, 117 S.Ct. 431, 136 L.Ed.2d 330 (1996). Furthermore, we avoid statutory constructions that render provisions meaningless. *Woodfork v. Marine Cooks & Stewards Union,* 642 F.2d 966, 970-71 (5th Cir. Apr.1981). [Footnote omitted.] ('A basic principle of statutory construction is that a statute should not be construed in such a way as to render certain provisions superfluous or insignificant.' (internal quotations and citations omitted)). Consistent with these principles of statutory construction, OPA 90 claims must be resolved pursuant to the procedures contained in that statute, rather than replacing those procedures with Rule F.

*Bouchard, id.*, 147 F.3d at 1351.

The Fifth Circuit applied this principle to another later enacted and specific statute

that superseded the Limitation Act:

> First, Congress made a clear policy choice in the 1986 amendments to supersede with unlimited personal liability the *in rem* liability limitation that vessel owners had enjoyed under the previous versions of §§ 414 and 415 of the Wreck Act. Thus, it is very unlikely that Congress intended for vessel owners to be able to cancel out this legislative decision by relying on the similar *in rem* protection of the 1851 Limitation Act. Permitting Southern Scrap to invoke the Limitation Act in this case would nullify the effect of the new §§ 414(b) and 415(c), which we have determined impose unlimited personal liability upon a vessel owner for governmental removal costs, when the owner fails to comply with its obligation to remove its sunken vessel from a navigable waterway. [Citations omitted.]

> \*         \*         \*         \*         \*         \*

> Second, in concluding that the Wreck Act 'implicitly limits the scope of the Limitation Act,' 557 F.2d at 452, the *University of Texas* Court applied the longstanding principle that when two statutes irreconcilably conflict, the more recent statute controls. *Id.* at 455 ('This is not to say that the Limitation Act no longer has any vitality. It is rather to say that its force succumbs to that of a later statutory enactment which, when still later construed by the Supreme Court in a manner that wars with the policies of the Limitation Act, must prevail over the earlier Act.') ... .

*In re Southern Scrap Material Company,* 541 F.3d 584, 593-94 (5th Cir. 2008). In the context of this case and Transocean's Motion, it is difficult to imagine more detailed and specific statutes than 46 U.S.C. § 6304 and 43 U.S.C. § 1348. Under these well–settled rules of statutory construction, as well as the Fifth Circuit and other courts' application of those rules to the Limitation Act itself, Transocean's Motion must be denied.

## III.  GENERAL MARITIME LAW, THE LIMITATION ACT OF 1851, AND THE OIL POLLUTION ACT OF 1990

The Limitation Act of 1851 potentially allows a vessel owner to limit its liability for a limited class of *judicial* actions seeking money "damages." It is beyond cavil that the Joint Board of Investigation is an administrative body acting pursuant to Congressional authorization. The Joint Board of Investigation does not assess monetary "damages" or award "money;" moreover, its reports, findings of fact, opinions, recommendations, deliberations, and conclusions are not even admissible as evidence in any civil proceeding. 46 U.S.C. § 6308. *See, e.g.,Louisiana ex rel. Dept. of Transp. and Development v. Kition Shipping Co., Ltd.,* 653 F.Supp.2d 633, 648 (M.D. La. 2009).

In other words, the Board's proceedings, including any issuance and enforcement of its subpoenae, are not subject to the Limitation Act for the simple reason that the Board's investigation is not a claim for economic liability, but instead is a federally mandated administrative investigation, the goal of which is to promote safety.  Because neither the Board's investigatory process nor the subpoena to Transocean are economic claims that are subject to limitation in the first instance, they do not fall within the scope of the Limitation Act and the Court's Second Amended Monition/Order.

The foregoing principle is expressed clearly in cases holding that civil penalty claims, which of course are not predicated on proof of economic "damages," are outside the scope of the Limitation Act.  *See, e.g., United States v. CF Industries, Inc., supra,* 542 F. Supp. 952, 956-57 (D. Minn. 1982) (claim for statutory civil penalty under the Clean Water Act for discharge of hazardous material not subject to limitation); *Transporter Marine, supra,* 217 F.3d at 339-40 (5th Cir. 2000) (holding that Coast Guard alcohol and drug regulations are not subject to the Limitation Act).  In the Fifth Circuit, the non-application of the Limitation Act to federal statutory regimes is well established.  As stated in *In re Southern Scrap, supra,* 541 F.3d at 594 fn. 16 (citing both *CF Industries* and *Transporter Marine*):

