1          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF TEXAS
2                   HOUSTON DIVISION

3
IN RE:  THE COMPLAINT AND        )
4   PETITION OF TRITON ASSET         )   NO. H-10-CV-1721
LEASING GmbH, ET AL, in a        )   June 23, 2010
5   Cause for Exoneration from       )
or Limitation of Liability       )      In Admiralty
6

7
                         STATUS CONFERENCE
8            BEFORE THE HONORABLE KEITH P. ELLISON

9

10

11

12   For Petitioners/Movants:    Mr. Frank A. Piccolo*
                                Preis & Roy, PLC
13                               24 Greenway Plaza, Suite 2050
                                Houston, Texas   77046
14
                                Mr. John M. Elsley*
15                               Royston Rayzor
                                711 Louisiana, Suite 500
16                               Houston, Texas   77002

17                               Mr. Ronald L. White*
                                White, Mackillop & Gallant, PC
18                               2200 West Loop South, Ste. 1000
                                Houston, Texas   77027
19
     For Respondent:             Mr. R. Michael Underhill*
20                               U.S. Department of Justice
                                Torts Branch, Civil Division
21                               450 Golden Gate Avenue
                                7th Floor, Room 5395
22                               San Francisco, CA  94102

23   For Claimants:              Mr. W. Mark Lanier
                                The Lanier Law Firm
24                               6810 FM 1960 West
                                Houston, Texas   77069
25

```
1                              Mr. Scott R. Bickford*
                               Martzell & Bickford
2                              338 Lafayette Street
                               New Orleans, LA  70130
3
                               Mr. Kurt B. Arnold
4                              Arnold & Itkin, LLP
                               1401 McKinney Street
5                              Houston, TX  77010

6
     Court Reporter:           Bruce Slavin, RPR, CM
7

8

9
     *Appearing via teleconference
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
     Proceedings reported by mechanical stenography and produced
25   by computer-aided transcription.
```

1              THE COURT:  All right.  We'll turn to Transocean

2    and we'll take appearances of counsel from anyone who knows

3    for certain they wish to speak.

4                    Is there anyone on the phone?

00:00   5                    We'll take appearances in court first and then

6    we'll have appearances on the phone.

7              MR. LANIER:  Good morning, Your Honor.  I'm Mark

8    Lanier.  I am here to speak on behalf of a number of

9    different clients we've got from Judge Hughes' court, as

00:00  10    well as some other courts, that have not filed.  I am also

11    here for Ernest Cannon.  He and I are co-counsel on Shelley

12    Anderson's case.  He sends his greetings.

13              THE COURT:  Welcome.

14                    Anyone else want to enter an appearance?

00:00  15                    Then on the phone, please.  Is anyone on the

16    phone with us today?

17              MR. ELSLEY:  Yes, Your Honor.

18              THE COURT:  Could you state your name and

19    affiliation, please.

00:00  20              MR. ELSLEY:  This is John Elsley representing the

21    Petitioners and the Movants.

22              MR. PICCOLO:  Frank Piccolo representing the

23    Petitioners and Movants.

24              MR. UNDERHILL:  Mike Underhill for the Department

00:01  25    of Justice --

1      THE COURT:  Why don't we do that over again.  I

2  think two people were speaking at once.

3      MR. ELSLEY:  This is John Elsley.

4      THE COURT:  No, not yours, Mr. Elsley, or

00:01  5  Mr. Piccolo, but the third name, please.

6      MR. WHITE:  Ron White for the Petitioners also,

7  Your Honor.

8      THE COURT:  Thank you.

9      MR. UNDERHILL:  And Mike Underhill, Your Honor,

00:01  10  U.S. Department of Justice, for the United States.

11      THE COURT:  Thank you all for being available --

12      MR. BICKFORD:  This is Scott Bickford appearing

13  especially for Natalie Roshto and Mike Williams.  I'm sorry,

14  Your Honor.

00:01  15      THE COURT:  What brings us together is the request

16  on an emergency basis by Transocean as to allegedly

17  conflicting requirements that have been imposed.

18          My first question and the one we need to begin

19  with has to do with whether I have any authority to do

00:02  20  anything about that.  I am concerned that the stay that was

21  entered in this case does not really impinge on what the

22  government is seeking to do, but I do invite argument on

23  that point.

24      MR. ELSLEY:  Judge, this is John Elsley.  Let me

00:02  25  address that first.

1          We believe -- Transocean believes that this is

2    the proper venue to hear Transocean's motion.  I know the

3    government in their filing cites 46 USC 6304(b) for the

4    proper proposition that any action to enforce an administrative

00:02  5    subpoena issued by the Marine Board of Investigation would

6    probably lie in the district in which the Board sits --

7          THE COURT:  Mr. Elsley, let me slow you up just a

8    little bit.  We're trying to keep up with every word.

9          MR. ELSLEY:  I'm sorry, Judge.

00:02  10         THE COURT:  A little bit slower and a little bit

11   louder if you can.

12         MR. ELSLEY:  All right.  The government in their

13   filing cites 46 --

14         THE COURT:  No.  No.  We got that.

00:03  15         MR. ELSLEY:  -- that any action to enforce an

16   administrative subpoena issued by the Board would probably

17   lie in the district in which the Board sits, which is the

18   Eastern District of Louisiana.  But, in fact, Section

19   6304(b) also states that enforcements may be had in the

00:03  20   District Court of the United States or the district in which

21   the person to whom the subpoena is directed is found.

