IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND PETITION | § | |
| OF TRITON ASSET LEASING GmbH, | § | CIV.A. NO. 4:10-CV-1721 |
| TRANSOCEAN HOLDINGS LLC, | § | |
| TRANSOCEAN OFFSHORE DEEPWATER | § | |
| DRILLING, INC., AND TRANSOCEAN | § | |
| DEEPWATER, INC., AS OWNER, | § | |
| MANAGING OWNER, OWNERS PRO-HAC | § | |
| VICE, AND/OR OPERATORS OF THE | § | |
| MODU DEEPWATER HORIZON, IN A | § | |
| CAUSE FOR EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | ADMIRALTY 9(h) |

## Claimants' Supplemental Brief Regarding Claimants' Motion for Discovery Schedule

The Court should allow discovery to begin in this case because:

1. Transocean has already produced reams of documents dealing with the explosion to other interested parties and has not opposed Claimants' request to begin written discovery;

2. Claimants only seek to depose a few witnesses – many of whom have already given testimony under oath about the causes of the explosion;

3. delaying discovery will simply leave the claimants – who are wards of this Court – in limbo, wondering whether they will be able to continue paying basic living expenses;

4. the Court has the inherent authority to set its own discovery schedule;

5. the Limitation of Liability Act does not require (or even suggest) that the Court has to stay all discovery until the end of the monition period; and

6. Claimants interests are 100% aligned with the interests of putative claimants who have not yet appeared in this action.

# I.

## Facts

The Court is well aware that the April 20th explosion of the DEEPWATER HORIZON killed 11 men and injured dozens of others aboard the vessel. The explosion also caused an environmental disaster which has disrupted the lives of thousands of people and businesses that rely on the Gulf of Mexico to earn a living. Most of the oil spill related claims are not before this Court. Doc. #59. Instead, this action deals primarily with whether Transocean may limit is liability to: (1) the families of dead Transocean employees: (2) Transocean employees who survived, but were seriously injured in the blast; and (3) contractors who were injured while working on the rig. These claimants have no idea whether their employer will continue paying wages or for how long.[1] The overwhelming majority of the claimants are seamen who are "wards of the Court." While Transocean has the right to attempt to limit its liability, the Limitation of Liability Act does not require the Court to delay discovery. Just like in an ordinary civil action, the Court has discretion to set its own discovery schedule. When one balances Claimants' need to push this case to a resolution as quickly as possible against Transocean's unjustifiable desire to delay, it becomes clear the Court should grant Claimants' motion and allow routine discovery to proceed.

---

[1] Just as importantly, the widows and children of the deceased need to know why their loved ones are dead and gain some measure of closure.

## II.

## The Court Should Allow Discovery to Commence

A.     **Written discovery should begin immediately**

Transocean has already turned over large amounts of documents to several government bodies that are relevant to this action. Transocean's Internal Investigation Report into the explosion relied on many of these documents. Surely, Transocean's lawyers have compiled many more documents, reviewed them, and produced them to their experts. There is no justifiable reason to delay producing these documents to Claimants as well. As such, written discovery should commence immediately.

B.     **Depositions should be taken once Transocean produces its documents**

Nearly two dozen Transocean employees have already testified under oath (or are scheduled to testify in August) about the causes of the incident and about why Transocean is at fault. Transocean, BP, Halliburton, Cameron, Weatherford, and other interested parties have been allowed to cross-examine these witnesses and obtain their sworn testimony. Claimants' interests are obviously not represented by these other parties. It makes little sense to prevent Claimants from taking oral discovery when adverse parties are already building their case through the same means.

The Transocean witnesses who have already testified (or are scheduled to testify in a few weeks) include:

- Douglas Brown (Transocean's chief mechanic aboard the DEEPWATER HORIZON);

- Adrian Rose (Transocean's Vice President in charge of safety);

- Jimmy Harrell (Transocean's OIM[2] aboard the DEEPWATER HORIZON);

- Curt Kuchta (Transocean's Captain aboard the DEEPWATER HORIZON);

- Steven Bertone (Transocean's Chief Engineer aboard the DEEPWATER HORIZON);

- David Young (Transocean's Chief Mate aboard the DEEPWATER HORIZON);

- Chad Murray (Transocean's chief electrician aboard the DEEPWATER HORIZON);

- Michael Williams (Transocean's chief engineer tech aboard the DEEPWATER HORIZON);

- Christopher Pleasant (Transocean's subsea supervisor aboard the DEEPWATER HORIZON);

- William Stoner (Transocean's motor operator aboard the DEEPWATER HORIZON);

- Micah Sandell (Transocean's crane operator aboard the DEEPWATER HORIZON);

- Micah Burgess (Transocean's driller aboard the DEEPWATER HORIZON);

- Allen Seraile (Transocean's assistant driller aboard the DEEPWATER HORIZON); and

- Heber Morales ((Transocean's roustabout aboard the DEEPWATER HORIZON)

- Billy Stringfellow (Transocean's subsea superintendent aboard the DEEPWATER HORIZON);

- Paul Johnson (Transocean's rig manager);

- Daun Winslow (Transocean's performance division manager);

---

[2] "OIM" stands for Offshore Installation Manager. The OIM, along with the Captain, is the highest level of authority on drilling rig.

