# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND PETITION OF TRITON ASSET LEASING GmbH, TRANSOCEAN HOLDINGS LLC, TRANSOCEAN OFFSHORE DEEPWATER DRILLING INC., AND TRANSOCEAN DEEPWATER INC., AS OWNER, MANAGING OWNERS, OWNERS PRO-HAC VICE, AND/OR OPERATORS OF THE MODU DEEPWATER HORIZON, IN A CAUSE FOR EXONERATION FROM OR LIMITATION OF LIABILITY | § § § § § § § § § § § | C.A. NO. 4:10-cv-1721<br><br>Fed. R. Civ. P. 9(h)<br><br>IN ADMIRALTY |

## PETITIONERS' RESPONSE IN OPPOSITION TO CLAIMANT MONTAGNET'S MOTION TO DISMISS AND/OR TO MODIFY OR LIFT STAY

Frank A. Piccolo
Attorney-in-Charge
TBN: 24031227
SDBN: 30197
Fpiccolo@preisroy.com
PREIS & ROY, APLC
Wesleyan Tower
24 Greenway Plaza
Suite 2050
Houston, Texas 77046
Telephone: (713) 355-6062
Facsimile: (713) 572-9129

John M. Elsley
TBN: 06591950
SDTX: 2828
john.elsley@roystonlaw.com
ROYSTON, RAYZOR, VICKERY & WILLIAMS, LLP
Pennzoil Place
711 Louisiana Street, Suite 500
Houston, Texas 77002
Telephone: (713) 224-8380
Facsimile: (713) 225-9945

**ATTORNEYS FOR LIMITATION
PETITIONERS TRITON ASSET
LEASING GMBH, TRANSOCEAN
HOLDINGS LLC, TRANSOCEAN
OFFSHORE DEEPWATER
DRILLING INC. AND
TRANSOCEAN DEEPWATER INC.**

OF COUNSEL:

EDWARD F. KOHNKE, IV
Pro Hac Vice Admission Requested
LBN: 07824
nkohnke@preisroy.com
EDWIN G. PREIS, JR.
TBN: 24029069
SDBN: 16834
epreis@preisroy.com
RICHARD J. HYMEL
Pro-Hac Vice Admission Requested
TBN: 24038190
CARL J. HEBERT
LBN: 06724
SDBN: 15985
PREIS & ROY, APLC
102 Versailles Blvd., Suite 400
Lafayette, Louisiana 70509
(377) 237-6062 – Telephone
(377) 237-9129 – Facsimile

INNES MACKILLOP
TBN: 12761800
SDTX: 444
imackillop@wmglegal.com
WHITE MACKILLOP & GALLANT P.C.
2200 West Loop South, Suite 1000
Houston, Texas
(713) 599-0211 – Telephone
(713) 599-1355 – Facsimile

GEORGE M. GILLY
LBN: 6234
SDTX: 16885
gillyg@phelps.com
EVANS MARTIN MCLEOD
LBN: 24846
SDTX Pro Hac Vice Admission Requested
mcleodm@phelps.com

PHELPS DUNBAR, LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
(504) 566-1311 – Telephone
(504) 568-9130 – Facsimile

And

MARC G. MATTHEWS
TBN: 4055921
SDTX: 705809
Marc.matthews@phelps.com
700 Louisiana, Suite 2600
Houston, Texas 77002
(713) 626-1386
(713) 626-1388

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................................iv

TABLE OF AUTHORITIES ......................................................................................vi

I. INTRODUCTION ..................................................................................................1

    A.    Nature and stage of the proceedings..................................................1

    B.    Montagnet's claims ..............................................................................2

    C.    Montagnet's motion .............................................................................3

II. STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT ...............4

III. ARGUMENT AND AUTHORITIES ...................................................................5

    A.    Montagnet states no state common law tort causes of action because her claims are subject either to this Court's admiralty jurisdiction or exclusive jurisdiction under the Outer Continental Shelf Lands Act ("OCLSA"), 43 U.S.C. § 1331 et seq. and, so, are preempted by federal law. ........................5

        1.    This Court possesses admiralty jurisdiction over Montagnet's claims and the en banc Fifth Circuit previously held that federal maritime law preempts her state common-law claims......................................5

        2.    This Court has exclusive jurisdiction of Montagnet's claims under OCSLA, and federal maritime law preempts her state common-law claims. ....................................................................10

    B.    Even if not preempted, Montagnet's state common-law causes of action are subject to the Limitation of Liability Act.......................................15

        1.    Bouchard Transp. Co. Inc. v. Updegraff – Private claims under OPA-like statutes are not subject to the Limitation Act and Rule F, but Montagnet brings no such claims...................................16

        2.    Complaint of Metlife Corp. – Private claims under OPA are not subject to Rule F, but Montagnet brings no such claims. ...........17

        3.    Contrary to the holding in JAHRE SPRAY II, Montagnet's common-law causes of action are subject to the Limitation of Liability Act...............18

    C.    Even if not preempted by federal law, Montagnet's state common-law causes of action are subject to the concursus provided for by Rule F. ...................................22

IV. CONCLUSION....................................................................................................24

CERTIFICATE OF SERVICE............................................................................................26

# TABLE OF AUTHORITIES

**Cases**

*Amoco Prod. Co. v. Sea Robin Pipeline Co.,*
  844 F.2d 1202 (5th Cir. 1988) .................................................................. 13

*Barger v. Petroleum Helicopters, Inc.,*
  692 F.2d 337 (5th Cir. 1982) .................................................................. 14

*Bunker Group v. United States,*
  524 U.S. 952 (1998) .................................................................. 15

*Cameron Offshore Boats, Inc. v. Alpine Ocean Seismic Surveys,*
  862 F. Supp. 1578 (W.D.La. 1994) .................................................................. 10

*Chelentis v. Luckenbach S.S. Co.,*
  247 U.S. 372 (1918) .................................................................. 7

*Coastal Iron Works, Inc. v. Petty Ray Geophysical,*
  783 F.2d 577 (5th Cir.1986) .................................................................. 7

*Cooper Stevedoring Co. v. Fritz Kopke, Inc.,*
  417 U.S. 106 (1974) .................................................................. 9

*Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey,*
  183 F.3d 453 (5th Cir.1999) .................................................................. 5

*EP Operating Ltd. P'ship v. Placid Oil Co.,* 26 F.3d .................................................................. 12, 13, 14

*Executive Jet Aviation, Inc. v. City of Cleveland,*
  409 U.S. 249 (1972) .................................................................. 6

*Exxon Corp. v. CHICK KAM CHOO,*
  817 F.2d 307 (5th Cir. 1987) .................................................................. 9

*Fields v. Pool Offshore, Inc.,*
  No. Civ. A. 97-3170, 1997 WL 767634 (E.D. La. Dec. 8, 1997) .................................................................. 10

*Fontenot v. Mesa Petroleum Co.,*
  791 F.2d 1207 (5th Cir. 1986) .................................................................. 6

*Foremost Ins. Co. v. Richardson,*
  457 U.S. 668 (1982) .................................................................. 6, 22

*Grand Isle Shipyard, Inc. v. Seacor Marine, LLC,*
  589 F.3d 778 (5th Cir. 2009) .................................................................. 15

*Gulf Offshore Co. v. Mobil Oil Corp.*,
   453 U.S. 473, 480-481 (1981) ............................................................................12

*Hartford Accident & Indem. Co. of Hartford v. S. Pac. Co.*,
   273 U.S. 207 (1927)............................................................................................22

*In re Amoco Cadiz*,
   491 F. Supp. 161 (N.D. Ill. 1979)........................................................................23

*In re Complaint for Exoneration from or Limitation of Liability of Shell Oil Co.*,
   780 F. Supp. 1086 (E.D. La. 1991) ................................................................22, 23

*J. Ray McDermott & Co. v. Vessel MORNING STAR*,
   457 F.2d 815 (5th Cir. 1972) (citing *Fed. Trade Comm'n v. Sun Oil Co.*, 371 U.S. 505 (1963)...21

*Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*,
   513 U.S. 527 (1995)..........................................................................................5, 6

*Knickerbocker Ice Co. v. Stewart*,
   253 U.S. 149 (1920) .............................................................................................7

*Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers, Ltd.*,
   959 F.2d 49 (5th Cir. 1992) ..................................................................................8

*Maryland Cas. Co. v. Cushing*,
   347 U.S. 409 (1954).............................................................................................22

*Metro. Redwood Lumber Co. v. Doe*,
   223 U.S. 365 (1912).............................................................................................22