> In addition to the Wreck Act, courts have found that other later-enacted statutes impliedly repealed the Limitation Act for cases arising under those statutes.  *See Tug ALLIE-B,* 273 F.3d at 948-49 (holding that the Limitation Act does not apply to claims brought under the Park System Resource Protection Act); *Complaint of Metlife Capital Corp.,* 132 F.3d 818, 822 (1st Cir.1997) (holding that the Limitation Act does not apply to claims brought under the Oil Pollution Act); *In re The Glacier Bay,* 944 F.2d 577, 583 (9th Cir.1991) (holding that the Limitation Act does not apply to claims brought under the Trans-Alaska Pipeline Authorization Act); *United States v. CF Indus., Inc.,* 542 F.Supp. 952, 955-56 (D.Minn.1982) (holding that the Limitation Act does not apply to claims brought under the Clean Water Act); *cf. Transporter Marine,* 217 F.3d at 339-40 (holding that Coast Guard alcohol and drug regulations are not subject to the Limitation Act).

When Congress enacted OPA following the grounding of the *Exxon Valdez,* the foregoing principles of maritime law were codified.  OPA states:

(c)     *Additional requirements* and liabilities; penalties

9

> Nothing in this Act, *the Act of March 3, 1851* [the Limitation Act] ... *shall in any way affect, or be construed to affect, the authority of the United States* or any State or political subdivision thereof –
>
> (1)     *to impose* additional liability or *additional requirements;* or
>
> (2)     to impose, or to determine the amount of, any fine or penalty (whether criminal or civil in nature) for any violation of law,
>
> relating to the discharge, or substantial threat of a discharge, of oil.

33 U.S.C. § 2718(c) (emphasis added).  Examined against the backdrop of OPA's clear language, 46 U.S.C. § 6304 and 43 U.S.C. § 1348 are federal statutes that unequivocally impose *requirements* upon Transocean, including the statutory *requirement* that it comply with the subpoena issued by a Joint Board of Investigation that has authority "coextensive with that of a district court of the United States, in civil matters, for the district in which the investigation is conducted."  46 U.S.C. § 6304(a).  Equally clear is the fact that the investigation and subpoena "relate" to the "discharge of oil."  Should there be any doubt about that, Congress laid it to rest when it defined the Board's investigative authority in OCSLA:

> (d) Investigation and report on major fires, *oil spills*, death, or serious injury
>
> (1) The Secretary or the Secretary of the Department in which the Coast Guard is operating shall make an investigation and public report on each major fire and *each major oil spillage* occurring as a result of operations conducted pursuant to this subchapter, and may, in his discretion, make an investigation and report of lesser oil spillages. For purposes of this subsection, a major oil spillage is any spillage in one instance of more than two hundred barrels of oil during a period of thirty days. ...

OCSLA, 43 U.S.C. § 1348(d), quoted in full *supra* (emphasis added).  Whatever else can be said about the *Deepwater Horizon* incident, it certainly qualifies as a "major spill."

## CONCLUSION

If for no other reason than Judge Barbier's Order, Transocean's Motion must be denied.  But of course the Order issued from the Eastern District of Louisiana is not the only reason  why the Motion fails.  Thus, as a matter of statute, principles of statutory construction, case  law, general maritime law, and OPA, the Motion must be denied.

Dated: June 23, 2010.

Respectfully submitted,

TONY WEST
Assistant Attorney General
KEITH WYATT
Assistant United States Attorney
PETER F. FROST
Director, Torts Branch, Civil Division
Admiralty and Aviation
U. S. Department of Justice
P. O. Box 14271
Ben Franklin Station
Washington, DC  20044-4000
Telelephone:  (202) 616-4000
Facsimile:  (202) 616-4002
E-mail:  peter.frost@usdoj.gov


/s/ R. Michael Underhill
R. MICHAEL UNDERHILL
Attorney in Charge, West Coast Office
Torts Branch, Civil Division
U.S. Department of Justice
Box 36028
450 Golden Gate Avenue
San Francisco, California  94102-3463
Telephone: (415) 436-6648
Facsimile:  (415) 436-6632
E-mail:  mike.underhill@usdoj.gov

Attorney in Charge in this
Proceeding on Behalf of the
UNITED STATES OF AMERICA,
Appearing Specially and Not Generally

IGNACIA MORENO
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
STEVEN O'ROURKE, Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone: (202) 514-4080
e-mail:  steve.o'rourke@usdoj.gov

Attorneys for the UNITED STATES
OF AMERICA, Appearing Specially and
Not Generally

11

<u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing was filed via the Live District CM/ECF system on June 23, 2010, which caused an electronic copy of same to be served automatically on  counsel of record.

/s/ R. Michael Underhill
R. MICHAEL UNDERHILL

12