22              Transocean is headquartered in Houston and the

23   subject of the subpoena falls directly in this Court's

24   jurisdiction as the limitation court.  We do point out that

00:03  25   the riser and the debris are former parts of the Deepwater

        1    Horizon vessel, which is the very subject of this limitation

        2    of liability action in this court; and, so, we believe that

        3    this is -- Your Honor is an appropriate court to bring this

        4    motion for protective order, although we acknowledge, of

00:04   5    course, that the motion could also be brought in the Eastern

        6    District of Louisiana.

        7            THE COURT:  Okay.  Is Judge Barbier's order -- does

        8    that need to be a matter of concern?

        9            MR. ELSLEY:  Well, I think certainly, Judge -- and

00:04  10    a few comments about Judge Barbier's order.  Please

       11    understand that our motion was filed on Friday and the

       12    subpoena was issued on Wednesday, and Judge Barbier's order

       13    was entered on Sunday.  Apparently -- and we were not

       14    present when it was entered -- that is, Transocean.  We were

00:04  15    not parties to the argument.  We were not present.

       16    Apparently, that issue was raised by certain plaintiffs'

       17    counsel who wanted to have a representative onboard the

       18    vessel when the riser came up to watch this nondestructive

       19    testing taking place.  That's our understanding.

00:05  20            I should say that Transocean does not have any

       21    objection to and, in fact, has agreed with the protocol for

       22    testing.  But Judge Barbier, in his order, has ordered -- in

       23    sort of the preparatory language to the order, does state

       24    that at the conclusion of the operation the riser section

00:05  25    will be delivered to the USCG Base Support Unit in

```
 1   New Orleans subject to the custody and supervision of the
 2   Marine Board of Investigation.
 3              Now, while we were not present at that hearing
 4   and only learned about the order, of course, after our
 5   emergency motion was filed, we do need to point out that
 6   Judge Barbier's order only deals with part of the subpoena,
 7   which is the riser.  The subpoena involves three items and
 8   the first is some documents that really are not in dispute.
 9   We can obviously copy those and give them to the Marine
10   Investigation Board, and we're happy to do that.  But Judge
11   Barbier's order only deals with the riser, not the debris.
12              The prior working relationship under a hold
13   order between the MBI and Transocean was that the debris
14   from the Deepwater Horizon was to be collected by
15   Transocean, preserved and maintained in the custody of
16   Transocean at its Amelia location and since the accident
17   Transocean has, in fact, been collecting the debris and
18   maintaining it at that location.
19              So, the MBI subpoena -- and this was
20   acknowledged by the Marine Board of Investigation itself --
21   does represent a departure from the way in which the Marine
22   Board of Investigation operated in the past with Transocean.
23          THE COURT:  Okay.  Thank you.
24              Let me, if I could, invite comment from the
25   government.
```

00:05 (line 5)
00:06 (line 10)
00:06 (line 15)
00:06 (line 20)
00:07 (line 25)

1          MR. UNDERHILL:  Thank you, Your Honor.  This is

2     Mike Underhill for the record.

3          Your Honor, you prefaced your question with

4     jurisdiction, not venue.  I will cover the venue, but let me

00:07  5     proceed first with the jurisdiction issue, which I think is

6     a two-level argument.  One is directly related to OPA in

7     Your Honor's second amended order on the second amended

8     petition which specifically references OPA Section 2718(c),

9     which I won't repeat what's already covered in my papers,

00:07  10    but it explicitly says that neither OPA nor the Limitation

11    of Liability Act shall -- a bunch of language, but to sum it

12    up -- "shall not have any effect upon the right of the

13    government to impose additional liabilities per" and appears

14    the word "requirements".  So, as a matter of jurisdiction,

00:08  15    speaking to the Limitation Act, and the Court's authority to

16    act under that act, there is no jurisdiction.

17          Secondly -- and then I am going to sort of sum

18    up the level of the argument on papers filed this morning.

19    The second level of that argument is that it is clear

00:08  20    congressional statutes dealing with the Board subpoenas and

21    investigation, in fact, prompts as a matter of law, as a

22    matter of law of practice, and certainly as a matter of

23    Supreme Court case law, the Limitation Act and the

24    limitation proceedings.  In that same context the venue

00:08  25    provision specifically addressed in 46 USC 6304 states that

1    jurisdiction for orders to compel, motions to quash,

2    et cetera, shall be in the district in which the

3    investigation is proceeding.

4              And I think my colleague, Mr. Elsley, conceded

00:09    5    that while they are, in a sense, present and found in the

6    Southern District of Texas the confluence of factors is that

7    they are also found -- in fact, I am told by my client --

8    present or intended to be present when the riser is

9    delivered to shore from the vessel.

00:09    10             So, you have the investigation in New Orleans

11   proceeding in the Eastern District of Louisiana.  That's

12   proper under the investigation statute.  You have the riser

13   that will be delivered to the Eastern District of Louisiana,

14   the res itself.  You have Transocean, which is not only

00:09    15   present in that district but will be present when it's

16   delivered ashore and, furthermore, is present in that

17   district through appearances it has made in the case cited

18   on papers in Judge Barbier's court.  So, all those factors

19   come together both as a matter of jurisdiction and the

00:09    20   matter of venue.

21             And as specifically to Judge Barbier's order,

22   I find it, much to say, highly problematic for a request of

23   the party -- and I will accept my colleague's statement that

24   it was done in good faith -- but it's highly problematic to

00:10    25   ask one district court, an Article III judge, to, if not

1   explicitly then at least implicitly, countermand another

2   judge's order, because what that does is it puts a whole

3   bunch of other parties in the cross-hairs and between a rock

4   and a hard place.