4

- Andreas Fleytas (Transocean's dynamic positioning officer);

- Ray Odenwald (Transocean's subsea supervisor aboard the DEEPWATER HORIZON);

- Jim McWhorter (Transocean's subsea supervisor aboard the DEEPWATER HORIZON);

- Mark Hay (Transocean's subsea supervisor aboard the DEEPWATER HORIZON); and

- Wyman Wheeler (Transocean's toolpusher aboard the DEEPWATER HORIZON).

In addition to the 22 Transocean witnesses, witnesses who worked for several other interested parties have also given testimony about topics relevant to this case. Here, Claimants are not seeking two or three dozen depositions. They merely want to depose a few witnesses who can shed light on the "privity or knowledge" issue that is at the heart of this action. Claimants initially want to depose:

1. **Captain Curt Kuchta**: Captain Kuchta was the DEEPWATER HORIZON's Captain. He is a managing agent whose "privity or knowledge" regarding the cause of the explosion is imputed to Transocean.

2. **Jimmy Harrell**: Harrell was the DEEPWATER HORIZON's OIM. He is a managing agent whose "privity or knowledge" regarding the cause of the explosion is imputed to Transocean.

3. **Michael Williams**: Williams was the DEEPWATER HORIZON's chief electronics technician. He is expected to testify that, nearly one year before the explosion, he warned the OIM that several of the rig's key safety features were set to "inhibit" or "bypass" mode (i.e. they were essentially turned off). He is also expected to testify that the Captain knew about this problem.

4. **Christopher Young**: Young is a Transocean executive whose "privity or knowledge" regarding the cause of the explosion is imputed to Transocean. In October 2004, he signed off on modifications to the

5

    DEEPWATER HORIZON's BOP while, at the same time, acknowledging that the modifications would reduce built in safety redundancies, increase the risk of an incident, and possibly run afoul of MMS regulations. He did this despite the fact that Transocean commissioned a "Major Accident Hazard Risk Assessment" for the vessel just six weeks earlier which warned that redundant BOP safety features were needed to prevent a multiple fatality incident involving a blowout. He is expected to testify about these modifications and testify about who else knew about the problems the modifications created.

5. **Donald Vidrine**: Vidrine was BP's "company man" on the DEEPWATER HORIZON. He had regular discussions with Transoceans's managing agents about safety issues and is expected to offer testimony about warnings he issued to them. As such, his testimony is relevant to the "privity or knowledge" issue.

6. a **Transocean corporate representative** best able to testify about: (1) Transocean's knowledge of the faulty control pods on the BOP; (2) measures, if any, Transocean took to fix the faulty control pods; (3) Transocean's involvement in the design of the well; (4) Transocean's knowledge of changes to the well design plan; (5) Transocean's policies and procedures for vessel maintenance; (6) Transocean's knowledge of well control problems and steps taken, if any, to alleviate those problems; (7) Transocean's investigation into the incident; (8) the relationship and dealings between Transocean's shore-based management/employees and the vessel's crew; (9) safety and equipment inspections of the DEEPWATER HORIZON; and (10) Transocean's compliance with applicable government regulations.

These depositions are targeted at the "privity or knowledge" issues and will have to be undertaken at some point. It is not wide-ranging and will not be burdensome to Transocean. Consequently, the depositions should be allowed.

**C.     There is no reason to wait until November to begin discovery**

Nothing in the Limitation of Liability Act requires the Court to stay all discovery until the end of the monition period. The purpose of the Act is to bring all claims into one Court to protect a shipowner from having to prosecute limitation claims in multiple <u>venues</u>. It is a mechanism to consolidate limitation claims, not

abate them. *Maryland Cas. Co. v. Cushing*, 347 U.S. 409, 415 (1954) (noting that the purpose of the Act "was to draw into one court, in the case of a large accident, all of the claims, in order that they might be heard by one judge on one state of facts, in one trial, and intelligently disposed of.") (quoting testimony during hearings before the House Committee on Merchant Marine and Fisheries). Allowing discovery to proceed does not impede the Act's venue consolidation feature. As a result, the Court should address discovery in this case like it would in any other case.