*Muse v. Freeport McMoran, Inc.*,
   1992 U.S. Dist LEXIS 13397, 1992 WL 233771 (E.D. La. 1992).................................20

*Norfolk & Portsmouth Belt Line R. Co.. v. M/V MARLIN*,
   2009 WL 1974298 (E.D. Va. 2009) .......................................................................10

*Norwich & N.Y. Trans. Co. v. Wright*,
   80 U.S. 104 (1871)........................................................................................23, 24

*Offshore Logistics, Inc. v. Tallentire*,
   477 U.S. 207 (1986)..............................................................................................7

*Recar v. CNG Producing Co.*,
   853 F.2d 367 (5th Cir. 1988) ...............................................................................14

*Robins Dry Dock & Repair Co. v. Flint et al.*,
   275 U.S. 303 (1927)...........................................................................................8, 9

*Romero v. Int'l Terminal Operating Co.*
   358 U.S. 354 (1959)..............................................................................................7

*Southern Pac. Co. v. Jensen,*
   244 U.S. 205 (1917)......................................................................................................7

*State of La. ex rel. Guste v M/V TESTBANK,*
   752 F.2d 1019 (5th Cir. 1985) (en banc) *cert. denied* 477 U.S. 903 (1986)....................7, 8, 9, 10

*State of Md. Dept. of Natural Resources v. Kellum,*
   51 F.3d 1220 (4th Cir. 1995) ........................................................................................9

*Strong v. B.P. Exploration & Prod., Inc.,*
   440 F.3d 665 (5th Cir. 2006) ........................................................................................6

*Tanguis v. M/V WESTCHESTER,*
   153 F.Supp. 2d 859 (E.D. La. 2001)..............................................................................19

*Tenn. Gas Pipeline v. Houston Cas. Ins. Co.,*
   87 F.3d 150 (5th Cir. 1996) .............................................................................11, 12, 13, 14

*Texaco Exploration & Prod. v. AmClyde Engineered Prods. Co.,*
   448 F.3d 760 (5th Cir. 2006) ....................................................................................6, 11

*The Quarrington Court,*
   102 F.2d 916 (2d Cir.), *cert denied*, 307 U.S. 645 (1939)...............................................22

*Union Texas Petroleum Corp. v. PLT Engr.,*
   895 F.2d 1043 (5th Cir. 1990) .....................................................................................12

*United States v. Locke,*
   529 U.S. 89 (2000)......................................................................................................19

*United States v. Reliable Transfer Co.,*
   421 U.S. 397 (1975)......................................................................................................9

*United States v. Wong Kim Bo,*
   472 F.2d 720 (5th Cir. 1972) .......................................................................................21

*Van Schaeffer v. Tsakos Shipping & Trading, S.A.,*
   2006 U.S. Dist. LEXIS 25304, 2006 WL 1192939 (E.D. Pa. 2006) ......................................18, 19

*White v. Chevron, USA, Inc.,*
   1990 WL 28167 (E.D. La. Mar. 14, 1990) ......................................................................10

*Woessner v. Johns-Mansville Sales Corp.,*
   757 F.2d 634 (5th Cir. 1985) .......................................................................................22

**Statutes**

28 U.S.C. § 1333(1) ......................................................................................................5

33 U.S.C. § 2713 ........................................................................................................17

33 U.S.C. § 2718 ...........................................................................2, 4, 15, 16, 19, 21

33 U.S.C. § 2718(a) ............................................................................2, 4, 15, 19, 21

33 U.S.C. § 2718(a)(2) ..............................................................................................21

43 U.S.C. § 1332(1) ...................................................................................................10

43 U.S.C. § 1333 ........................................................................................................12

43 U.S.C. § 1349(b)(1) ...................................................................................12, 13, 14

43 U.S.C. § 1802 ........................................................................................................12

46 U.S.C. § 30101 ........................................................................................................5

46 U.S.C. § 30501 ........................................................................................................1

Fla. Stat. ch. 376.011-.17, 376.19-.21 ......................................................................16

## Other Authorities

1 Schoenbaum, *Admiralty and Maritime Law* § 3-9 at 126-28 (4th Ed. 2004) ....................12

48 Case W. Res. L. Rev. at 23 § 2(b) .......................................................................21

Admiralty Extension Act .............................................................................................5

Grant Gilmore & Charles L. Black, Jr.,
  *The Law of Admiralty* § 1-17, at 48 (2d ed. 1975) ..............................................7

*In Search of Concursus or Procedural Alternatives to Concursus,*
  22 Tul. Mar. L. J. 331 (1998) .........................................................................23, 24

La. Civ. Code art. 2315 .............................................................................................20

La. Civ. Code art. 2317 .............................................................................................20

N.J.S.A. 58:10-23.11 .................................................................................................18

S. REP. NO. 101-94 (1989), *reprinted in* 1990 U.S.C.C.A.N. 722 .................................19

*The Oil Pollution Act's Delegation of Admiralty Power to the States,*
  48 Case W. Res. L. Rev. 1, 22 § 2(b) (1997) ......................................................20

## Constitutional Provisions

U.S. CONST. art. III, § 2 ...............................................................................................5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | |
| PETITION OF TRITON ASSET LEASING | § | |
| GmbH, TRANSOCEAN HOLDINGS LLC, | § | C.A. NO. 4:10-cv-1721 |
| TRANSOCEAN OFFSHORE DEEPWATER | § | |
| DRILLING INC., AND TRANSOCEAN | § | |
| DEEPWATER INC., AS OWNER, | § | |
| MANAGING OWNERS, OWNERS PRO- | § | Fed. R. Civ.P.9(h) |
| HAC VICE, AND/OR OPERATORS OF | § | |
| THE MODU DEEPWATER HORIZON, IN | § | |
| A CAUSE FOR EXONERATION FROM | § | |
| OR LIMITATION OF LIABILITY | § | IN ADMIRALTY |
| | § | |

**PETITIONERS' RESPONSE IN OPPOSITION TO CLAIMANT MONTAGNET'S
MOTION TO DISMISS AND/OR TO MODIFY OR LIFT STAY**

TO THE HONORABLE KEITH P. ELLISON, UNITED STATES DISTRICT JUDGE:

Petitioners file their Response in Opposition to Claimant Montagnet's Motion to Dismiss

and/or To Modify or Lift Stay **(Dkt. Nos. 178 and 179)**. Claimant Montagnet's Motion should be

denied for the following reasons:

1.   Montagnet states no Mississippi common law claims because her claims are
     subject to either this Court's admiralty jurisdiction or exclusive jurisdiction
     under the Outer Continental Shelf Lands Act ("OCLSA"), 43 U.S.C. § 1331
     *et seq.* and, so, are preempted by federal law; and

2.   If not preempted, Montagnet's state common-law causes of action for private
     and public nuisance, negligence, and trespass are subject to the substantive
     provisions of the Limitation of Liability Act or, alternatively, the procedural
     provisions of Rule F, specifically, the concursus.

**I.**

**INTRODUCTION**

*A.*   *Nature and stage of the proceedings*

This action was instituted by Petitioners when they filed their Complaint and Petition under

the Limitation of Liability Act, 46 U.S.C. §§ 30501 *et seq.*, on May 13, 2010.   **(Dkt. No. 1).**

Pursuant to an Original Order **(Dkt. No. 9)**, an Amended Order **(Dkt. No. 61),** and a Second Amended Order **(Dkt. No. 131)**, this Court enjoined the beginning or continued prosecution of any suits, actions, or legal proceedings excepting "any claims, including those of private parties, asserted against Petitioners within the scope of 33 U.S.C. § 2718(a) . . . ." **(Dkt. No. 131 at 4)**.

### B.    *Montagnet's claims*

On June 3, 2010, Montagnet filed her Notice of Claim and Objections and Original Answer of Montagnet and similarly situated claimants (the "Claim") **(Dkt. No. 108)**.   In her Claim, Montagnet incorporated her Class Action Complaint titled *Monica C. Montagnet vs. Transocean Ltd et al*, Civil Action No. 1:10-cv-201H50-JMR, pending in the United States District Court for the Southern District of Mississippi. **(Dkt. No. 108 at ¶ 1.7)**.   In her claim, Montagnet alleges that she "brings her claims exclusively under the laws of the State of Mississippi." **(Dkt. No. 108, ¶3.2 at 4)**.   In her Class Action Complaint, Montagnet stated as follows:

> Plaintiff, Monica C. Montagnet is an adult resident citizen of Harrison County, Mississippi.  The Plaintiff owns residential property in Pass Christian, MS, and her property rights extend south of Highway 90 and to the shore of the Gulf of Mexico.  As such, plaintiff enjoys littoral rights for the use and enjoyment of the beach property. . .