00:10   5           For example, if Your Honor were to countermand

6   Judge Barbier's order, then the United States, through the

7   Coast Guard -- and, in fact, that goes for BP as well on the

8   vessel -- as I understand it, the riser is being transported

9   aboard the BP vessel or the BP charter vessel -- that they

00:10   10   would be in violation of Judge Barbier's order.

11           And I don't want to go too far with a

12   reservation here because I don't know all the facts, but

13   with respect to Judge Barbier's order, the hearing that was

14   held, my understanding -- and I think this is confirmed in

00:11   15   the order itself -- is that there is a liaison committee of

16   defense counsel; and, although it may be true that

17   Transocean was not there in court through its own attorneys,

18   they have appeared in that court.  Nevertheless, the liaison

19   defense counsel does presumably represent all of defendants'

00:11   20   interests.

21           So, when you add all of those factors together

22   you come to the point of jurisdiction and at the property

23   line in the Eastern District of Louisiana.  And I certainly

24   have more to say on the merits, Your Honor, but I will leave

00:11   25   it there if you want to have any questions on jurisdiction

1    and venue.

2              MR. ELSLEY:  Judge, this is John Elsley again.  I

3    think I do need to reply to a couple of things, if I may, to

4    what Mr. Underhill said.

00:11  5              We're not asking the Court to countermand any

6    order of another district court.

7              A couple of points, one which I made earlier.

8    Judge Barbier's order does deal with the riser; and, while I

9    can't comment on how that order came to be entered, I will

00:12  10   say that we do need to make the point that the subpoena

11   relates to debris that Judge Barbier's order does not even

12   address.  So, there is still an issue for this court --

13   which I believe is the appropriate court to hear the

14   issue -- to address with respect to debris, which is not

00:12  15   covered under Judge Barbier's order except with respect to

16   the riser.

17              So, we are not asking --

18         THE COURT:  But, Mr. Elsley, surely if there is

19   some incompleteness to Judge Barbier's order that ought to

00:12  20   be addressed in Judge Barbier's court, shouldn't it?

21         MR. ELSLEY:  Well, I would say no, Judge.  I think

22   it should be addressed in your court because, again, this is

23   a limitation of liability case.  These are parts and

24   appurtenances of the vessel, which falls within your

00:13  25   jurisdiction.

1          Now, Mr. Underhill has referred the Court to

2    cases which, you know, have held that certain claims which

3    are made for fines and penalties for certain economic loss

4    damages fall outside a limitation case; and, of course, we

00:13   5    have acknowledged that by submitting to the Court a second

6    amended monition order which carves out from the limitation

7    case certain claims.  But the specific subject of the

8    subpoena is the vessel or appurtenances of the vessel, and

9    that falls within your jurisdiction, Judge.

00:13   10          It's true that if the government does decide

11   to bring a suit for fines and penalties associated with the

12   Deepwater Horizon incident that those suits could be brought

13   under the judge's -- under this court's second amended

14   monition order outside of the limitation case.  There's no

00:14   15   doubt about that.

16          THE COURT:  Well, Mr. Elsley, leaving aside for the

17   moment the breadth of the existing limitation order,

18   shouldn't this court grant relief from the stay to the

19   extent that the stay affects a government investigation?  I

00:14   20   mean, whether or not the current order speaks to the

21   investigation, shouldn't I allow the government

22   investigation to proceed?

23          MR. ELSLEY:  Well, I don't think we're contending

24   that the investigation shouldn't proceed.  What we're really

00:14   25   contending, Judge, is that we have conflicting orders here.

1   We have a hold order from the Department of Justice.  We

2   have a hold order from the Marine Board of Investigation and

3   we have certain preservation orders from another federal

4   district court requiring us to maintain custody of the riser

00:15   5   and custody of the debris.  And because of that dilemma

6   proposed by the subpoena we are simply asking for the

7   Court's guidance on what we should do with the riser and

8   what we should do with the debris, because, unlike the

9   government, we view it as a -- we believe that there is a

00:15   10   conflict between the prior hold orders and the orders of the

11   other federal district courts and the MBI subpoena.  In

12   fact, Lieutenant Commander Jeff Bray, counsel for MBI,

13   acknowledged when he served the subpoena that the subpoena

14   not only was a departure from the prior hold order but that

00:15   15   it potentially raised the possibility that Transocean's

16   compliance with the subpoena might constitute a violation of

17   the other preservation orders supplied to Transocean.

18           So, we're just caught between a rock and a

19   hard place because we have an MBI subpoena saying give

00:16   20   custody to another party, yet we have other hold orders that

21   say retain custody to Transocean.

22           THE COURT:  Mr. Underhill, do you want to speak to

23   that?

24           MR. UNDERHILL:  Yes.  This is Mr. Underhill

00:16   25   speaking.

1          Your Honor, insofar as this issue of hold

2    orders, I hope by now the Department of Justice has made

3    this point absolutely clear, that we have no problem and no

4    inconsistency between the Department's May 3rd hold letter

00:16    5    and compliance with the subpoena.  The subpoena trumps the

6    hold letter written by counsel.

7          As the 6304 statute, 46 USC 6304, explicitly

8    says, the subpoena issued by the Board -- its jurisdiction

9    is coextensive with the district court in the district to

00:17   10    which the Board sits.  Therefore, my friend Mr. Elsley's

11    argument is like saying if he got an order from the court to

12    produce a thing, a piece of paper, a riser for that matter

13    or parts of a riser -- if he was ordered to do so by a

14    court, if you take his argument out to its conclusion, he

00:17   15    would say, 'Your Honor, I'm not going to do it because I am

16    violating a hold letter issued by the Department of Justice'

17    or a private -- or whatever it might be.  The argument

18    simply doesn't fly.