In an ordinary civil action, new parties are often added after discovery has already begun. Despite this, courts typically do not abate discovery until after the joinder deadline set in the docket control order. Similarly, in MDL proceedings, the courts do not wait until after the statute of limitations has expired to begin discovery. This Court should follow a similar approach and allow discovery to proceed even though more people could potentially file claims at a later date. <u>This is particularly true since all future, potential claimants' interests are 100% aligned with the claimants who have already filed their claims</u>.[3]

**D.  Delaying discovery prejudices Claimants, other courts, and other interested parties**

Claimants are Jones Act seamen and the families of dead seamen. "Seamen, of course, are wards of admiralty whose rights federal courts are duty-bound to jealously protect." *Steverson v. GlobalSantaFe Corp.*, 508 F.3d 300, 303 (5th Cir. 2007). The injured seamen cannot work and the family members of the deceased

---

[3] Even if new parties file claims after depositions are taken, this will not result in repeat depositions. A witness may not be deposed twice in the same case unless the noticing party obtains leave of court. FED. R. CIV. P. 30(a)(2)(A)(ii). Presumably, leave would not be granted simply because a new claimant wants a "second bite of the apple."

have lost their household's breadwinner. Despite this, Transocean refuses to commit to paying wages or basic living expenses. Besides the financial uncertainty, Claimants deserve answers as to why the rig exploded and what could have been done to prevent this tragedy. Allowing discovery helps alleviate both these problems.

Aside from Claimants' interests, the filing of this action abated wrongful death and personal injury cases against Transocean in state and federal courts across the Gulf Coast. The Court should resolve this case as quickly as possible so the other courts can resume their work on these cases. In the unlikely event that Transocean is successful in this action, those courts can remove the Transocean cases from their docket. Either way, allowing discovery to proceed in this case advances the interests of several other courts.

Further, several other companies have been sued due their role in the blowout. They are exposed to joint and several liability. *Coats v. Penrod Drilling Corp.*, 61 F.3d 1113, 1116 (5th Cir. 1995) (en banc). As a result, these companies will be responsible for a disproportionate share of the damages if Transocean is allowed to limit their liability to a mere $27 million. Allowing discovery to proceed and bringing a quick resolution to this claim will allow them to assess their potential exposure to liability and plan accordingly.

In contrast, Transocean's interest in delaying discovery is delay itself. Amazingly, the only non-boilerplate reason Transocean gives for wanting to delay discovery is because there is currently no "evidentiary support" for Claimants to establish "causative fault." Doc. #172 at ¶ 6. Yet, Claimants want to begin discovery precisely so they can obtain the "evidentiary support" Transocean claims is lacking.

In fact, Transocean argues discovery should be delayed because Claimants will need "significantly more extensive discovery than just a few depositions." *Id*. This is not a reason to delay discovery. It is a reason to begin discovery immediately. Consequently, the Court should grant Claimants' motion.

### III.

### Conclusion

The Court should allow discovery to proceed immediately.

Respectfully submitted,

ARNOLD & ITKIN LLP

*/s/ Kurt B. Arnold*

_____
Kurt B. Arnold
State Bar No. 24036150
5 Houston Center
1401 McKinney Street, Suite 2550
Houston, Texas 77010
Telephone:  (713) 222-3800
Facsimile:  (713) 222-3850

**ATTORNEYS FOR CLAIMANTS, BRETT GUILLORY, CARL TAYLOR, CATHLEENA WILLIS, COBY RICHARD, DARREN COSTELLO, DENISE ARNOLD, DUSTIN JOHNSON, FRANK IRELAND, HEATH LAMBERT, JACQUELYN DUNCAN, JOSHUA KRITZER, NIKALUS WATSON, RHONDA BURKEEN, STENSON ROARKE, WILLIAM P. JOHNSON, BILLY COON AND ELTON JOHNSON**

OF COUNSEL:
Jason Itkin
State Bar No. 24032461
Cory Itkin
State Bar No. 24050808
Robert P. Wynne
State Bar No. 24060861
Paul Skrabanek
State Bar No. 24063005
5 Houston Center
1401 McKinney Street, Suite 2550
Houston, Texas 77010
Telephone:     (713) 222-3800
Facsimile:     (713) 222-3850

Jay M. Kilpatrick
YOUNG WILLIAMS P.A.
210 E. Capitol Street, Suite 2000
Jackson, Mississippi
Telephone:     (601) 948-6100
Telefax:         (601) 355-6136

**CO-COUNSEL FOR RHONDA BURKEEN, INDIVIDUALLY,
AND AS PERSONAL REPRESENTATIVE FOR THE ESTATE
OF AARON DALE BURKEEN AND ON BEHALF OF ALL HEIRS,
AND AS PERSONAL REPRESENTATIVE FOR HER MINOR SON,
TB**

Ryan Zehl
Texas Bar No. 24047166
Bryant Fitts
Texas Bar No. 24040904
FITTS ZEHL LLP
Galleria Tower 1
2700 Post Oak Blvd., Suite 1120
Houston, Texas 77056
Telephone:     (713) 491-6064
Telefax:         (713) 583-1492

**CO-COUNSEL FOR NICKALUS WATSON**

**Certificate of Service**

I hereby certify that a true and correct copy of the above and foregoing instrument has been forwarded to all known counsel of record by CM/ECF and/or another means in accordance with the Federal Rules of Procedure on this 29th day of July, 2010.

*/s/ Kurt B. Arnold*
_____
Kurt B. Arnold