(Claim, at Class Action Complaint, ¶ 2).   Montagnet's Claim and incorporated Class Action Complaint aver causes of action for negligence, gross negligence, willful, wanton and careless disregard for the plaintiff (collectively, the "Negligence" claim), public and private nuisance "(collectively, the "Nuisance" claim),[1] and trespass (the "Trespass" claim).

---

[1]   Montagnet cites to several Mississippi statutes and regulations when articulating her nuisance claim.  Specifically, Montagnet references Miss. Code Ann. §§ 49-17-29(2)(a), 49-17-43, 49-27-55, 49-27-5 and Mississippi Department of Marine Resources Rules and Regulations Part 10, Chapter 04. **(Dkt. No. 108 ¶5.26)**.  In the interest of clarity, Montagnet's nuisance claims cannot be predicated on any of these statutes.  A private right of action under Chapter 17 of Title 49 has been rejected.  *In re Moore*, 310 B.R. 795, 800 (Bankr. N.D. Miss. 2004), *aff'd*, *Norman v. Prestage Farms, Inc.*, 2007 WL 1031371, at *2 (N.D. Miss. 2007); *see also id.* at 801 (finding "no hint of legislative intent to [create a private right of action] in the law").  Chapter 27 of Title 49 is similarly void of any legislative intent to create a private right of action. *See* MISS. CODE ANN. § 49-27-5, Historical and Statutory Notes (2009) (discussing legislative intent).

With respect to her Negligence claim, Montagnet alleges that Petitioners were negligent (1) "for its failure to adequately and thoroughly operate the offshore drilling rig Deepwater Horizon;" (2) "for its failure to comply with Federal and/or State Law;" (3) "for acting in contravention of established Federal or State Law;" (4) "for its failure to properly inspect the Deepwater Horizon to ensure that its equipment and personnel were equipped for their intended purpose;" (5) "for its failure to promulgate, implement, and enforce rules and regulations pertaining to the safe operations of the Deepwater Horizon;" (6) "for operating the Deepwater Horizon with untrained and unlicensed personnel;" (7) "for employing untrained or poorly trained employees and failing to properly train their employees;" (8) "for failing to ascertain that the Deepwater Horizon and its equipment were free from defects and/or in proper working order;" (9) and "for such other acts of negligence and omissions as will be shown at the trial of this matter, all of which are in violation of Federal law and/or State laws applicable on the outer Continental Shelf." **(Dkt. No. 108 at Class Action Complaint, ¶ 32(a)-(x); Claim, ¶ 6.2(a)-(i))**.  So, Montagnet alleges negligence against Petitioners arising out of Petitioners' operation of a semisubmersible drilling rig *Deepwater Horizon* on the Outer Continental Shelf, and a resultant explosion in the Gulf of Mexico.

## C.    *Montagnet's motion*

On July 9, 2010, Montagnet filed her Motion to Dismiss and/or To Modify or Lift Stay requesting that this Court dismiss "any and all state statutory and common law claims, asserted or prospective, seeking . . .oil pollution damages arising from the *Deepwater Horizon* oil spill because the Limitation Act does not apply to limit or enjoin such claims." **(Dkt. No. 178 at 3)**.  Montagnet further requests a modification or a lifting of the injunction in this Court's Second Amended Order to allow her to proceed with her claims for nuisance, negligence, and trespass under Mississippi land-based law.

The only claimant presently before this Court which seeks a substantive ruling on the scope of this Court's Second Amended Order, or otherwise seeks a modification to, or lifting of, this Court's injunction, is Claimant Monica C. Montagnet.  To the extent that Montagnet's motion seeks entry of an order dismissing "any and all state statutory and common-law claims, asserted **or prospective** . . .," it is overbroad and premature, and Montagnet lacks standing to seek such relief. **(Dkt. No. 178 at 3)**.  Whether this Court's Second Amended Order applies to a particular claim can only be considered in the context of an actual, asserted claim.  Montagnet lacks standing to request an advisory opinion from the Court as to whether yet-to-be-filed claims of prospective claimants fall within, or without, this Court's Second Amended Order.  (Court's Memorandum and Order dated June 16, 2010 **(Dkt. No. 134 at 7)**) (movant seeking to dismiss a state law claim contests Petitioners' right to exoneration/limitation, and must therefore file a proof of claim and an answer).

## II.

## STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT

The first issue to be decided by this Court is whether Montagnet has any state common-law claims.  She does not.  Montagnet's purported state common-law claims are preempted by federal law in the circumstances of this case.  As a result, the limitation injunction should not be lifted or modified to allow preempted claims to proceed in another forum.  If, however, Montagnet's claims are not preempted by federal law, the second issue to be decided by the Court is whether her common-law claims for public and private nuisance, negligence, and trespass are subject to the Limitation of Liability Act and/or Rule F of the Supplemental Admiralty Rules, or both.  If so, Montagnet's claims and remain subject to the injunctive provisions of this Court's Second Amended Order.

# III.

## ARGUMENT AND AUTHORITIES

A.    *Montagnet states no state common law tort causes of action because her claims are subject either to this Court's admiralty jurisdiction or exclusive jurisdiction under the Outer Continental Shelf Lands Act ("OCLSA"), 43 U.S.C. § 1331 et seq. and, so, are preempted by federal law.*

As set forth above, Montagnet's Claim arises out of the operations of the semisubmersible drilling rig *Deepwater Horizon* occurring at Mississippi Canyon Block 252, Outer Continental Shelf, in the Gulf of Mexico that allegedly caused damage to her and her property adjacent to the shore in Pass Christian, Mississippi.  For this reason, Montagnet's Claim is subject to this Court's admiralty jurisdiction and accompanying federal general maritime law.

### 1.    This Court possesses admiralty jurisdiction over Montagnet's claims and the *en banc* Fifth Circuit previously held that federal maritime law preempts her state common-law claims.

This Court has admiralty jurisdiction over Montagnet's Claim.  Admiralty jurisdiction flows from the admiralty clause in Article III of the Constitution.  *See* U.S. CONST. art. III, § 2. Acting under that clause, Congress vested federal courts with original and exclusive jurisdiction over "admiralty or maritime" matters.  *See* 28 U.S.C. § 1333(1).  In 1948, Congress extended admiralty jurisdiction to "cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land."  *See* Admiralty Extension Act ("AEA"), 46 U.S.C. § 30101.

For admiralty jurisdiction to exist, a location and connection-to-maritime-activity tests must be satisfied. *E.g., Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 534 (1995).  The *location test* requires the tort to have occurred on navigable waters or, for an injury suffered on land, to have been caused by a vessel on navigable waters.  *Id.* (citing AEA); *see also Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey,* 183 F.3d 453, 455-56 (5th Cir.1999).  The *connection-to-maritime-activity test* has two sub-parts:

> A court, first, must assess the general features of the type of incident involved to determine whether the incident has a *potentially disruptive impact on maritime commerce.*   Second, a court must determine whether *the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity.*

*Grubart* 513 U.S. at 534 (emphasis added; internal citations and quotation marks omitted); *see also, e.g., Texaco Exploration & Prod. v. AmClyde Engineered Prods. Co.,* 448 F.3d 760, 770-71 (5th Cir. 2006); *Strong v. B.P. Exploration & Prod., Inc.,* 440 F.3d 665, 669 (5th Cir. 2006). "The key inquiry is whether the allegedly tortious activity is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply in the suit at hand." *Strong,* 440 F.3d at 669 (citations and internal quotation marks omitted).

In this case, there can be no legitimate dispute that this Court has admiralty jurisdiction over Montagnet's Claim.  First, the *Deepwater Horizon* was a semisubmersible drilling rig.  This type of rig has been held to be a vessel for general maritime law purposes.[2]  The Gulf of Mexico is a navigable water.  So, the location test is met because Montagnet's Claim involves an alleged injury caused by a vessel (*Deepwater Horizon*) on a navigable water (Gulf of Mexico).