19          Second, as to the point of the investigation

00:17   20    itself -- and I think this is truly one of the core

21    issues -- it's as much practical as legal.  Nevertheless, it

22    does [unintelligible] towards the statute.  The purpose of

23    this investigation by the Marine Board is not to assess

24    liability.  It's not to find whether Transocean was at fault

00:18   25    or not or BP was at fault or not.  And insofar as they

1    actually made such findings or attempted to do so, those

2    findings are, by statute, inadmissible in any civil court

3    for any purpose in any proceeding.  They can't do that.

4              The purpose of that board and the purpose of

00:18   5    the subpoena is to try to assess what were the physical --

6    I'm not talking about liability causes -- but what were the

7    physical causes of the floor blasts where 11 people died.

8    We have an oil spill.  We don't need to go into that.

9    That's the purpose for the investigation.  The need for the

00:18   10   both the riser that's being delivered today and the other

11   parts of the riser and, for that matter, any other

12   appurtenances and any other things to do -- which eventually

13   the BOP will be -- I believe it's intended to raise that

14   from the sea floor when it's safe and appropriate to do so.

00:19   15   The whole purpose is to try to assemble this as a package

16   onshore.

17             And we have probably all seen on TV, if no

18   other place, after an aircraft accident when they try to

19   assemble the airplane onshore, the pieces and parts.  They

00:19   20   assemble every piece and every part they can get.  If it's

21   the wing falls off, they still try to get all the seats and

22   put them where the seats belong basically to recreate that

23   airplane to try to find out, in a holistic system, what went

24   wrong and what caused the accident, not to determine

00:19   25   liability, who might or might not be sued for the aircraft

1  accident, but to try to find out whether they need to issue

2  safety recommendations to the FAA in that example, to the

3  industry, the manufacturers, to say, 'We have a problem.  We

4  need to correct it.  We need to correct it now in order --

5  not to assess liability for this accident but to prevent

6  future accidents, injuries, death and, in this case, oil

7  spills.'

8           What my friend and colleague, Mr. Elsley, and

9  his client want to do is stand in the way and impede -- and

10  I'm not saying for an ulterior motive, but the consequence,

11  the ultimate result of what they want, is to nevertheless

12  impede a safety investigation that potentially can have the

13  effect of saving lives down the road.  Now, maybe they don't

14  find out what the cause is.  Maybe they look at the riser

15  and the pieces and say, 'You know what?  We can't figure it

16  out' --

17           THE COURT:  No.  I understand that point,

18  Mr. Underhill.  Let me ask you this, and I should have

19  clarified this earlier.

20           Your address is with U.S. Department of

21  Justice in San Francisco.  Are you speaking both for DOJ and

22  the Minerals Management Service or is your client only DOJ?

23  Or do we have a risk of a conflict within the government?

24           MR. UNDERHILL:  I am speaking on behalf of the

25  United States of America and all its agencies, including but

 1   not limited to MMS and the Coast Guard, Your Honor, and the

 2   Department of Justice.

 3          THE COURT:  So, when you say the two do not

 4   conflict because one is clearly preeminent that is intended

00:21   5   to have the effect of a decision of the government?

 6          MR. UNDERHILL:  That's correct, Your Honor.  And I

 7   can assure you that my position and what we wrote in the

 8   papers were vetted to the highest authorities, were very

 9   close to the highest authorities in the Department of

00:21   10   Justice.

 11          MR. ELSLEY:  Your Honor, this is John Elsley.

 12          THE COURT:  Yeah.  Mr. Elsley, before we get back

 13   to you let me just ask if anybody else wants to be heard.

 14          MR. LANIER:  Your Honor, Mark Lanier.

00:21   15          I would just briefly point out to the Court

 16   that I believe Judge Hughes is one of the ones who had a

 17   preservation order, which obviously does put Transocean into

 18   a bind.  Our perspective -- And we had requested that

 19   preservation order.  Our perspective on this is that the key

00:21   20   is to make sure that there is no destructive testing.  Judge

 21   Barbier has insured that in his order.  Obviously, everybody

 22   has got the interests of making sure that something like

 23   this doesn't happen, but, obviously, everybody has got the

 24   interest or should have the interest of trying to determine

00:22   25   justice.

```
 1              I think you have got all the jurisdiction and
 2     you've got all the venue in the world that you want, but the
 3     key, obviously, is so does Judge Barbier and others; and,
 4     so, the question becomes how do we do this most efficiently.
 5     We don't have a position as long as it's ensured that
 6     there's no destructive testing.  Once destructive testing
 7     should be allowed, though, obviously we would want to weigh
 8     in at that point.
 9              THE COURT:  Yes, sir.  Thank you.
10              Anyone else before we go back to Mr. Elsley?
11              All right.  Mr. Elsley.
12          MR. ELSLEY:  Thank you, Your Honor.
13              Judge, I want to make it clear that Transocean
14     is not trying to impede an investigation.  We do have
15     conflicting orders from judges.  They are attached as
16     Exhibit 5 to our motion.  They require us not only to
17     preserve evidence but maintain the evidence -- that is, keep
18     it in our custody.  And, in fact, as I said earlier, with
19     Lieutenant Commander Jeff Bray, who forwarded the subpoena
20     to Transocean for the Marine Board of Investigation -- he
21     acknowledged in his correspondence to us and he said -- and
22     I quote -- "I know there are other preservation orders out
23     there against Transocean.  We can work with you and DOJ if
24     necessary to ensure you are not in violation of these
25     orders," unquote.
```

1          Now, that is the problem Transocean finds

2     itself in.  It's not that we intend to do anything with the

3     riser other than preserve it and maintain it in our custody,

4     the same thing with the debris, which is the way we worked

00:23  5     with the Marine Board of Investigation in the past.  It's

6     just now we have a subpoena.  And it may be true that a

7     subpoena may trump a hold order, but it's not necessarily

8     true that a subpoena trumps a court order.  We do have

9     conflicting instructions here.  We have got a red light and

00:24  10    a green light.