Second, according to *Grubart* 513 U.S. 527 (1995), the connection-to-maritime activity test is met in this case despite the fact that Montagnet's Claim involves injuries on land.  Specifically, the *Deepwater Horizon* incident had the potential and did in fact disrupt maritime commerce in the Gulf of Mexico, and the *Deepwater Horizon* incident unquestionably bears a substantial relationship to a traditional maritime activity -- a casualty involving an explosion, fire, and subsequent sinking of a vessel.  *Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 269-70 (1972); *Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 669, 674 (1982) (admiralty jurisdiction over "negligent operation of a vessel on navigable waters . . . ."); *Grubart,* 513 U.S. at 528, 539

---

[2]  *See Fontenot v. Mesa Petroleum Co.,* 791 F.2d 1207, 1214 n.5 (5th Cir. 1986) (a semisubmersible drilling unit is "indisputably a vessel").  {If this was true then, it is even more clearly true now, after *Stewart v. Dutra.*}

("damage by a vessel in navigable water to an underwater structure" had "a potentially disruptive impact on maritime commerce" because the incident "could lead to restrictions in the navigational use of the waterway" and to "disruption of the watercourse itself").

With admiralty jurisdiction comes "the application of federal admiralty law rather than state law" as the substantive law. *State of La. ex rel. Guste v M/V TESTBANK*, 752 F.2d 1019, 1031-32 (5th Cir. 1985) (en banc) *cert. denied* 477 U.S. 903 (1986)(citations omitted). Within its sphere of operation, the maritime law of the United States is supreme, and the states are without power to disrupt it:

> [T]he "saving to suitors" clause . . . allows state courts to entertain *in personam* maritime causes of action, but in such cases the extent to which state law may be used to remedy maritime injuries is constrained by a so-called "reverse-*Erie*" doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards.[3]

The Supreme Court laid the foundation of this doctrine in a series of cases more than 90 years ago.[4] Although the broad pronouncements of those early cases have been often hedged and qualified,[5] their core meaning remains: "If there is any sense at all in making maritime law a federal subject, then there must be some limit set to the power of the states to interfere in the field of its working."[6]

Generally stated, the Supremacy Clause analysis in the federal maritime law context is this: "Although state law may supplement maritime law where maritime law is silent, or where a local matter is at issue, state law may not be applied where it would conflict with maritime law."[7] Put another way, while state law occasionally may be used to fill the gaps in an incomplete and less than perfect maritime system, state law cannot be employed to contravene an act of Congress, to

---

[3]  *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 222-23 (1986).
[4]  *See Southern Pac. Co. v. Jensen*, 244 U.S. 205 (1917); *Chelentis v. Luckenbach S.S. Co.*, 247 U.S. 372 (1918); *Knickerbocker Ice Co. v. Stewart*, 253 U.S. 149 (1920).
[5]  *See, e.g., Romero v. Int'l Terminal Operating Co.*, 358 U.S. 354, 373-75 (1959).
[6]  Grant Gilmore & Charles L. Black, Jr., *The Law of Admiralty* § 1-17, at 48 (2d ed. 1975).
[7]  *Coastal Iron Works, Inc. v. Petty Ray Geophysical*, 783 F.2d 577, 582 (5th Cir.1986) (citations omitted).

prejudice the characteristic features of the maritime law, or to disrupt the harmony maritime law strives to bring to international and interstate relations.[8]

With these principles in mind, the *en banc* panel of the Fifth Circuit in *State of La. ex rel. Guste v M/V TESTBANK*, *supra*, previously addressed this issue and held that federal maritime law pre-empts state common law claims for negligence and public nuisance in maritime vessel pollution cases. 752 F.2d 1019.  In *TESTBANK*, containers aboard the vessel spilled more than 12 tons of pentachlorophenol in the Mississippi River Gulf Outlet, which is located entirely within the waters of Louisiana.  Certain claimants alleged, among other things, liability under Louisiana negligence and public nuisance law.  *Id.*  The *en banc* Fifth Circuit held that such claims are foreclosed under the rule of *Robins Dry Dock,* a decision that precludes damages for economic loss resulting from the defendant's negligence absent physical harm to person or to property in which the plaintiff has a proprietary interest.  *Id.* (discussing *Robins Dry Dock & Repair Co. v. Flint et al.*, 275 U.S. 303, 308-09 (1927)).  In so doing, the *en banc* Fifth Circuit reasoned:

> While our maritime decisions are informed by common law developments in the state courts, there is no requirement, as in diversity cases, that state law be adopted. Indeed the federal interest in protecting maritime commerce is often best served by the establishment of uniform rules of conduct.  We believe that such is the case here. The *Robins* rule has proved to be a workable and useful tool in our maritime jurisprudence. To permit recovery here on state law grounds would undermine the principles we seek to preserve today. ***Accordingly, we decline to adopt plaintiffs' state law claims as theories of recovery.***[9]

Similarly, in *Marastro Compania Naviera, S.A. v. Canadian Maritime Carriers, Ltd.*, 959 F.2d 49, 53 (5th Cir. 1992), the Fifth Circuit ruled that maritime trespass law applies to the exclusion of state common-law, in order to promote uniformity in general maritime law.

As set forth above, because the *en banc* Fifth Circuit decision in *TESTBANK* controls, the Court need not revisit preemption here.  Regardless, to determine when state law can supplement

---

[8]   *J. Ray McDermott* 457 F.2d 815, 818 (5th Cir.) (en banc) (Ship Mortgage Act need not be supplemented by state law), *cert. denied*, 409 U.S. 948 (1972).

[9]   *TESTBANK*, 752 F.2d at 1032 (emphasis added).

general maritime law, federal courts sitting in admiralty consider several factors.[10]  Applying the *CHICK KAM CHOO* factors to this case, Montagnet cannot use Mississippi common-law to displace substantive maritime law.  First, by reason of well-entrenched maritime comparative fault,[11] damage/economic loss,[12] and indemnity and contribution doctrines,[13] it cannot be suggested that Mississippi state common-law negligence, nuisance, and trespass principles provide detailed distinctions that are absent from or of little concern to federal maritime law.  Of course, the state of Mississippi has a legitimate interest in protecting its coastlines and its economies related to the fishing and similar industries.  But, as set forth above, the Fifth Circuit has recognized the general maritime law should be applied to these types of claims arising out of negligence or nuisance caused by vessels operating on navigable waterways. *TESTBANK*, 752 F.2d at 1032.

More significantly, given the *en banc* Fifth Circuit's decision in *TESTBANK*, Montagnet cannot genuinely contend that displacing federal general maritime law with the Mississippi land-based torts of negligence, public and private nuisance, and trespass claims would not conflict with the characteristic features of maritime law and defeat its desired uniformity.  If Montagnet were allowed to avoid clearly applicable substantive law -- the general maritime law -- with Mississippi land-based common-law claims, then Petitioners would be potentially subjected to similar claims in Alabama, Florida, Texas, and Louisiana that each apply their own set of laws.  Again, such would be counter to uniformity principles that the general maritime law seeks and would subject Petitioners to a variety of legal regimes that are wholly inconsistent with entrenched maritime legal doctrines, such as limitations on damages under *Robins Dry Dock*, and depending upon the Gulf state and its laws, maritime comparative fault and indemnity and contribution principles.[14]  In other

---

[10]  *See, e.g., Exxon Corp. v. CHICK KAM CHOO*, 817 F.2d 307, 316-318 (5th Cir. 1987).
[11]  *United States v. Reliable Transfer Co.*, 421 U.S. 397 (1975).
[12]  *Robins Dry Dock & Repair Co. v. Flint et al.*, 275 U.S. 303, 308-09 (1927).
[13]  *Cooper Stevedoring Co. v. Fritz Kopke, Inc.*, 417 U.S. 106 (1974).
[14]  *See e.g. State of Md. Dept. of Natural Resources v. Kellum, et al.*, 51 F.3d 1220 (4th Cir. 1995) (holding that Maryland statute imposing strict liability for damages to oyster bar was preempted by federal maritime law).

words, applying a variety of Gulf state laws to Petitioners' alleged liability arising out of the *Deepwater Horizon* incident would displace these important components of the maritime tort regime, thus destroying these essential features of maritime law and defeating uniformity.[15]

>   **2.     This Court has exclusive jurisdiction of Montagnet's claims under OCSLA, and federal maritime law preempts her state common-law claims.**

Should this Court find that Montagnet's claims are not subject to admiralty jurisdiction and preempted by federal general maritime law, then this Court possesses exclusive jurisdiction over Montagnet's Claim under OCLSA.  As set forth above, in her Claim, Montagnet alleged that Petitioners' acts were "in violation of Federal law and/or State laws applicable on the Outer Continental Shelf."[16]  Montagnet thus herself invoked this Court's exclusive jurisdiction under OCSLA.  Further, even though Montagnet attempted to disavow any federal cause of action as set forth at ¶ 3.2 of her Claim, her Claim is still subject to OCSLA.[17]  That is because OCSLA declares that "the subsoil and seabed of the outer Continental Shelf appertain to the United States and are subject to its jurisdiction, control, and power of disposition. . . ."  43 U.S.C. § 1332(1).