11         THE COURT:  Yeah, I understand that point, but you

12    don't have a conflicting order from me, which is why I don't

13    know that I can do anything for you.

14         MR. ELSLEY:  Well, I think you can, Judge, because,

00:24  15    again, this is a limitation of liability case and these are

16    parts of the vessel, and that falls directly within your

17    jurisdiction.

18         THE COURT:  Well, Mr. Elsley, it may be entirely my

19    fault, but I thought we were carving out this kind of

00:24  20    government action when we signed the second amended order.

21    I really thought we were carving those out from the stay.

22         MR. ELSLEY:  Well, Judge, I certainly will agree

23    that we carved out any actions brought by the United States

24    for fines or penalties and those are carved out.  But

00:24  25    whether or not a -- I still think that these are parts of

1    the vessel per se and that falls within this Court's

2    jurisdiction.  And you could give us and we believe we are

3    entitled to relief from this court at least to make it clear

4    that, if we are to follow the dictates of the subpoena and

00:25    5    turn the riser over to the Marine Board of Investigation and

6    then turn the debris over to the Marine Board of

7    Investigation, that we will not be in violation of the hold

8    orders or any other court orders.

9         THE COURT:  Well, now, I can't do that.  I can say

00:25    10   you're not in violation of my order, but I don't know how I

11   could possibly say whether you are or are not in violation

12   of Judge Barbier's order or an order from Judge Hughes.  You

13   may need to go to the Fifth Circuit for that, mightn't you?

14        MR. ELSLEY:  Well, respectfully, Judge, I think

00:25    15   that, again, this falls within your jurisdiction because it

16   is part of the vessel and this is a limitation of liability

17   action and you can certainly direct us, we believe, to turn

18   this over to the MBI.

19        THE COURT:  Well, I'm not interested in making your

00:26    20   job any harder at all, Mr. Elsley.

21        MR. ELSLEY:  I understand, Your Honor.

22        THE COURT:  I am really not, but I am just trying

23   to understand.  I would issue an order that says my order

24   transcends Judge Barbier's order or...?

00:26    25        MR. ELSLEY:  Well, I don't think it would transcend

1   Judge Barbier's order at all because, first of all, Judge,

2   we're not asking for the protocol to be changed at all.  I

3   mean, the parties have agreed to that.  The unified command

4   has agreed to that in terms of testing.  That's not really

00:26   5   the issue here.  And if you did issue an order directing us

6   to turn over the riser to the MBI that wouldn't be different

7   from Judge Barbier's order to the extent that he recites

8   that's what's going to happen when it comes to land.  And

9   Judge Barbier's order, of course, doesn't deal with the

00:26   10   debris at all.

11          MR. UNDERHILL:  May I make a suggestion, Your

12   Honor?

13          THE COURT:  Yes, sir.

14          MR. UNDERHILL:  This is Mr. Underhill on behalf of

00:27   15   the government.

16          Your Honor, we're happy to think about Judge

17   Barbier's order.  We have a confluence of statute that says

18   that his court clearly has jurisdiction to decide issues

19   concerning the subpoena.  Judge Barbier has already issued

00:27   20   an order saying that the riser and the [unintelligible rapid

21   speech] shall be turned over to the Board.

22          What I would respectfully suggest, Your Honor,

23   is deny the motion without prejudice to Transocean or, for

24   that matter, any other parties' rights, to go to Judge

00:27   25   Barbier's court or any other court in the Eastern District

1    of Louisiana and let them sort it out and without

2    prejudicing their rights to seek amendment of the order, to

3    seek further order, to seek further guidance, whatever.

4              We have, clearly, an order that says what

5    Transocean has been ordered to do -- i.e., turn over the

6    riser -- is a court order that does trump, certainly,

7    litigation hold letters.  And if there is a conflict between

8    Judge Barbier's order and any other judge's orders let

9    Judge Barbier figure out how to resolve that since Congress

10   gave him the authority to do so.

11         THE COURT:  Well, I am also concerned, though -- I

12   don't make this as a personal reference to Judge Barbier --

13   but I am also concerned that apparently Transocean was not

14   heard before the original order was entered.

15              Is that true, Mr. Underhill?  Do you know if

16   that's true, Mr. Underhill?

17         MR. UNDERHILL:  I don't know, Your Honor.  All I

18   know is what I read in the order, that there is a defense

19   liaison counsel, that they were heard, they signed whatever

20   they signed and made their arguments.  I'm not, obviously, a

21   member of that committee.  Transocean should be in a

22   position --

23              Mr. Elsley, do you know if Transocean is a

24   part of the defense liaison committee that was represented

25   before Judge Barbier?

1          MR. ELSLEY:  As far as I know, we were not

2    represented.

3               You know, I will say this, Judge.  That order

4    came -- Again, our motion was filed in your court on Friday.

00:29    5    That order -- the first I heard about it was Monday when I

6    spoke to Mr. Underhill and we were -- we, Transocean,

7    forgetting about this defendants liaison counsel -- we did

8    not enter an appearance in that and we were not notified of

9    the hearing and were not given an opportunity to present our

00:29   10    arguments.