---

[15]  *TESTBANK*, 752 F.2d at 1032.  For example, in *Norfolk & Portsmouth Belt Line R. Co.. v. M/V MARLIN*, 2009 WL 1974298 (E.D. Va. 2009), a vessel went outside the navigation channel and allided with a railroad bridge.  The Eastern District of Virginia found that applying state law would "upset uniformity principles within maritime law because it would require a different calculation of damages depending upon the location of the allision or the property affected."  *Id.* at *4.  Similarly, allowing Montagnet to supplement her claims with state common-law as to the Deepwater Horizon incident would create an unharmonious situation where a different outcome could arise in each state where oil allegedly washed ashore.

[16]  Claim, at Class Action Complaint **(Dkt. No. 108 ¶ 32(x))**.

[17]  Courts have previously held that the failure to refer specifically to OCSLA does not transform a federal claim over which federal courts have jurisdiction into a state law claim.  *See, e.g., Fields v. Pool Offshore, Inc.*, No. Civ. A. 97-3170, 1997 WL 767634, at *3 (E.D. La. Dec. 8, 1997) ("The fact that plaintiff's state court petition did not invoke jurisdiction under OCSLA is not dispositive of [the removal] issue."); *White v. Chevron, USA, Inc.*, 1990 WL 28167, at *1 (E.D. La. Mar. 14, 1990) ("Although in this case, the plaintiffs did not plead OCSLA in their state court petition but only alleged state causes of action, the statute and the jurisprudence clearly demonstrate that because this action arose on the outer continental shelf, the plaintiffs' exclusive remedy is pursuant to OCSLA."); *see also Cameron Offshore Boats, Inc. v. Alpine Ocean Seismic Surveys*, 862 F. Supp. 1578, 1584 (W.D.La. 1994) (court had jurisdiction although "petition does not specifically refer to OCSLA").  It is therefore irrelevant that Montagnet now attempts to base her claims purportedly only on state common law.  Nor would it be relevant if Montagnet sought to circumvent OCSLA by asserting that she will never at any time in the future plead any claim or cause of action arising under any federal law.  The Fifth Circuit has found OCSLA jurisdiction even where the plaintiff "admits forthrightly that it attempted to craft its lawsuit to avoid federal removal jurisdiction." *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150, 152 (5th Cir. 1996). Plaintiff thus cannot avoid the force of OCSLA through clever pleading. *See White*, 1990 WL 28167, at *1 ("A plaintiff cannot defeat removal [under OCSLA] by 'artfully' omitting essential federal issues from a state court petition.").

OCSLA thus establishes "national authority over the OCS at the expense of both foreign governments and the governments of the individual states." *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.,* 87 F.3d 150, 153 (5th Cir. 1996). "OCSLA's jurisdictional grant is broad, and that the Act covers a wide range of activity occurring beyond the territorial waters of the states on the outer continental shelf of the United States." *Texaco Exploration & Prod, Inc. v. AmClyde Engineered Prods. Co.,* 448 F.3d 760, 768 (5th Cir. 2006) (citations and internal quotation marks omitted).

The purposes of OCSLA are many, and embrace not just the development and production of mineral resources on the Shelf, but also provide for (i) protection of the environment, including wildlife, (ii) consideration of the interests and input of affected States and local governments, and (iii) harmonization of OCSLA with the operations of the Oil Pollution Act of 1990, which establishes the Oil Spill Liability Trust Fund. Specifically, OCSLA's relevant purposes, among other things, are to:

> \* \* \*
>
> (2) preserve, protect, and develop oil and natural gas resources in the Outer Continental Shelf in a manner which is consistent with the need (A) to make such resources available to meet the Nation's energy needs as rapidly as possible, (B) to balance orderly energy resource development with protection of the human, marine, and coastal environments, (C) to insure the public a fair and equitable return on the resources of the Outer Continental Shelf, and (D) to preserve and maintain free enterprise competition;
>
> \* \* \*
>
> (4) provide States, and through States, local governments, which are impacted by Outer Continental Shelf oil and gas exploration, development, and production with comprehensive assistance in order to anticipate and plan for such impact, and thereby to assure adequate protection of the human environment;
>
> \* \* \*

(8) *establish an oilspill liability fund* to pay for the prompt removal of any oil spilled or discharged as a result of activities on the Outer Continental Shelf and for any damages to *public or private interests* caused by such spills or discharges;

\* \* \*

43 U.S.C. § 1802 (emphasis added).

National authority over the OCS is exercised in two interconnected ways. First, OCSLA "makes federal law exclusive in its regulation of the OCS . . . ," except where there are substantial gaps in the coverage of federal law. *Tenn. Gas Pipeline*, 87 F.3d at 153; *see also Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 480-481 (1981); 43 U.S.C. § 1333.[18] Based on this legal framework, Congress intended OCLSA "to govern the full range of potential legal problems that might arise in connection with operations on the Outer Continental Shelf." *EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d at 569 (citations omitted).

Second, OCSLA grants federal district courts broad jurisdiction to decide *any* dispute "arising out of, or in connection with" operations conducted on the OCS:

> [T]he district courts of the United States shall have jurisdiction of cases and controversies arising out of or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals. . . .

43 U.S.C. § 1349(b)(1) (emphasis added). *See also EP Operating Ltd. P'ship*, 26 F.3d at 569 ("[B]road reading of the jurisdictional grant of section 1349 is supported by the expansive substantive reach of the OCSLA.").

Significantly, according to the Fifth Circuit, the term "operation" is to be read expansively as "the doing of some physical act." *Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844

---

[18]  State law does not apply under OCSLA where there is admiralty jurisdiction, in which case federal maritime law applies of its own force, and state law is ousted. *Union Texas Petroleum Corp. v. PLT Engr.*, 895 F.2d 1043 (5th Cir. 1990). 1 Schoenbaum, *Admiralty and Maritime Law* § 3-9 at 126-28 (4th Ed. 2004).

F.2d 1202, 1207 (5th Cir. 1988). As a result, this jurisdictional grant "should be read co-extensively with the substantive reach" of OCSLA — that is, to "the entire range of legal disputes that [Congress] knew would arise relating to resource development on the Outer Continental Shelf." *EP Operating Ltd. P'ship,* 26 F.3d at 569. Federal jurisdiction thus depends on a factual connection between the suit and resource development on the Outer Continental Shelf, and not on any particular legal theory of recovery Montagnet might allege. So, 43 U.S.C. § 1349(b)(1)(A) creates a factual-nexus grant of independent federal jurisdiction tied to the existence of exclusive federal sovereignty over the OCS as mandated by Congress. OCSLA is a comprehensive scheme that declares absolute federal control over mineral exploration on and under the seabed on the Outer Continental Shelf. OCSLA also seeks to balance environmental protection against economic development.

The connection to Shelf operations required for purposes of establishing OCSLA jurisdiction is broadly construed. The Fifth Circuit applies an expansive "but for" test, under which the requisite factual nexus is established, and the district court has original subject matter jurisdiction, if the parties' dispute would not have arisen "but for" the exploration or development operations on the Outer Continental Shelf. *See, e.g., Tenn. Gas Pipeline,* 87 F.3d at 155. This but-for test reflects the "broad jurisdictional grant under § 1349," because "a broad, not a narrow, reading of this grant is supported by the clear exertion of federal sovereignty over the OCS." *Id.* (quotation marks omitted).

For example, in *Tennessee Gas Pipeline, supra,* the Fifth Circuit had "no difficulty in deciding that § 1349 grants original jurisdiction in federal court" over a claim involving an allision with a platform affixed to the OCS that was used to extract and transport minerals from the OCS. 87 F.3d at 154. "The undeniable fact is that there would not have been an accident had Tennessee Gas not built its platform to extract minerals from the OCS." *Id.* at 155. As the

Fifth Circuit reasoned, "This was clearly enough physical activity on the OCS to constitute an operation." *Id.* at 154. Similarly, in *Barger v. Petroleum Helicopters, Inc.,* 692 F.2d 337 (5th Cir. 1982), the court held that a case arising from the crash of a helicopter ferrying employees to production platforms was covered by the OCSLA because the pilot "would not have been killed in a helicopter crash in the Gulf of Mexico 'but for' the fact that he was employed to transport eleven workers to a fixed platform on the Shelf. His work furthered mineral exploration and development activities and was in the regular course of such activities." *Id.* at 340.