11               But, again, with respect to Mr. Underhill's

12    suggestion, I have got my own suggestion.  I could -- I

13    offer to submit -- What Transocean is concerned about here

14    is not really who retains custody of the riser or who

00:29   15    retains custody of the debris.  We are just concerned with

16    what we perceive to be conflicting orders.

17          THE COURT:   Well, but let's walk through that,

18    though.  In terms of whether the order conflicts with my

19    order, it does not.  I mean for you to be able to rely on

00:30   20    this.  In terms of whether it conflicts with a different

21    government order, we have Mr. Underhill's representation

22    that he can rank-order those and he has cleared that with

23    the highest levels of the government.

24          MR. ELSLEY:  Right.

00:30   25          THE COURT:  In terms of whether it conflicts with

1    Judge Barbier's order I don't know quite what to say.  I am

2    assuming without deciding that you were not given process in

3    that hearing.  Don't you have to go to Judge Barbier to fix

4    that, too?

00:30    5            MR. ELSLEY:  Well, if the result in this hearing is

6    you are persuaded that the riser should go with the Marine

7    Board of Investigation, we're not trying to change that.

8    We're just trying to make sure that, by compliance with that

9    order and with respect to not only the riser as well as the

00:31    10   debris -- which is not dealt with by Judge Barbier's

11   order -- that we are not violating any previous hold orders

12   or any other order of the court.

13           THE COURT:  Well, from my court you will not be.

14   The government has spoken as to what its understanding of

00:31    15   the priority order is.

16                Well, anyway, Mr. Lanier, do you want to say

17   something else?

18           MR. LANIER:  Your Honor, I would just bring to your

19   attention and to the attention of the esteemed counsel on

00:31    20   the phone -- I mean, I read Judge Barbier's order.  Judge

21   Barbier doesn't say the riser shall be removed, it shall be

22   produced and given to the Coast Guard.  That's kind of

23   assumed that it's going to happen, but the order

24   specifically issued by Judge Barbier has six points and none

00:31    25   of those say that it must be tendered to the government and

1    that it must be tendered to the Coast Guard or anyone else.

2    It's been stated the order says that, especially by

3    Mr. Underhill, but that's not what the order actually says.

4              THE COURT:  Well, what's your specific

00:32    5    recommendation that I do?

6              MR. LANIER:  Your Honor, I would recommend that

7    you're the tie breaker maybe between the -- You know,

8    Judge Hughes goes one way and Judge Barbier goes another.

9    Judge Hughes went first.  Judge Barbier went second.  You do

00:32   10    have the vessel.  I mean, the vessel actually belongs in

11    your court and it's your call on what happens with that

12    vessel.

13             THE COURT:  You know, one thing that always

14    surprises me about issues like this is how seldom judges

00:32   15    pick up the phone and talk to each other.

16             MR. LANIER:  And that would probably resolve it all

17    if you did that, Your Honor.

18             THE COURT:  Would anybody object if I did that?

19             MR. LANIER:  We would not on behalf of any of the

00:32   20    claimants we represent in your court or in either of the

21    other courts.

22             MR. PICCOLO:  Your Honor, this is Frank Piccolo.

23                  Judge, just to give you some background, BP's

24    attorney is the one who went in front of Judge Barbier on

00:32   25    Sunday afternoon for this hearing and it was BP's attorney

00:33

1  that is, quote, unquote, liaison counsel.  BP was well aware

2  of our motion for protective order and they did not bring it

3  to Judge Barbier's attention.  So, when he executed his

4  order he was not aware of our motion for protective order

5  when he made his decision.  So, I think talking to

6  Judge Barbier would probably be a breath of fresh air.

7          THE COURT:  Mr. Underhill.

8          MR. UNDERHILL:  Certainly, Your Honor.

9              Your Honor, I have no problem, nor should I,

00:33

10  with you picking up the phone and calling Judge Barbier.

11  All I would say on that is that we still come back to the

12  fundamental issue of the Court's jurisdiction, which is

13  whether the limitation court has the jurisdiction to decide

14  these issues despite other statutes, despite the clear

00:33

15  language of OPA and, I must state, in view even of the

16  Court's second amended order.  So, it goes to jurisdiction.

17          THE COURT:  No.  I think jurisdiction was the point

18  I began with and it's clearly the most important issue, but

19  I might have a prospective to offer Judge Barbier as to what

00:34

20  he ought to do on a going-forward basis which he might

21  welcome.  I don't know.

22              I am going to take a short break and talk to

23  my colleagues.

24              Again, no one need to rise.

00:38

25              (Brief recess)

1        THE COURT:  The one concern I really haven't spoken

2   to or invited discussion of is Mr. Lanier's point about

3   destructive testing.

4            Mr. Underhill, what reassurances can you give

00:38   5   on that topic?

6        MR. UNDERHILL:  Your Honor, I lost you.  Was the

7   question what reassurances can I give on the fact that it

8   will only be nondestructive testing?

9        THE COURT: Yes.

00:39   10        MR. UNDERHILL:  I will give that assurance.  First

11  of all, it is my understanding that that is what Judge

12  Barbier's order in fact orders and that's what the parties'

13  conflict -- the Coast Guard and Minerals Management conflict

14  is.  I concede assurances, and I will certainly tell you

00:39   15  that if they have a different understanding I will tell them

16  that that's the understanding they need to get.  But I think

17  that is their understanding because that's what

18  Judge Barbier has ordered and they agreed with that

19  position.

00:39   20        THE COURT:  Mr. Lanier.