Applying these well-settled standards, to the extent the Court does not find that Montagnet's claims are subject to admiralty jurisdiction and preempted by federal general maritime law, this Court possesses exclusive jurisdiction over Montagnet's Claim under OCLSA. Montagnet's Claim itself states that her claim arises out of the Deepwater Horizon's operations when an explosion occurred "over a well at the Maconda prospect within Mississippi Canyon Block 252 of the Gulf of Mexico, forty-one miles southeast of Venice, Louisiana." **(Dkt. No. 108 at ¶1.1)**. Here, there would have been no claim by Montagnet "but for" the *Deepwater Horizon*'s operations on the Outer Continental Shelf. Such allegations clearly establish that Montagnet's Claim would not have arisen but for the drilling operations on the OCLSA, and, so, this Court has subject matter jurisdiction. *See Tenn. Gas Pipeline,* 87 F.3d at 155; *Barger,* 692 F.2d at 340.

Significantly, the nature of the claim and the substantive law that applies do not control; rather, the relevant question for purposes of jurisdiction under 43 U.S.C. § 1349(b)(1) is whether the dispute has the required connection to operations on the Outer Continental Shelf. *See, e.g., Recar v. CNG Producing Co.,* 853 F.2d 367, 369 (5th Cir. 1988). Jurisdiction depends on the factual and logical connection to operations on the OCS, not on the precise cause of action or substantive legal theory alleged. *Id.* at 370; *see EP Operating Ltd.*

*P'ship*, 26 F.3d at 566 (action to determine ownership rights was within OCSLA jurisdiction). It thus makes no difference that Montagnet seeks to characterize her claims as those exclusively under Mississippi common law where, as here, Montagnet's claim arose from Petitioners' operations on the Outer Continental Shelf.

In sum, OCSLA jurisdiction is meant to cover a vast array of cases, including tort cases, such as that brought by Montagnet for negligence/nuisance/trespass that arise out of the Deepwater Horizon incident. OCSLA states that as long as cases "arise out of" or "in connection with" operations on the Outer Continental Shelf, then jurisdiction under OCSLA exists over such cases, and OCSLA makes federal law the exclusive law in this case.[19]

## B.  *Even if not preempted, Montagnet's state common-law causes of action are subject to the Limitation of Liability Act.*

Montagnet's Memorandum relies upon three case authorities to support her contention that her claims are not subject to the Limitation of Liability Act and Rule F and therefore fall squarely within 33 U.S.C. § 2718(a).  These authorities are *In re JAHRE SPRAY II K/S*, 1997 AMC 845 (D.N.J. 1996), *Complaint of Metlife Capital Corp.*, 132 F.3d 818 (1st Cir. 1997), *cert denied sub nom.*, *Bunker Group v. United States*, 524 U.S. 952 (1998), and *Bouchard Transp. Co. Inc. v. Updegraff*, 147 F.3d 1344 (11th Cir. 1998), *cert. denied*, 525 U.S. 1171 (1999).  From these three opinions, Montagnet draws three conclusions: (1) the Limitation Act does not apply to state common-law claims seeking damages for oil pollution (*citing JAHRE SPRAY*); (2) the procedural rules incorporated into the Limitation Act do not apply to oil pollution claims (*citing Metlife*); and (3) 33 U.S.C. § 2718 precludes application of the Limitation Act to state law oil spill claims (*citing*

---

[19]   Of note, where the issue is simply whether OCLSA or the general maritime law applies to a particular personal injury or death claim, courts will look to where the situs of the tort occurs.  Cf. *Offshore Logistics, Inc.*, 477 U.S. at 217.  Such cases are distinguishable from the facts here, which involve an explosion and fire of the Deepwater Horizon while performing operations on the Outer Continental Shelf that is alleged to have caused damage throughout the Gulf of Mexico and accompanying Gulf states.  *See also Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009) (en banc) (applying a "focus of the contract" test to determine whether OCLSA or the general maritime law applied to a contractual indemnity dispute).

*Bouchard*).  Petitioners will address each of these contentions, and Montagnet's three supporting authorities, in inverse order.

1.  ***Bouchard Transp. Co. Inc. v. Updegraff*** **– Private claims under OPA-like statutes are not subject to the Limitation Act and Rule F, but Montagnet brings no such claims.**

Montagnet cites *Bouchard Transp. Co. Inc. v. Updegraff*, *supra*, 147 F.3d 1344, for the proposition that 33 U.S.C. § 2718 "Precludes Application of the Limitation Act to State Law Oil Spill Claims."  (Montagnet Memorandum at 5).   An accurate reading of *Bouchard* reflects, however, that the *Bouchard* Court's holding as to state claims was limited to, and concerned claims under, a state OPA-like statute, specifically, Florida's Pollution Discharge Prevention and Control Act, Fla. Stat. ch. 376.011-.17, 376.19-.21 (the "Florida Act").  *Id.* at 1352.  State common-law claims such as negligence, nuisance, and trespass were not in issue.

The actual holding in *Bouchard* pertinent to state law is that Rule F and the Limitation of Liability Act's substantive provisions are abrogated by OPA in those cases in which, following the enactment of OPA, a state has enacted an OPA-like statute imposing additional or unlimited liability upon responsible parties for pollution damage. *Id.* at 1552. The *Bouchard* court stated that "OPA 90 also explicitly permits states to adopt laws imposing additional liability for oil spills above the liability limits established by OPA 90 and the Limitation Act," and cited 33 U.S.C. § 2718 for its holding.  *Id.* at 1347.  As the Court observed, consistent with section 2718, "the Florida Act imposes additional liability for oil spills." *Id.*  Thus, as to state law, *Bouchard* holds only that the Limitation Act and Rule F do not apply to claims brought pursuant to the Florida Act because "OPA 90 authorizes states to adopt liability laws for oil spills and exempts those laws from the provisions of the Liability Act." *Id.* at 1352 (*citing* 33 U.S.C. § 2718).

*Bouchard's* holding is specific to OPA-like statutes which impose additional or unlimited liability for oil pollution damage.  Here, however, Montagnet claims for nuisance, negligence, and

trespass are not brought under any equivalent Mississippi OPA-like statute, and thus, *Bouchard* does not support her contention that her state common-law claims are exempt from this Court's injunction.

2. ***Complaint of Metlife Corp.* – Private claims under OPA are not subject to Rule F, but Montagnet brings no such claims.**

Montagnet cites *Complaint of Metlife Corp.*, *supra*, 132 F.3d 818, for the proposition that the procedural rules incorporated into the Limitation Act by Rule F do not apply to oil pollution claims. (Montagnet Memorandum at 3). However, an accurate reading of the *Metlife* decision reveals that the *Metlife* Court, in considering the application of Rule F, was addressing OPA claims, and not state common-law claims. *Id.* at 820, 823-24. This is apparent from the court's opinion where it considered whether the OPA claims procedure, 33 U.S.C. § 2713(a), (b) and (c), was inconsistent with the provisions of Supplemental Admiralty Rule F(4) *Id.*. The actual *Metlife* holding is: "In view of these inconsistencies, we conclude that Rule F concursus even if independent of the Limitation Act is ***inapplicable to OPA claims***." *Id.* at 824 (emphasis added).

The *Metlife* court's single citation to section 2718(a) does not address state common-law actions. In referencing section 2718(a), the *Metlife* court was addressing state and local ***statutory*** remedies, such as those exempted from the Limitation Act by the *Bouchard* court. *Id.* at 821 ("[A]t least four other provisions in the statute explicitly repeal the Limitation Act with respect to certain types of claims. *See*. . . .2718(a) (repealing the Limitation Act as to state and local ***statutory*** remedies)"). And finally, *Metlife* actually supports Petitioners' opposition, because *Metlife* explicitly holds that "[s]ome claims arising from an incident in which oil pollution occurs do not escape the Limitation Act." *Id.* at 822. As the *Metlife* Court observed as to these claims: "The appellants remain free to avail themselves of the Limitation Act and Rule F concursus for their non-OPA claims." *Id.* at 823. By her express disavowal of federal law, Montagnet makes it abundantly clear that she brings only non-OPA claims. For these claims, Montagnet is free to avail herself of

the Limitation Act and Rule F concursus for her non-OPA claims, as she has done so here by filing her claims in this action.