21        MR. LANIER:  With due respect, that's not exactly

22  what Judge Barbier's order says.  His order says no

23  metallurgical analysis or other potentially destructive

24  testing will be conducted without first providing Plaintiffs

00:39   25  or other interested parties access to inspect the riser and

1   without an agreed or court-approved protocol.

2                   Now, the problem we have got in

3   Judge Barbier's court is he has designated interim lead

4   counsel for the Plaintiffs and interim lead counsel for the

00:40   5   Defendants.  For this defendant it's BP's counsel and

6   they're the ones who gave no notice whatsoever to Transocean

7   or to Cameron before Sunday's hearing.  They just went in as

8   their own counsel.  Similarly, the Plaintiffs' interim

9   liaison counsel gave no notice to those of us out here in

00:40   10   Houston and other places so that we might weigh in.

11                   So, you have got a small, little -- I won't

12   say "club" -- but a small, little group of people making the

13   determinations and having hearings on Sunday that we have no

14   knowledge about whatsoever.  The destructive testing can be

00:40   15   done under Judge Barbier's order if that small group gets

16   together and decides it's an okay thing to do.  That's my

17   concern.

18                   MR. UNDERHILL:  May I speak to that, Your Honor?

19                   THE COURT:  Well, one issue just that I have.  Is

00:41   20   Transocean even now currently subject to Judge Barbier's

21   jurisdiction?  They didn't have any notice?  They didn't

22   appear?  What made them subject to his aegis?

23                   MR. ELSLEY:  Well -- this is John Elsley -- we have

24   not made an appearance in that action and, you know, again,

00:41   25   we weren't present at the hearing on Sunday, and this order

1    was issued, you know, again, I will point out, after we

2    filed our motion in your court on Friday.

3             MR. UNDERHILL:  Your Honor, this is Mr. Underhill.

4             I didn't make the representation about

00:41    5    Transocean' counsel being in that action without first

6    checking the docket sheet of Judge Barbier's court.  In

7    fact, there are a slew of attorneys that are listed on the

8    docket sheet as representing Transocean.  I don't think

9    Mr. Elsley's firm is one of them.  Mr. Kohnke, senior

00:42    10   attorney in the Preis Roy firm in New Orleans, Mr. Hebert,

11   Carl Hebert, who is in fact the gentleman from the Preis Roy

12   firm that was dealing with the Coast Guard -- they're both

13   listed as counsel, and there is a slew of others that I

14   didn't even bother to write down.  So, they have appeared in

00:42    15   that case and they're listed on the court's docket sheet.

16            MR. ELSLEY:  Actually, I think we have not

17   appeared -- this is John Elsley again -- but I can assure

18   the Court that we did not receive notice of this hearing on

19   Sunday.

00:42    20            THE COURT:  "We" -- and I understand your firm

21   didn't, but "we" -- you mean Transocean didn't?

22            MR. ELSLEY:  It's my understanding that those firms

23   listed on the Court's docket sheet did not receive notice of

24   the hearing on Sunday, and I will ask for Mr. Piccolo to

00:42    25   chime in since I think he's maybe one of those involved.

1    MR. PICCOLO:  And if I can correct something.  We

2  have not formally made an appearance in any litigation that

3  is pending before Judge Barbier.

4    THE COURT:  This is Mr. Piccolo speaking?

00:42  5    MR. PICCOLO:  Yes.  I'm sorry, Your Honor.

6    And that is correct.  We did not receive any

7  notice whatsoever of the hearing that was held, I believe,

8  by conference with Judge Barbier at 7:00 o'clock on Sunday

9  afternoon.

00:43  10    THE COURT: "We" meaning Transocean, not just your

11  firm.  Right?

12    MR. PICCOLO:  "We" meaning Transocean and our firm.

13    THE COURT:  Yes, sir.  Your name, please.

14    MR. REDDEN:  Your Honor, Joe Redden.  We represent

00:43  15  Cameron in a number of cases.  We have not officially

16  appeared in this proceeding, but if I could give the Court

17  some information.

18    THE COURT:  Yes, sir.

19    MR. REDDEN:  Cameron received no notice of this

00:43  20  proceeding that occurred on Sunday, found out about the

21  order only after the fact and, in looking into it,

22  determined that apparently that the court has appointed, as

23  Mr. Lanier indicated, BP's attorney as what he calls

24  "liaison counsel" for the defendants and some plaintiffs'

00:43  25  lawyers as liaison counsel for the plaintiffs.  That was

1   over Cameron's objection.  We asked to be part of that

2   liaison counsel and were told that that wasn't necessary

3   because there would not be anything substantive that would

4   be resolved by that.  Then we find out that this order was

00:44   5   entered and we were told that BP was supposed to notify us

6   and they forgot.

7              I don't know, but I can assure -- So, I can't

8   speak for Transocean, but I have seen e-mails from

9   Transocean's counsel which leads me to believe that they did

00:44  10   not have notice of the proceeding either.

11        THE COURT:  All right.  I'm not going to issue a

12   ruling from the bench.  I would like to have this under

13   advisement.

14              Does anybody else wish to say anything at all?

00:44  15        MR. ELSLEY:  Judge, this is John

16   Elsley.  And I'm sorry to speak so much, but I had one other

17   point about jurisdiction I think I will make and that will

18   be it.

19              Again, as the limitation court, under

00:44  20   Rule (f), these are parts of the vessel and it falls within

21   this Court's power and obligations to marshal the assets,

22   which includes the vessel, at the conclusion --

23        THE COURT:  Mr. Elsley, I do think I understand you

24   and that's the part that troubles me.  What I think we have

00:45  25   done in this proceeding is carve out various government

1  actions, but we never carved out the physicality of the rig.