3.      **Contrary to the holding in *JAHRE SPRAY II*, Montagnet's common-law causes of action are subject to the Limitation of Liability Act.**

*JAHRE SPRAY II* addressed claims under OPA, the Clean Water Act ("CWA"), the Rivers and Harbors Act, and certain Pennsylvania and New Jersey OPA-like statutes, holding that these statutory claims were not subject to the Limitation of Liability Act and the Rule F concursus. *See generally id.* But in addition to those state statutory claims, certain *JAHRE SPRAY II* claimants also brought claims for negligence and unseaworthiness under general maritime law, claims for indemnity, negligence *per se*, unjust enrichment, breach of charter party, and public nuisance and private nuisance. *Id.* In the portion of its opinion under the heading "Additional State and Federal Laws," the *JAHRE SPRAY II* court held that it lacked authority to enjoin the federal, state, and common-law claims related to the oil spill. *Id.* at 853.

The *JAHRE SPRAY II* court therefore permitted state common-law actions to proceed outside of the limitation action. *Id.* However, a subsequent decision by the court in *Van Schaeffer v. Tsakos Shipping & Trading, S.A.,* 2006 U.S. Dist. LEXIS 25304, 2006 WL 1192939 (E.D. Pa. 2006) has held otherwise. *Schaffer* arose out of an oil spill that occurred on the Delaware River on November 26, 2004, involving the M/T ATHOS I oil tanker. *Id.* The vessel owner initiated proceedings under the Limitation of Liability Act and Rule F. The Plaintiffs Van and Mary Schaeffer filed claims on behalf of themselves and all other similarly situated seeking compensation for oil removal and damages based on New Jersey's Spill Compensation and Control Act, N.J.S.A. 58:10-23.11, *et seq.* ("N.J. Spill Act"). *Id.* Just as in this case, Van and Mary Schaeffer also asserted claims for negligence, trespass, and nuisance. For reasons not pertinent to Montagnet's Memorandum, the N.J. Spill Act claims were dismissed by the court, leaving the remaining state common-law claims. In considering these claims, as well as the relevant language of OPA, the *Van*

*Schaeffer* court acknowledged that claims under state OPA-like statutes fall outside of the Limitation Act (citing *Bouchard*). *Id.* at 1. The *Van Schaeffer* court also held that general maritime and admiralty claims remain subject to the Limitation Act (citing *Metlife*). *Id.* And finally, considering the *Van Schaeffer's* claims for negligence, trespass, and nuisance, the *Van Schaeffer* court reasoned "it would be a stretch" to characterize the claimants' common-law claims as arising under New Jersey's OPA-like statute – thus, they were not exempt from the Limitation of Liability Act and Rule F. *Id.* at 2. Accordingly, the court ruled: "[T]he remaining state common-law claims must be litigated as part of the Limitation Action." *Id.* at 1.

*Bouchard, Metlife,* and *Van Schaeffer* read section 2718(a) of OPA to explicitly provide that state statutory law in the area of oil spill liability and compensation is not preempted by OPA. Section 2718(a)(1) provides that states, or political subdivisions of states, may impose "additional liability or requirements" with respect to the discharge of oil or other pollution by oil within a State or any removal activities in connection with such a discharge. 33 U.S.C. § 2718(a)(1). As Judge Edith Brown Clement observed in *Tanguis v. M/V WESTCHESTER*, the "Senate Report regarding OPA expresses an intent to 'affirm[ ] the rights of States to protect their own air, water, and land resources by permitting them to establish State standards which are more restrictive than Federal standards,' S. REP. NO. 101-94 (1989), *reprinted in* 1990 U.S.C.C.A.N. 722, which was given life in Section 1018 [now 2718] of OPA." 153 F. Supp. 2d 859, 863-64 (E.D. La. 2001). But not all claims based on state law escape the Limitation of Liability Act under section 2718(a). In *United States v. Locke*, the Supreme Court ruled that, by placing OPA's savings clauses in Title I of OPA, "Congress intended to preserve state laws of a scope similar to the matters contained in Title I of OPA, ***not all state laws similar to the matters covered by the whole of OPA or to the whole subject of marine oil transport.***" 529 U.S. 89, 105 (2000) (emphasis added).

In *Muse v. Freeport McMoran, Inc.*, Judge Edith Brown Clement addressed state law tort claims and held that claims under La. Civ. Code arts. 2315 and 2317 "do not represent a detailed statutory scheme or an exercise of the state's police power. Instead, they embody Louisiana's fundamental tort law principles." 1992 U.S. Dist. LEXIS 13397, 1992 WL 233771 (E.D. La. 1992). In OPA, Congress intended to preserve the power of the states to enact statutes imposing additional liability or requirements for oil pollution, recognizing that this was an appropriate area reserved for the exercise of a state's police power. Mississippi's common law of negligence, nuisance, and trespass do not represent "a detailed statutory scheme or the exercise of the state's police power," specific to oil spills as Judge Clement observed in *Muse*. *Id.* Instead, they embody Mississippi's fundamental tort law principles. Accordingly, common-law claims of nuisance, negligence, and trespass remain subject to the Limitation Act:

> In drafting OPA, Congress was intent on preventing the Limitation of Liability Act from being used to limit recovery, at least where statutory claims are at issue. OPA thus repeals the Limitation of Liability Act with respect to "any additional liability or requirement" imposed by the states. Congress did not, however, undertake a repeal of the Limitation of Liability Act with respect to other claims. ***Thus, a vessel owner may assert a right to exoneration or limitation to the 1851 Act for claims not based on statute.***

Harrington, *Necessary and Proper, But Still Unconstitutional: The Oil Pollution Act's Delegation of Admiralty Power to the States*, 48 Case W. Res. L. Rev. 1, 22 § 2(b) (1997) (emphasis added).[20]

---

[20]   To the extent that Montagnet's complaint filed in the Southern District of Mississippi alleges any causes of action based upon maritime law, such claims are also subject to the Limitation of Liability Act and Rule F, as Prof. Harrington recognizes:

> It is true that OPA contains a number of prohibitions on the use of the Limitation of Liability Act. It prevents limitation as to claims by the United States, and it also prohibits a responsible party from relying on the Limitation of Liability Act as a defense to actions that are OPA itself, regardless of the person or entity bringing the claim. OPA also abrogates the Limitation of Liability Act's provisions in cases where states have imposed additional or unlimited liability. OPA's repeal of the Limitation of Liability Act is not complete, however. OPA does not affect the right of a responsible party to limit liability if the claim is brought under the general maritime law.

On pages 5-6 of her Memorandum, Montagnet argues that section 2718(a) prohibits Transocean's ability to "affect or modify" its "obligations" arising from Montagnet's "common-law" claims.  She incorrectly asserts that the statute makes no distinction between common-law and statutory claims.  Section 2718(a)(1) provides that nothing in the Act of March 3, 1851 (the Limitation Act) shall "affect, or be construed or interpreting as **_preempting_**" the authority of any State or political subdivision from imposing any additional liability or requirements with respect to the discharge of oil.  33 U.S.C. § 2718(a)(1) (emphasis added).  But in Subsection (2) of section 2718(a), which contains the language "State law, including common-law," the "preempting" language does not appear.  33 U.S.C. § 2718(a)(2).  Thus, while Congress did not intend the Limitation of Liability Act to preempt claims under state OPA-like statutes under section 2718(a)(1), the same conclusion does not apply to claims under "State law[s], including common-law" under section 2718(a)(2).  When "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." _United States v. Wong Kim Bo_, 472 F.2d 720, 722 (5th Cir. 1972).  And, "[w]here Congress has carefully employed a term in one place but excluded it in another, it should not be applied where excluded." _J. Ray McDermott & Co. v. Vessel MORNING STAR_, 457 F.2d 815, 818 (5th Cir. 1972) (citing _Fed. Trade Comm'n v. Sun Oil Co._, 371 U.S. 505, 514-15 (1963).  Therefore, the Limitation Act still applies to other state law claims, including common-law claims, which do not derive from OPA-like statutes preserved to the states under section 2718(a)(1).  These include Montagnet's claims for nuisance, trespass and negligence.