2  We never carved that out, and that's the kind of hybrid

3  jurisdiction I am trying to think through.

4        MR. ELSLEY:  Exactly.  And that is something that

00:45  5  remains with this court to marshal as an asset for the

6  benefit of the plaintiffs in this case.

7        THE COURT:  Yeah, I do take your point, Mr. Elsley.

8  I do take that point.

9        MR. UNDERHILL:  May I respond briefly, Your Honor?

00:45  10        THE COURT:  Yes, sir.  A little bit louder.  I'm

11  sorry.

12        MR. UNDERHILL:  I'm sorry.  May I respond, Your

13  Honor?

14        THE COURT:  Yeah, I heard that.  Go ahead.

00:45  15        MR. UNDERHILL:  This is Mr. Underhill.

16         Your Honor, first of all, the res itself,

17  which is a fundamental concept of maritime law -- the res is

18  not going to be in the Southern District of Texas.  The res

19  is going to be in the Eastern District of Louisiana.  That's

00:46  20  the first problem with respect to in rem jurisdiction.

21        THE COURT:  How are you defining the res?

22        MR. UNDERHILL:  Well, in this case we're just

23  talking about the riser or the pieces of the riser.  It is

24  physically going to be delivered to some port certainly,

00:46  25  though, in the Eastern District --

1          THE COURT:  Then, what does this limitation action

2    mean if we don't even have jurisdiction over that?

3          MR. UNDERHILL:  Well, Your Honor, the problem is

4    where does it go once it hits the Eastern District of

00:46   5    Louisiana.  It has to be in somebody's care and custody.

6    What we're really talking about is what happens once it gets

7    into somebody's care and custody.

8          THE COURT:  Isn't this more closely analogized to a

9    bankruptcy proceeding whereas the debtor may have property

00:46   10   holdings in all 50 states, but it's the bankruptcy court in

11   which he filed that has jurisdiction over all the assets?

12         MR. UNDERHILL:  The bankruptcy court has

13   jurisdiction of, actually, the parties and the parties'

14   assets.  The problem there is we come back to the

00:47   15   fundamental issue of jurisdiction.  By the time that the

16   Court entered its second amended order, its monition -- I

17   can't put a percentage on it, but I guesstimate that 95 to

18   98 percent of the cases are not going to be in Your Honor's

19   court.  That is because almost -- with the exception of

00:47   20   personal injury cases and death cases, which I think would

21   properly have been in your court.  The other cases for

22   economic damages --

23         THE COURT:  No.  I do understand that, but I'm not

24   sure it matters.  I understand that a lot of people would

00:47   25   rather be somewhere else, but I'm not sure in a limitation

```
 1    action that matters.

 2              MR. UNDERHILL:  Can I proceed, Your Honor?

 3              THE COURT:  Yes, sir.

 4              MR. UNDERHILL:  We come to the next step of the

 5    problem with respect to the res.  Insofar as the tests of

 6    the safety investigation to determine the factual causes for

 7    the accident the marine riser by itself isn't sufficient.

 8    It's assembling the entire airplane.  The BOP, any other

 9    pieces that are raised, those all have to be of a unit and

10    put together, and the testing and whatever they intend to do

11    has to be done as a whole body; and the Court does not have

12    jurisdiction, even under my colleague's argument, over the

13    whole body of the rig.

14              And that's why I come back to what my

15    suggestion was, is that -- or the order I would love would

16    be for Your Honor to deny the motion.  If Your Honor was to

17    try to cut it a little bit more down the middle, then my

18    second preference -- I'm making a suggestion here -- would

19    be that Your Honor say that you have denied the motion of

20    Transocean, it is without prejudice to their right or any

21    other party that is properly before Your Honor to go to

22    Judge Barbier and seek clarification or whatever other

23    relief they have.  He's got venue.  He's got jurisdiction.

24    He's got the res within his district and he's got an order.

25    That's the logical piece.
```

00:47 (line 5)
00:48 (line 10)
00:48 (line 15)
00:48 (line 20)
00:49 (line 25)

1          Somebody mentioned there being a tie

2    breaker.  I think it was Mr. Elsley.  What we actually have

3    is we have possibly -- you know, insofar as however many

4    orders are out there --

00:49    5          THE COURT:  No.  I understand that.

6          MR. UNDERHILL:  -- that's another order that

7    somebody is going to scratch his or her head and say, 'You

8    know, if I thought it was complicated before, it's really

9    complicated' --

00:49   10          THE COURT:  No.  I understand that.  I understand

11    that.

12          MR. ELSLEY:  But, Judge -- this is John Elsley

13    again -- we go back to our original point again.  As the

14    limitation court you have jurisdiction over the res.

00:49   15          THE COURT:  Yeah.  I do think I understand that.  I

16    understand that.

17              Mr. Lanier.

18          MR. LANIER:  And its appurtenances, which would

19    include the blowout preventer.

00:49   20          THE COURT:  All right.  Once again, let me say how

21    much I appreciate having so many able and experienced

22    lawyers in front of me.  I will take it under advisement and

23    have a decision forthwith.

24              Thank you very much.

25

1                          COURT REPORTER'S CERTIFICATE

2              I, BRUCE SLAVIN, certify that the foregoing is a

3    correct transcript from the record of proceedings in the

4    above-entitled matter, to the best of my ability.

5

6                                   *s/Bruce Slavin*
                                    BRUCE SLAVIN, RPR, CM
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25