---

48 Case W. Res. L. Rev. at 23 § 2(b).

**C.      Even if not preempted by federal law, Montagnet's state common-law causes of action are subject to the concursus provided for by Rule F.**

A limitation proceeding provides a single forum in which all claimants may seek relief against the vessel owner, *in personam*, and against the vessel, *in rem*.  By means of this concursus of claims, all claimants are brought together in one proceeding in order to adjudicate whether or not there is liability, and if so, the amount of recoverable damages.  Therefore, "the purpose of a limitation proceeding is not merely to limit liability but to bring *all* claims into concourse and settle *every* dispute in *one* action."  *In re Complaint for Exoneration from or Limitation of Liability of Shell Oil Co.,* 780 F. Supp. 1086, 1091 (E.D. La. 1991) (quoting *The Quarrington Court*, 102 F.2d 916, 918 (2d Cir.), *cert denied*, 307 U.S. 645 (1939)).

A critical purpose underlying the limitation action, and the concourse of claims, is to achieve a "complete and just disposition of a many-cornered controversy."  *Maryland Cas. Co. v. Cushing*, 347 U.S. 409, 416-17 (1954) (quoting *Hartford Accident & Indem. Co. of Hartford v. S. Pac. Co.,* 273 U.S. 207, 216 (1927)).  The Supreme Court has stated that "[t]he very nature of the proceeding is such that it must be exclusive of any other separate suit against an owner on account of the ship."  *Metro. Redwood Lumber Co. v. Doe*, 223 U.S. 365, 371 (1912).  Without such a proceeding, a "ship's company would be subject to call as witnesses in more than one proceeding, perhaps in diverse forums" where "[c]onflicting judgments might result" and "recoveries might vary from the proportions contemplated by the statute."  *Maryland Cas. Co.*, 347 U.S. at 417.  Thus, the concursus helps further the uniform development of law governing maritime industries, a principle which has been historically revered as a guiding light in admiralty law.  *Woessner v. Johns-Mansville Sales Corp.*, 757 F.2d 634, 648 (5th Cir. 1985) (citing *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 677 (1982)).  Justice Frankfurter has emphasized the overarching importance of the concourse of claims in *Maryland Cas. Co. v. Cushing*, wherein he referred to the concursus as "the heart" of the limitation system.  347 U.S. at 415.  The present continuation of this

philosophy comports directly with the "congressional concern for judicial economy" which is "the bedrock of the Limitation Act and procedures." *In re Shell Oil Co.*, 780 F. Supp. at 1091. Moreover, this view carries forward the long established admiralty policy of litigating all claims in a single forum. *In re Amoco Cadiz*, 491 F. Supp. 161, 167 (N.D. Ill. 1979).

Section 2718(a)(2) provides that nothing in the act of March 3, 1851 (the Limitation Act) shall affect or modify the obligations or liabilities of any person under State law, including common law. But it is Rule F, not the Limitation Act, which establishes the concursus. [21] Thus, the preamble to Section 2718 does not prohibit the application of the Rule F concursus to other state law claims, including common-law claims. Even if section 2718(a)(2) were interpreted to undercut the applicability of the substantive provisions of the Limitation Act (i.e. the ability to limit the vessel owner's liability to the value of the vessel plus pending freight), the very language of section 2718(a) does not require that this approach be carried over to the procedural provisions of Rule F. Thus, limitation procedures, specifically the concursus set forth by Rule F, remain applicable to state common-law claims. Gutoff and Force, *Limitation of Liability In Oil Pollution Cases: In Search of Concursus or Procedural Alternatives to Concursus*, 22 Tul. Mar. L. J. 331 (1998).[22]

---

[21]  The Limitation Act was enacted in 1851. Later, in 1872, the Supreme Court recognized that the Limitation Act did not establish any judicial procedure by which a vessel owner could seek to enforce the Act's liability limits. *Norwich & N.Y. Trans. Co. v. Wright*, 80 U.S. 104, 123 (1871). To fill the void, the Supreme Court set forth a procedure by which vessel owners could initiate a limitation proceeding to establish a concursus of claims. *Id.* at 124-25. The Supreme Court later codified this procedure by adding the Rules of Practice for the Courts of the United States in Admiralty and Maritime Jurisdiction (Admiralty Rules). Over time, the Admiralty Rules were variously amended, renumbered, and relabeled. The present form, entitled the Supplemental Rules for Certain Admiralty and Maritime Claims (Rules A-F), was adopted in 1966.

[22]  Profs. Gutoff and Force state:

> There is nothing in OPA or its legislative history that makes any reference to the procedures established by the Supreme Court for limitation of liability and admiralty claims which are now contained in Rule F of the Supplemental Rules.
>
> . . .
>
> "Why doesn't the 'notwithstanding' language in OPA get rid of concursus altogether?" The answer is that the 'notwithstanding' language in OPA means only that OPA's provisions for liability and limitation are not affected by the provisions of the Limitation Act that limit a vessel owner's liability to the value of the vessel and its pending freight. As noted above, nothing in OPA or its legislative history suggests any intent to deny vessel owners the right to force a concursus, which is

## IV.

## CONCLUSION

Montagnet is trying to circumvent the remedies provided her by Congress and the general maritime law.  She can assert a claim under OPA against BP, the OPA responsible party, and to the extent her claim is legitimate, recover on a no-fault basis.  Alternatively, she can also seek recovery under either general maritime law or OCSLA, depending on which the Court rules is applicable.  She cannot, however, have a court displace federal law and apply state common law claims of nuisance, negligence and trespass.  And finally, even if her state common law claims are not preempted, they remain subject to the Limitation of Liability Act and/or the concursus.

Respectfully submitted,

By:/s/ Frank A. Piccolo
            FRANK A. PICCOLO
            TBN: 24031227
            SDBN: 30197
            fpiccolo@preisroy.com
            Preis & Roy, APLC
            Wesleyan Tower
            24 Greenway Plaza
            Suite 2050
            Houston, Texas 77046
            (713) 355-6062 – Telephone
            (713) 572-9129 – Facsimile

            John M. Elsley
            TBN: 06591950
            SDBN: 2828
            john.elsley@roystonlaw.com

---

necessary to effectuate any limitation regime.  District courts need some sort of concursus procedure in order to administer the OPA limitation provisions, because, as Justice Bradley stated in *Norwich*, "[u]nless. . .the District Courts themselves can administer the law, we are reduced to the dilemma of inferring that the legislature has passed a law which is incapable of execution.

22 Tul. Mar. L. J. at 365, 367-68.

Royston, Rayzor, Vickery & Williams, L.L.P.
Pennzoil Place
711 Louisiana Street, Suite 500
Houston, Texas 77002
(713) 224-8380 – Telephone
(713) 225-9945 - Facsimile

**ATTORNEYS FOR LIMITATION PETITIONERS
TRITON ASSET LEASING GMBH, TRANSOCEAN
HOLDINGS LLC, TRANSOCEAN OFFSHORE
DEEPWATER DRILLING INC., AND
TRANSOCEAN DEEPWATER INC.**

**OF COUNSEL**:

EDWARD F. KOHNKE, IV
Pro Hac Vice Admission Requested
LBN: 07824
nkohnke@preisroy.com
EDWIN G. PREIS, JR.
TBN: 24029069
SDBN: 16834
epreis@preisroy.com
RICHARD J. HYMEL
Pro-Hac Vice Admission Requested
TBN: 24038190
CARL J. HEBERT
LBN: 06724
SDBN: 15985
PREIS & ROY, APLC
102 Versailles Blvd., Suite 400
Lafayette, Louisiana 70509
(377) 237-6062 – Telephone
(377) 237-9129 – Facsimile

INNES MACKILLOP
TBN: 12761800
SDTX: 444
imackillop@wmglegal.com
WHITE MACKILLOP & GALLANT P.C.
2200 West Loop South, Suite 1000
Houston, Texas
(713) 599-0211 – Telephone
(713) 599-1355 – Facsimile

GEORGE M. GILLY
LBN: 6234
SDTX: 16885
gillyg@phelps.com
EVANS MARTIN MCLEOD
LBN: 24846
SDTX Pro Hac Vice Admission Requested
mcleodm@phelps.com


PHELPS DUNBAR, LLP
Canal Place
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
(504) 566-1311 – Telephone
(504) 568-9130 – Facsimile

And

MARC G. MATTHEWS
TBN: 4055921
SDTX: 705809
Marc.matthews@phelps.com
700 Louisiana, Suite 2600
Houston, Texas 77002
(713) 626-1386
(713) 626-1388

## CERTIFICATE OF SERVICE

On this the 29th day of July, 2010, I served a copy of this Petitioners' Response in Opposition to Claimant Montagnet's Motion to Dismiss and/or to Modify or Lift Stay in accordance with the Federal Rules of Civil Procedure to all known counsel of record via filing with the ECF/CMF System.

/s/ Frank A. Piccolo
Of Preis & Roy, APLC